IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Laboratory Partners, Inc. *et al*[1] | Case No. 13-12769 (PJW) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 13, 34 ~~&~~ 1 3 8 |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "DIP Motion") of Laboratory Partners, Inc. ("Lab Partners"), and its direct and indirect subsidiaries (collectively, the "DIP Borrowers"),[2] each as a debtor and debtor in possession (collectively the "Debtors") in the above-captioned chapter 11 cases (collectively, with any successor cases, the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware seeking entry of a final order (this "Final Order") *inter alia*:

(i)       authorizing the Debtors to obtain secured, superpriority postpetition financing (the "DIP Facility") pursuant to the terms and conditions of that certain Senior Secured, Super-Priority

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

[2] The other DIP Borrowers are: Terre Haute Medical Laboratory, Inc., Pathology Associates of Terre Haute, Inc., Kilbourne Medical Laboratories, Inc., Medlab Ohio, Inc., Biological Technology Laboratory, Inc., and Suburban Medical Laboratory, Inc.

Debtor in Possession Credit Agreement (as may be amended, supplemented, restated, or otherwise modified from time to time (the "DIP Agreement")) by and among the DIP Borrowers, The Bank of New York Mellon as administrative and collateral agent (in such capacity, together with it successors in such capacity, the "DIP Agent"), for and on behalf of Marathon Special Opportunity Fund, L.P. (the "DIP Lender"), substantially in the form of Exhibit A attached to the DIP Motion;

(ii)    authorizing the Debtors on a final basis to perform under the DIP Agreement and other related loan documents (collectively with all documents comprising the DIP Facility, the "DIP Documents")[3] and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    granting to the DIP Agent and the DIP Lender allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein) for the DIP Facility and all obligations owing thereunder and under the DIP Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations"), subject to the priorities set forth in paragraph 8 below;

(iv)    granting to the DIP Agent, for the benefit of the DIP Lender, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 7 below;

(v)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, closing fees, extension fees, servicing fees, appraisal fees, administrative agent's fees, continuing commitment fees, fees associated with establishing and perfecting liens created under the DIP Documents, the fees and disbursements of each of DIP Agent and DIP Lender's attorneys, advisers, accountants, and other consultants, all to the extent provided by and in accordance with the terms of the

---

[3] All capitalized terms not otherwise defined in this Final Order, shall have the meaning ascribed to such term in the DIP Agreement.

respective DIP Documents;

      (vi)    authorizing the Debtors' use of the Cash Collateral of the Prepetition Agent and Prepetition Lenders (each as defined herein) and management and operation of their businesses and properties to the extent not prohibited by the DIP Documents;

      (vii)    providing adequate protection to the Prepetition Agent and Prepetition Lenders (to the extent any Prepetition Obligations remain outstanding) for any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral; and

      (viii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the Declaration of William A. Brandt, Jr., in Support of First Day Relief (the "Brandt Declaration"), the exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on October 29, 2013 (the "Interim Hearing") and the final hearing held on November 26, 2013 (the "Final Hearing"); and the Court having entered on October 29, 2013 an interim order authorizing funding on an interim basis and granting adequate protection on account of the interests of certain holders of liens on the property of the estates on which liens are to be granted; and adequate notice of the Final Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the entry of this Final Order approving the DIP Motion and the DIP Documents having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  *Petition Date:* On October 25, 2013 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.  *Debtors in Possession.* The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.  *Jurisdiction and Venue.* This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  *Official Committee.* On November 7, 2013, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

E.  *Interim Order.* Based upon the DIP Motion, the Brandt Affidavit, the DIP Documents and the evidence submitted by the Debtors at the Interim Hearing, the Court approved the Debtors' entry into and performance under the DIP Documents and DIP Facility, and on October 29, 2013, entered that certain Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing (the "Interim Order"). Pursuant to the Interim Order and Bankruptcy Rule 4001, the Debtors were authorized, among other things, to incur secured borrowings from the DIP Lenders pursuant to the terms of the DIP Documents and the Interim Order

pending the Final Hearing on the DIP Motion. Pursuant to the Interim Order, the Final Hearing was scheduled for November 26, 2013.

F. *Debtors' Stipulations*. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 31 herein, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs F(i) through F(vi) below are referred to herein as the "Debtors' Stipulations"):

    i) *Prepetition Facility:* Pursuant to that certain Amended and Restated Credit and Guaranty Agreement, dated as of August 5, 2008, as amended or otherwise modified to date ("Prepetition Credit Agreement") among Terre Haute Medical Laboratory, Inc., Pathology Associates of Terre Haute, Inc., Kilbourne Medical Laboratories, Inc., Medlab Ohio, Inc., Biological Technology Laboratory, Inc. and Suburban Medical Laboratory, Inc. (collectively, the "Prepetition Borrowers"), Laboratory Partners, Inc. (the "Prepetition Guarantor"), The Bank of New York Mellon, as administrative and collateral agent (the "Prepetition Agent"), and Marathon CLO I, LTD., Marathon CLO II, LTD., Marathon Financing I, B.V., and, solely with respect to the Additional Term Loan (as defined in the Prepetition Credit Agreement), Marathon Special Opportunity Fund, L.P. as lenders (collectively, the "Prepetition Lenders"), and together with all other loan and security documents executed in connection therewith (the "Prepetition Credit Documents"), among the Prepetition Borrowers, Prepetition Guarantor, Prepetition Agent, and the Prepetition Lenders, the Prepetition Lenders provided credit to the Prepetition Borrowers and provided other financial accommodations to or for the benefit of the Prepetition Borrowers and the Prepetition Guarantor (collectively, the "**Prepetition Facility**").

    ii) *Prepetition Obligations:* The Prepetition Facility provided the Prepetition Borrowers with $38,000,000.00 in aggregate maximum principal amount of term loan commitments. As of the Petition Date, the outstanding principal amount of all loans (together with any accrued interest capitalized thereon) under the Prepetition Credit Agreement was $21,595,465.62,

(together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, to the extent set forth in the Prepetition Credit Documents, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing under the terms of the Prepetition Facility, the "Prepetition Obligations").   Pursuant to the Prepetition Credit Documents, each of the Prepetition Borrowers act as borrowers in respect of the Prepetition Obligations and the Prepetition Obligations are guaranteed by the Prepetition Guarantor.

iii)  *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Prepetition Borrowers and the Prepetition Guarantor granted security interests in and liens on substantially all assets of the Prepetition Borrowers and the Prepetition Guarantor (collectively, the "Prepetition Collateral") to the Prepetition Agent, for the benefit of the Prepetition Lenders (the "Prepetition Facility Liens");

iv)  *Validity, Perfection and Priority of Prepetition Facility Liens, Prepetition Obligations.* Subject to the provisions of paragraph 31 of this Final Order, the Debtors (for themselves and their estates) and the Prepetition Agent, for the Prepetition Lenders acknowledge and agree that:  (a) as of the Petition Date, the Prepetition Facility Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected in all material respects; (b) as of the Petition Date, the Prepetition Facility Liens are senior in priority over any and all other liens on the Prepetition Collateral except as may be permitted under the Prepetition Facility or created by operation of law; (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or

subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law as of the date hereof; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Agent, Prepetition Lenders (in each case, in their capacities under the Prepetition Credit Documents) or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees as of the date hereof; and (f) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date are on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders are secured, were payments out of the Prepetition Collateral, and such payments do not diminish any property otherwise available for distribution to unsecured creditors.

v) *Cash Collateral.* The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Lenders.

vi) *Default by the Debtors.* The Debtors acknowledge and stipulate that the Debtors are in default under the Prepetition Credit Documents.

G. *Findings Regarding the Postpetition Financing.*

i) *Need for Postpetition Financing and Use of Cash Collateral.* Since the Petition Date, the Debtors' need to obtain credit pursuant to the DIP Facility and to use Cash Collateral has been and continues to be immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise finance their operations has required and continues to require the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably

harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful reorganization. The Debtors have not had and do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

ii) *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (2) superpriority claims with the priorities set forth in paragraph 8, and (3) the other protections set forth in this Final Order.

iii) *Priming of the Prepetition Facility Liens.* The priming of the Prepetition Facility Liens on the Prepetition Collateral pursuant to section 364(d) of the Bankruptcy Code, as further described below, enabled the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Prepetition Agent and Prepetition Lenders consent to such priming liens and are entitled to receive adequate protection as set forth in this Final Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Prepetition

Collateral (including Cash Collateral) resulting from, among other things, the subordination to the Carve Out (as defined herein) and to the DIP Liens, the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

iv) *Use of Proceeds of the DIP Facility.*

(1) Upon the date that all of the conditions precedent contained in the DIP Agreement to the initial availability of the First Draw Loan thereunder were satisfied (the "First Draw Loan Date") the following amounts were, consistent with the Interim Order, made available:

(a) up to $2,850,000.00, less the Roll-Up Obligations (as defined below), for uses consistent with and in accordance with the Budget (as defined in the DIP Agreement) and the DIP Documents (including amounts required to be paid with respect to the DIP Facility and amounts necessary to pay the reasonable out-of-pocket outstanding fees and expenses (including reasonable fees and expenses of their professionals) of the Prepetition Agent, DIP Agent, the Prepetition Lenders and the DIP Lender);

(b) amounts under the DIP Facility to refinance (the "Refinancing") that portion of the Prepetition Obligations eligible to be refinanced pursuant to the DIP Documents (the "Roll-Up Obligations"). The Refinancing was, consistent with the Interim Order, effected pursuant to a cashless exchange (i.e., not involving any cash payment in respect of any principal or interest) of such loans under the Prepetition Credit Agreement for loans under the DIP Facility. The Refinancing shall be subject to the reservation of rights of parties in interest set forth in paragraph 31 of this Final Order, and upon expiration of the Challenge Period (as defined in paragraph 31), the Debtor's refinancing of the Roll-Up Obligations shall be deemed to be indefeasible, final and not subject to challenge. Payment of the Prepetition Obligations in accordance with this Final Order is necessary as the DIP Agent and DIP Lender will not otherwise consent to providing and administering, as applicable, the DIP Facility

and extending credit to the Debtors thereunder, and the Prepetition Agent and Prepetition Lenders will not otherwise consent to the use of their Cash Collateral and other Prepetition Collateral or the subordination of their liens to the DIP Liens and Carve Out.

(2) Upon the date that all of the conditions precedent contained in the DIP Agreement to the availability of the Second Draw Loan thereunder are satisfied (the "Second Draw Loan Date") up to $2,150,000.00 under the DIP Facility, less the Carve Out Amount (as defined below), will be made available for uses consistent with and in accordance with the Budget (as defined in the DIP Agreement) and the DIP Documents (including amounts required to be paid with respect to the DIP Facility and amounts necessary to pay the reasonable out-of-pocket outstanding fees and expenses (including reasonable fees and expenses of their professionals) of the Prepetition Agent, DIP Agent, the Prepetition Lenders and the DIP Lender).

H. *Application of Proceeds of Collateral*.  As a condition to the entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral and other Prepetition Collateral, the Debtors agreed that the Debtors shall apply the proceeds from the disposition of DIP Collateral and Prepetition Collateral as set forth in the DIP Documents.

I. *Adequate Protection*.  The Prepetition Agent, for the benefit of the Prepetition Lenders (to the extent any Prepetition Obligations remain outstanding), is entitled to receive adequate protection on account of its interest in the Prepetition Collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).  Pursuant to sections 361, 363, 364 and 507(b), as adequate protection the Prepetition Agent, for the benefit of the Prepetition Lenders, will receive: (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (b) current payments of fees and other amounts due under the Prepetition Credit Documents as more fully set forth in paragraph 14 herein, and (c) ongoing payment of the reasonable fees, costs and expenses,

including, without limitation, reasonable legal fees and expenses, of the Prepetition Agent and Prepetition Lenders as more fully set forth in paragraph 14 herein.

J.   *Interim Borrowing*.   After the Interim Hearing, and pursuant to the Interim Order, the Court authorized, among other things, the Debtors to borrow up to $2,850,000.00 as the First Draw Loan (as defined in the DIP Documents) (the "Interim Financing").   Based upon the record of the Interim Hearing, the Court authorized and empowered the Debtors to execute and deliver the DIP Documents and authorized, empowered and directed the Debtors after execution to perform all of the DIP Obligations in accordance with the terms of the Interim Order and DIP Documents, including, without limitation the payment of fees, expenses and other amounts described in the DIP Documents as such became due.   On October 30, 2013, the DIP Documents were executed, and the Borrowers were authorized to borrow on the terms and conditions set forth in the DIP Documents and the Interim Order.

K.   *Sections 506(c) and 552(b)*.   In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and to the current payment of administrative expenses of the Debtors' estates in accordance with the Budget and Budget Compliance Covenant; (ii) the Prepetition Agent's and Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, DIP Liens and DIP Superpriority Claims, each of the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.   The Debtors, DIP Agent and DIP Lender, Prepetition Agent and Prepetition Lenders agree that they shall not assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

L.   *Good Faith of the DIP Agent and the DIP Lender*.

i)   *Willingness to Provide Financing*.   The DIP Lender has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of the Interim Order; (b) entry of this Final Order no later than 35 days following entry of the Interim Order; (c) approval of the terms

11

and conditions of the DIP Facility and the DIP Documents; and (d) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lender are administering and extending, as applicable, credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order, or any other order.

ii)  *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent, DIP Lender, Prepetition Agent, and Prepetition Lenders.  Use of Cash Collateral and all extensions of credit under the DIP Facility, whether made prior or subsequent to entry of this Final Order, shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code.  Accordingly, the DIP Agent and DIP Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order, or any other order.

M.  *Notice.*  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors in accordance with the Interim Order, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the Internal Revenue

Service; (iii) counsel to the Prepetition Agent; (iv) counsel to the DIP Agent; (v) counsel to the Prepetition Lenders; (vi) counsel to the DIP Lender; and (vii) the parties included on the Debtors' consolidated list of the thirty (30) largest unsecured creditors.   Such notice is good and sufficient to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1) Financing Approved.  The DIP Motion is granted on a final basis as set forth herein, the DIP Facility is authorized and approved, and the use of Cash Collateral is authorized on a final basis, subject to the terms and conditions set forth in this Final Order.

2) Objections Resolved or Overruled.  All objections to the DIP Motion and entry of this Final Order, to the extent not withdrawn or resolved, are hereby overruled.

DIP Facility Authorization

3) Ratification of the Interim Order and Authorization of the DIP Financing and DIP Documents.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all borrowings and payments made under the Interim Order are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Documents are approved on a final basis.  The Debtors are expressly and immediately authorized, on a final basis, to incur and perform the obligations under the DIP Documents and DIP Facility (as defined herein) and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Final Order and the DIP Documents.  The Debtors are hereby authorized on a final basis to pay the principal, interest, fees, expenses and other amounts and obligations created under the DIP Documents as such become due and without need to obtain further Court approval, all to the extent provided in the DIP Documents, including, without limitation, closing fees, letter of credit fees

(including issuance, fronting, and other related charges), unused revolver fee, servicing fees, appraisal fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's and DIP Lender's attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, unless the transactions are not consummated due to a breach by the DIP Agent and/or DIP Lender. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order, the Budget and the DIP Documents. The DIP Documents shall evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against each of the Debtors and their estates in accordance with the terms of the DIP Documents.

4)  Authorization to Borrow.  So long as the Commitment Termination Date (as defined below) has not occurred, subject to the terms and conditions set forth in the DIP Documents and this Final Order, in accordance with the Budget, upon entry of this Final Order, the DIP Borrowers are authorized to draw the First Draw Loan and the Second Draw Loan.

5)  DIP Obligations.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "Successor Cases").  Upon entry of this Final Order, the DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or DIP Lender under the DIP Documents and whether borrowed under the terms of the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents.  The DIP Obligations shall be due and payable, without notice or demand on the earlier to occur of (a) the Maturity Date (as defined in the DIP Documents) and (b) the Termination Declaration Date  (as defined below) (such

14

earlier date, the "Commitment Termination Date").

6) DIP Liens and DIP Collateral. Effective immediately upon the entry of the Interim Order, to secure the DIP Obligations pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent was granted, for the benefit of itself and the DIP Lender (and such grant is hereby ratified, confirmed and approved on a final basis) continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (the "DIP Liens") any and all presently owned and hereafter acquired personal property, real property, mixed property and other assets of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors, including, without limitation, the following (collectively, the "DIP Collateral")[4]: all (i) Prepetition Collateral; (ii) Accounts; (iii) Books; (iv) Chattel Paper; (v) Deposit Accounts, (vi) Equipment and fixtures, (vii) General Intangibles, including Intellectual Property, (viii) Inventory, (ix) Investment Related Property, (x) Negotiable Collateral, (xi) Supporting Obligations, (xii) Commercial Tort Claims, (xiii) money, cash and Cash Equivalents, (xiv) proceeds of all leases and leasehold interests, (xv) owned real property, (xvi) unencumbered assets, including proceeds of any and all lawsuits or causes of action (including those under section 549 of the Bankruptcy Code), (xvii) subject to the limitations set forth in the next sentence of this Paragraph 6, any causes of action under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code (the "Other Chapter 5 Actions"), and (xviii) Proceeds, with such exceptions, qualifications, limitations thereto as described in the DIP Documents. Notwithstanding clause (xvii) of this Paragraph 6, after distribution to the DIP Agent or the Prepetition Agent, as applicable, of the first $150,000 in net recoveries from any Other Chapter 5 Actions, the DIP Collateral shall cease to include and the DIP Agent shall not have a DIP Lien on any Other Chapter 5 Actions or the proceeds therefrom that remain as of such date (collectively, the "Excluded Avoidance Assets"). For the avoidance of doubt, the DIP Collateral shall include all amounts received by any Debtor pursuant to the asset purchase agreement entered

---

[4] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents. All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

into by certain Debtors in May, 2013, to sell selected operating assets of the PO Division to Laboratory Corporation of America Holdings, including amounts held in escrow pursuant to such asset purchase agreement until December, 2014 as security against indemnification claims that may be made by Laboratory Corporation of America Holdings.

7) <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations shall be junior to the (a) Carve Out, and (b) Specified Permitted Liens (as defined in the DIP Documents), and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens and the liens under and in accordance with the Prepetition Credit Documents in favor of the Prepetition Agent and Prepetition Lenders (the "<u>Prepetition Liens</u>") shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

8) <u>DIP Superpriority Claims</u>.  Effective immediately upon execution of the Interim Order, the DIP Agent and DIP Lender were granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations.  The DIP Superpriority Claims shall be subordinate only to the Carve Out, and shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections

16

105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, except as set forth herein, and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. After distribution to the DIP Agent or the Prepetition Agent, as applicable, of the first $150,000 in net recoveries from any Other Chapter 5 Actions, the DIP Superpriority Claim shall cease to attach to Excluded Avoidance Assets.

9) No Obligation to Extend Credit.  The DIP Lender shall not have any obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit specified in the DIP Agreement and this Final Order have been satisfied in full or waived by the DIP Lender, in its sole discretion.

10) Use of DIP Facility Proceeds; Payment of Prepetition Obligations.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Documents and in accordance with the Budget.  Notwithstanding any first-day orders entered authorizing the Debtors to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget.  A copy of the Budget in effect as of the date hereof is attached to this Final Order as Exhibit 1.  The payment of any Prepetition Obligations pursuant to this Final Order shall be subject to the rights of parties in interest set forth in paragraph 31 of this Final Order, provided that upon expiration of the Challenge Period (as defined herein), the Debtors' payment of the Prepetition Obligations shall be deemed to be indefeasible, final and not subject to challenge.

**Authorization to Use Cash Collateral
and Adequate Protection**

11) Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Declaration Date (as defined herein); provided, however, that during the five (5)

business days after the Termination Declaration Date, the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtors and their estates with the prior written consents required under the DIP Documents.   Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility and/or the DIP Documents, and in accordance with the Budget.

12) Adequate Protection Liens.

    a)  *Credit Facility Adequate Protection Liens.*   Effective immediately upon entry of the Interim Order, and pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral (to the extent the Prepetition Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors were authorized to grant and have granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders (and such grant is hereby ratified, confirmed and approved on final basis), continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Credit Facility Adequate Protection Liens"); provided, however, that after distribution to the DIP Agent or the Prepetition Agent, as applicable, of the first $150,000 in net recoveries from any Other Chapter 5 Actions, the Credit Facility Adequate Protection Liens shall cease to attach to Excluded Avoidance Assets.

    b)  *Priority of Credit Facility Adequate Protection Liens*

        i)  The Credit Facility Adequate Protection Liens shall be junior only to the:  (A) Carve Out; (B) DIP Liens; and (C) Specified Permitted Liens (as defined in the DIP Documents).  The Credit Facility Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

        ii)  Except as provided herein, the Credit Facility Adequate Protection Liens shall not be made

subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Credit Facility Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Credit Facility Adequate Protection Liens.

13) Adequate Protection Superpriority Claims.

    a) *Credit Facility Superpriority Claims.* Effective immediately upon execution of the Interim Order, as further adequate protection of the interests of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral (to the extent any Prepetition Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent and Prepetition Lenders were each granted (and such grant is hereby ratified, confirmed and approved on a final basis), as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Credit Facility Superpriority Claims"); provided, however, that after distribution to the DIP Agent or the Prepetition Agent, as applicable, of the first $150,000 in net recoveries from any Other Chapter 5 Actions, the Credit Facility Superpriority Claim shall cease to attach to Excluded Avoidance Assets.

    b) *Priority of Credit Facility Superpriority Claims.* The Credit Facility Superpriority Claims shall be junior only to the Carve Out and DIP Superpriority Claims. Except as set forth herein, the Credit Facility Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c),

507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

14) Adequate Protection Payments and Protections. *Credit Facility Adequate Protection Payments and Protections.* As further adequate protection, to the extent the Prepetition Obligations remain outstanding, the Debtors were authorized and directed to provide adequate protection to the Prepetition Agent and Prepetition Lenders (and such adequate protection is hereby ratified, confirmed and approved on a final basis), in the form of ongoing payment of the Prepetition Agent's and Prepetition Lenders' reasonable fees, costs and expenses, including, without limitation, legal fees and expenses (together, the "Credit Facility Adequate Protection Payments"). All parties reserve all rights to assert that any such Credit Facility Adequate Protection Payments may be reallocated or recharacterized as repayments of principal of the Prepetition Obligations pending determination of the value of the Prepetition Collateral or the amount of any Diminution in Value.

15) *Section 507(b) Reservation.* Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Agent and Prepetition Lenders is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Case or any Successor Case.

## Provisions Common to DIP Financing
## and Use of Cash Collateral Authorizations

16) Amendment of the DIP Documents. The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (i) the amendment, modification, or supplement is (A) in accordance with the DIP Documents, (B) beneficial to the Debtors, and (C) not prejudicial in any material respect to the rights of third parties; (ii) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel for the Official Committee and the U.S. Trustee upon five (5) business days prior notice (which notice period may be waived in writing); and (iii) the amendment, modification or supplement is filed with the Court; provided, however, that consent of the Official Committee or the

U.S. Trustee, and approval of the Court is not necessary to effectuate any such amendment, modification or supplement; provided, further, however, that the rights of the Official Committee and the U.S. Trustee, during the Remedies Notice Period, to contest whether any amendment satisfies clause (i) of this Paragraph 16 are expressly reserved. Except as otherwise provided in this paragraph 16, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the DIP Agent, the DIP Lender and the Debtors, and with the necessary consents required under and executed in accordance with the DIP Documents, and approved by the Court on notice.

17) Budget Maintenance. The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lender, in its reasonable discretion. The Budget may be amended or modified in writing from time to time only with the written consents required under the DIP Documents. The Debtors shall update the Budget as provided herein and in the DIP Documents. In the event that the First Draw Loan and, if relevant, the Second Draw Loan have been indefeasibly paid in full, all in accordance with the terms of the DIP Agreement, and the DIP Agreement has been terminated, any modification to the Budget shall be in form and substance acceptable to and approved by the Prepetition Agent (at the direction of the Prepetition Lenders), in its reasonable discretion.

18) Modification of Automatic Stay. The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Credit Facility Adequate Protection Liens, DIP Superpriority Claims, and Credit Facility Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders, each may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders under the DIP Documents, the DIP Facility and this Final Order; (d) authorize the Debtors to pay, and the DIP Agent, DIP Lender,

Prepetition Agent and Prepetition Lenders to retain and apply, payments made in accordance with the terms of the Interim Order and this Final Order; and (e) permit the Debtors to pay the Prepetition Obligations, to the extent any amounts remain outstanding, consistent with the terms of the Interim Order and this Final Order.

19) <u>Perfection of DIP Liens and Credit Facility Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Credit Facility Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and Credit Facility Adequate Protection Liens, or to entitle the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and Prepetition Agent is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect, in accordance with applicable non-bankruptcy law, and otherwise evidence the applicable DIP Liens and/or Credit Facility Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Credit Facility Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and Prepetition Agent, all such financing statements, mortgages, notices and other documents as any of the DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders may reasonably request.  The DIP Agent and Prepetition Agent, each in its discretion, may, but shall not be required to, file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Any and all prepetition deposit account

control agreements and similar agreements entered into by The Bank of New York Mellon (in its capacity as Prepetition Agent) and the Debtors shall continue in effect in favor of The Bank of New York Mellon (in its capacity as Prepetition Agent), and all rights of The Bank of New York Mellon (in its capacity as Prepetition Agent) under such agreements shall also inure to The Bank of New York Melon (in its capacity as DIP Agent).

20) <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases. shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full of all DIP Obligations, the cancellation, backing or cash collateralization of letters of credit under the DIP Facility, and the termination of the DIP Agent's and DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in the DIP Documents.

21) <u>Maintenance of DIP Collateral and Prepetition Collateral</u>. Until the payment in full in cash of all DIP Obligations and Prepetition Obligations and the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral and Prepetition Collateral as required under the DIP Facility and the Prepetition Credit Facility; and (b) maintain the cash management system which has first been agreed to by the required consents under the DIP Documents, or as otherwise required by the DIP Documents.

22) <u>Disposition of DIP Collateral; Rights of DIP Agent and DIP Lender</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents and the Budget without the prior written consents as required under the DIP Documents or as otherwise ordered by the Court.

23) <u>DIP Termination</u>.  On the Commitment Termination Date, (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate,

and (b) subject to the Carve out, all authority to use Cash Collateral shall cease, provided, however, that for the five (5) business days after the Termination Declaration Date, the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

24) Events of Default.  The following shall constitute an event of default under this Final Order, unless expressly waived in writing by the DIP Agent or DIP Lender as required by the DIP Documents (collectively, the "Events of Default"):

a) the occurrence of an "Event of Default" under section 8.1 of the DIP Agreement; or

b) the failure of the Debtors to meet the Milestones as set forth on and when required by Exhibit H to the DIP Agreement.

In the event that the First Draw Loan and, if relevant, the Second Draw Loan have been indefeasibly paid in full, all in accordance with the terms of the DIP Agreement, and the DIP Agreement has been terminated, the Events of Default set forth in section 8.1 of the DIP Agreement shall continue to apply to this Final Order for purposes of determining whether an Event of Default in the use of Cash Collateral has occurred.

25) Rights and Remedies Upon Event of Default.  Immediately upon the occurrence and during the continuation of an Event of Default and subject to the Carve Out, (a) the DIP Agent, as directed by the required DIP Lender as provided in the DIP Documents, may declare (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (iii) the termination of the DIP Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, and/or (iv) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, except as provided in paragraph 11 hereof and subject to the Carve Out; and (b) to the extent any Prepetition Obligations remain outstanding, the Prepetition Agent may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral, except as provided in paragraph 11 hereof (any such declaration by the DIP Agent or the

Prepetition Agent, shall be referred to herein as a "Termination Declaration"). The Termination

Declaration shall be given by email (or other electronic means) to the Debtors, counsel to the Debtors,

counsel to the Prepetition Agent, counsel to the Official Committee, and the U.S. Trustee (the earliest

date any such Termination Declaration is made shall be referred to herein as the "Termination

Declaration Date"). The DIP Obligations shall be due and payable, without notice or demand, and the

use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as

provided in paragraph 11 hereof and subject to the Carve Out. Any automatic stay otherwise

applicable to the DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders is hereby modified

so that five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"),

(y) the DIP Agent and the DIP Lender shall be entitled to exercise all rights and remedies against the

DIP Collateral in accordance with the DIP Documents and this Final Order and shall be permitted to

satisfy the DIP Obligations and DIP Superpriority Claims, subject to the Carve Out, and (z) the

Prepetition Agent and the Prepetition Lenders shall be entitled to exercise their rights and remedies to

satisfy the Prepetition Obligations, Credit Facility Superpriority Claims, and Credit Facility Adequate

Protection Payments, subject to the Carve Out. Notwithstanding anything to the contrary, during the

Remedies Notice Period, the Debtors and/or the Official Committee shall be entitled to seek an

emergency hearing with the Court. Unless the Court determines during the Remedies Notice Period

that an Event of Default has not occurred and/or is not continuing or otherwise determines to stay

enforcement of remedies hereunder, the automatic stay shall automatically be terminated at the end of

the Remedies Notice Period without further notice or order, and, subject to the Carve Out, the Debtors

shall no longer have the right to use or seek to use Cash Collateral, and the DIP Agent, DIP Lender,

Prepetition Agent and/or Prepetition Lenders, shall be permitted to exercise all remedies set forth

herein, in the DIP Agreement, the DIP Documents, Prepetition Credit Agreement, or Prepetition

Credit Documents, as applicable, and as otherwise available at law against the DIP Collateral and/or

Prepetition Collateral, without any further order of or application or motion to the Court, and without

restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise,

against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent and DIP Lender with respect thereto pursuant to the DIP Agreement, DIP Documents, or this Final Order.

26) Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders each have acted in good faith in connection with negotiating the DIP Documents, extending credit under the DIP Facility, allowing use of Cash Collateral and their reliance on the Interim Order and this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any advances made prior to the effective date of any such reversal, modification, amendment or vacatur of this Final Order, or lien, claim or priority authorized or created previously or hereby. Any liens or claims granted to the DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

27) Proofs of Claim. The DIP Agent, DIP Lender, Prepetition Agent, and Prepetition Lenders will not be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Final Order relating to the amount of the Prepetition Obligations and DIP Claims shall constitute a timely filed proof of claim and/or administrative expense request. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent on behalf of

26

itself and the Prepetition Lenders are hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim.  Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Lenders respectively.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or Successor Cases shall not apply to the DIP Agent, the DIP Lender, Prepetition Agent or Prepetition Lenders.

28) Rights of Access and Information.  Without limiting the rights of access and information afforded the DIP Agent and the DIP Lender under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the DIP Lender, the Prepetition Agent and the Prepetition Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Credit Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested, subject to, and without waiver of, any applicable attorney client or similar privilege.  In addition, the Debtors authorize, if any, their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Borrower, subject to and without waiver of, any applicable attorney client or similar privilege.

29) Carve Out.

    a) *Carve Out.*  As used in this Final Order, the "Carve Out" shall encompass the following expenses: (a) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court, (b) following the occurrence of a Triggering Event (as defined below) an aggregate amount incurred upon and after the occurrence of such Triggering Event not to exceed $150,000 (the "Carve Out Amount") for all allowed fees, and reimbursement for disbursements of, professionals

retained by the Debtors and/or the Official Committee and any allowed expense reimbursement claims of members of the Official Committee (the "Professional Fee and Member Payments"), and (c) without reducing the Carve Out Amount, all Professional Fee and Member Payments allowed, or subsequently allowed, and payable under sections 330 and 331 of the Bankruptcy Code, to the extent incurred prior to such Triggering Event (the "Pipeline Period") and consistent with the Budget. The Carve Out Amount shall be funded with proceeds of the Second Draw Loan (as defined in the DIP Agreement) and segregated in an interest bearing deposit account. In the event the conditions precedent to the Second Draw Loan do not occur, the Debtors are entitled, notwithstanding that such conditions have not occurred, to draw on the Second Draw Loan to the extent necessary to fund the Carve Out Amount. As used in this paragraph 29, the term "Triggering Event" shall mean the date the DIP Agent, at the written direction of the DIP Lender, provides to the DIP Borrowers, with a copy to the DIP Borrowers' counsel and the Official Committee's counsel, a notice of (i) an Event of Default and (ii) termination of the Pipeline Period for purposes of the Carve Out.

b) *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Agent and DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors, the Official Committee and/or any other statutory committee (if one is appointed) incurred in connection with the Cases or any Successor Cases. Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent or DIP Lender, in any way to pay compensation to or to reimburse expenses of any professionals retained by the Debtors, the Official Committee and/or any other statutory committee appointed, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if Allowed Professional Fees incurred after a Triggering Event exceed the Carve Out Amount; (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtors, the Official Committee and/or any other statutory committee appointed; or (iv) to affect the right of

the Prepetition Agent, Prepetition Lenders, DIP Agent or DIP Lender to object to the allowance and payment of such fees and expenses.

30) **Limitations on the DIP Facility, DIP Collateral, Cash Collateral, and Carve Out**.  The DIP Facility, DIP Collateral, Cash Collateral, and Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lenders or their rights and remedies under the DIP Documents, Prepetition Credit Documents or this Final Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors, the Official Committee or any other statutory committee appointed in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lenders, or their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent or any DIP Lender of any rights and/or remedies under this Final Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent or DIP Lender upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any of the Cases (other than to the DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders); (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required under the DIP Documents; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consents required under the DIP Documents, (e) subject to the limited use of Cash Collateral set forth in paragraph 11 above, objecting to, contesting, or interfering in any way the DIP Agent's, DIP

Lender's, and to the extent applicable, the Prepetition Agent's or Prepetition Lenders' enforcement or

realization upon any of the DIP Collateral once an Event of Default has occurred and is continuing;

(f) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral to the

extent prohibited under the DIP Documents without the consents required under the DIP Documents;

(g) using or seeking to use any insurance proceeds constituting DIP Collateral to the extent prohibited

under the DIP Documents without the consents required under the DIP Documents; (h) incurring

Indebtedness (as defined in the DIP Agreement) outside the ordinary course of business to the extent

prohibited under the DIP Documents without the prior consents required under the DIP Documents;

(i) objecting to or challenging in any way the claims, liens, or interests (including interests in the

Prepetition Collateral or DIP Collateral) held by or on behalf of any DIP Agent, DIP Lender,

Prepetition Agent or Prepetition Lenders; (j) asserting, commencing or prosecuting any claims or

causes of action whatsoever, including, without limitation, any actions under chapter 5 of the

Bankruptcy Code, against any DIP Agent, DIP Lender, Prepetition Agent, or Prepetition Lenders;

(k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity,

extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, Prepetition

Liens, DIP Obligations or DIP Liens or any other rights or interests of any of the Prepetition Agent,

Prepetition Lenders, DIP Agent or DIP Lender; or (l) preventing, hindering or otherwise delaying the

exercise by any DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders of any rights and

remedies granted under this Final Order.  Notwithstanding the foregoing, an aggregate amount not to

exceed $50,000 of the DIP Facility, DIP Collateral, Cash Collateral and Carve Out may be used by

the Official Committee to investigate the Prepetition Facility Liens within the Challenge Period (as

defined herein).

31) <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  Nothing in this Final

Order or the DIP Documents shall prejudice the rights of the Official Committee or any other party

granted standing by the Court, to seek, in accordance with the provisions of this paragraph 31, to

assert claims against the Prepetition Agent or Prepetition Lenders on behalf of the Debtors or

Debtors' creditors or interest holders or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to: (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of any Prepetition Agent or Prepetition Lenders; (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations; or (c) any liability of the Prepetition Agent and/or Prepetition Lenders with respect to anything arising from the Prepetition Facility. A party must commence a contested matter or adversary proceeding, or must file a motion seeking standing to commence a contested matter or adversary proceeding, raising such claim, objection or challenge, including, without limitation, any claim or cause of action against any Prepetition Agent or Prepetition Lenders (each, a "Challenge") (i) in the case of the Official Committee, within seventy-five (75) calendar days following the date of formation of the Official Committee (the "Official Committee Challenge Period"), and (ii) in the case of a third party with Court-approved standing, within seventy-five (75) calendar days following the entry of the Interim Order (the "Third Party Challenge Period" and collectively with the Official Committee Challenge Period, the "Challenge Period"). The Challenge Period may only be extended with the written consent of the applicable Prepetition Agent or Prepetition Lenders, or by order of the Court for cause shown prior to the expiration of the Challenge Period. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (A) any parties in interest, including the Official Committee, who fail to file a Challenge within the Challenge Period, or, if any such Challenge is filed and overruled or (B) any and all matters that are not the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Official Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Agent's and each Prepetition Lenders' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors'

bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases, and (3) any and all claims or causes of action against any of the Prepetition Agent or Prepetition Lenders relating in any way to the Debtors shall be released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

32) <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

33) <u>Section 506(c) Claims</u>. No costs or expenses of administration which have been or may be incurred in the Cases or any Successor Cases at any time shall be charged against any DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender or any of their respective claims or the DIP Collateral or Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

34) <u>No Marshaling/Applications of Proceeds</u>. The DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Documents.

35) <u>Section 552(b)</u>. The Debtors, DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, agree that they shall not assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

36) <u>Section 363 Sale Proceeds</u>. In the event that any, all, or substantially all of the Debtors' assets are sold pursuant to section 363 of the Bankruptcy Code, the Debtors shall apply the proceeds (including cash or other forms of consideration) from the disposition of DIP Collateral and Prepetition Collateral

as set forth in the DIP Documents; provided, however, in the case of non-cash proceeds, each of the DIP Agent (as instructed in writing by the DIP Lender) and the Prepetition Agent (as instructed in writing by the Prepetition Lenders) may elect whether to receive or defer receipt of such proceeds in repayment of the DIP Obligations or the Prepetition Obligations, as applicable.

37) Credit Bid Rights. The DIP Lender shall have the right to "credit bid" the DIP Obligations during any sale of any of the DIP Collateral, including, without limitation, in connection with sales occurring pursuant to Bankruptcy Code section 363 or included as part of any plan subject to confirmation under Bankruptcy Code section 1129.

38) Joint and Several Liability. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

39) Discharge Waiver. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all DIP Obligations.

40) Rights Preserved. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lenders are preserved.

41) No Waiver by Failure to Seek Relief. The failure of any DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Documents, the Prepetition Credit Documents, or applicable law, as the case may be,

shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders.

42) Binding Effect of Final Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lenders, all other creditors of any of the Debtors, the Official Committee or any other committee appointed by the Court in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

43) No Modification of Final Order. Until and unless the DIP Obligations and Prepetition Obligations (to the extent any Prepetition Obligations remain outstanding) have been indefeasibly paid in full in cash, and the Prepetition Facility shall have been cancelled in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consents required in the DIP Documents, of the Prepetition Agent (until the Prepetition Facility is indefeasibly repaid in full) or the DIP Agent, (i) any modification, stay, vacatur or amendment to this Final Order; (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out, or (iii) any other order allowing use of Cash Collateral; and (b) without the prior written consents required under the DIP Documents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the

34

DIP Agent, the DIP Lender, the Prepetition Agent and the Prepetition Lenders, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence of the applicable DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lenders.

44) Final Order Controls.  In the event of any inconsistency between the terms and conditions of the Interim Order, the DIP Documents and this Final Order, the provisions of this Final Order shall govern and control.

45) Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lender, Prepetition Agent and Prepetition Lenders pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been indefeasibly paid in full and all commitments to extend credit under the DIP Facility are terminated.

46) Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Final Order.

SO ORDERED by the Court  November  26  2013.

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE