**<u>EXHIBIT B</u>**

**Talon/LabCorp Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------x

In re                                              :      Chapter 11
                                                   :
Laboratory Partners, Inc., *et al.*,[1]            :      Case No. 13-13-12769 (PJW)
                                                   :
                            Debtors.               :      (Jointly Administered)
                                                   :      **Re: D.I. 46, 100, and ____**

-----------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF
THE DEBTORS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES,
RIGHTS, INTERESTS AND ENCUMBRANCES TO LABORATORY CORPORATION
OF AMERICA HOLDINGS PURSUANT TO 11 U.S.C. § 363; (B) THE DEBTORS'
ENTRY INTO AND PERFORMANCE OF THEIR OBLIGATIONS UNDER THE ASSET
PURCHASE AGREEMENT AND ANCILLARY AGREEMENTS AND (C) THE
DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN SPECIFIED
EXECUTORY CONTRACTS AND LEASES PURSUANT TO
11 U.S.C. § 365; AND (D) RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the debtors and debtors-in-possession in the

above-captioned cases (the "<u>Debtors</u>"), pursuant to sections 105(a), 363, 365, 503 and 507 of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as supplemented by Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>")

and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), *inter alia*, authorizing and

approving (a) the sale of certain assets relating to the Debtors' businesses (the "<u>Purchased</u>

<u>Assets</u>") described in and pursuant to the terms and conditions of the Asset Purchase Agreement,

dated as of **[●]** a true and accurate copy of which is annexed hereto as **Exhibit A** (collectively

with all exhibits thereto, the "<u>Purchase Agreement</u>") free and clear of all claims, liens, liabilities,

---

[1]     The Debtors and the last four digits of their taxpayer identification numbers are as
follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab
Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology
Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates
of Terre Haute, Inc. (6485).  Certain of the Debtors do business as MEDLAB.  The Debtors'
mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

rights, interests and encumbrances by and between certain of the Debtors, as sellers (the "Sellers"), and Laboratory Corporation of America Holdings ("Purchaser"), (b) the respective Debtors' entry into and performance of their obligations under the Purchase Agreement and each of the ancillary agreements entered into or contemplated as part of the Purchase Agreement (the "Ancillary Agreements"), (c) the Debtors' assumption of and assignment to Purchaser of certain specified executory contracts and leases as specifically set forth in the Purchase Agreement, and (d) related relief; and a hearing on the Motion having been held on February 13, 2014 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Hearing and the Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

I.    **General**

A.    The findings and conclusions set forth in this Order as well as those read into the record at the Sale Hearing (if any) constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 as made applicable to this proceeding by Fed. R. Bankr. P. 9014. All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Purchase Agreement.

B.    The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the transaction that is the subject of the Purchase Agreement and all such matters, including the Motion, constitute a core proceeding under 28

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. Fed. R. Bank. P. 7052.

U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

D.     On November 15, 2013, the Court entered the *Order: (I) Approving Bidding Procedures In Connection With Sale(s) Of Substantially All Of The Debtors' Assets; (II) Scheduling Hearing To Consider Sale; (III) Approving Form And  Manner Of Notice Thereof; (IV) Authorizing Entry Into Stalking Horse Agreements Subject To Further Hearing; And (V) Granting Related Relief* (D.I. 100) (the "Bidding Procedures Order"), pursuant to which the Court, *inter alia,* (i) authorized the Debtors to conduct an auction involving the Purchased Assets (the "Auction"), (ii) approved the bidding procedures annexed to the Bidding Procedures Order (the "Bidding Procedures"), (iii) authorized the Debtors to enter into a Stalking Horse Agreement, subject to higher or better offers at the Auction, with a Stalking Horse Bidder, (iv) scheduled the Sale Hearing; and (v) established procedures for the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases to any purchaser of the Purchased Assets and/or to resolve any objections thereto, including procedures to set the Cure Amounts to be paid under section 365 of the Bankruptcy Code.

E.     On January 15, 2014, the Debtors filed the *Notice of Adjournment of Dates Related to Auction and Sale Hearing With Respect to Debtors' Talon and Union Hospital Divisions* (D.I. 262) (the "Adjournment Notice"), which, among other things modified certain deadlines and dates established by the Bidding Procedures Order to permit the Sellers and Purchaser to complete negotiations over the terms of the Purchase Agreement.

F.     On [●], 2014, the Court entered the [●] (D.I. [●]) (the "Bid Protections

Order") pursuant to which the Court, *inter alia*, (i) authorized the Debtors and the Purchaser to enter into the Purchase Agreement; (ii) approved certain bid protections, including [●]; and (iii) granted related relief.

G.    As evidenced by the certificates of service and publication filed with the Court (D.I. [●],[●],[●]), and based on the representations of counsel, and evidence proffered or adduced, at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the transactions contemplated therein, the Bidding Procedures Order, the Bidding Procedures, the Adjournment Notice, the Bid Protections Order, the Auction and the Sale Hearing, and the assumption and assignment of certain specified executory contracts and leases to the Purchaser at or within 30 days after Closing as provided in the Purchase Agreement has been provided in accordance with sections 102, 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 2001-1; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the transactions contemplated therein, the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing and the entry of this Order is required.

H.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the U.S. Trustee; (ii) counsel for and members of the official committee of unsecured creditors appointed in these cases (the "Committee"); (iii) counsel to the DIP Lender and the Prepetition Lenders; (iv) all entities (or counsel therefor) known or reasonably believed to have asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon any portion of the Purchased Assets; (v) all non-Debtor parties to the Executory Contracts and Unexpired Leases; (vi) all Persons known or reasonably believed to have expressed a bona fide

interest in acquiring some or all of any of the Purchased Assets within the last six months; (vii) federal, state and local regulatory or taxing authorities or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any reasonably known interest in the relief requested by the Motion; (viii) the Internal Revenue Service; (ix) the Attorneys General in the states where the Purchased Assets are located; and (x) all parties that have requested, prior to the date of service of the notice, or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## II. **The Bankruptcy Case**

I. On October 25, 2013, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

J. The Debtors have asserted and provided notice to the Court and the United States Trustee that their business is not a health care business as defined under section 101(27A), and therefore, a patient care ombudsman is not required as provided in section 333 of the Bankruptcy Code.

K. The Debtors assert that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in section 363(b)(1)(B).

## III. **The Sale Process for the Purchased Assets**

L. As demonstrated by testimony and other evidence proffered or adduced at the Sale Hearing, the Debtors have marketed the Purchased Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and best offer or offers therefor by,

among other things, delivering offering materials to potential purchasers and inviting potential purchasers to meet with management and the Debtors' professionals and providing potential purchasers with the opportunity to conduct extensive due diligence.  In addition, the Debtors delivered the Bidding Procedures Order, the Bidding Procedures, the Adjournment Notice, the Bid Protections Order, and the Motion to each of the entities that had previously expressed an interest in the Purchased Assets.

M.      The Debtors conducted the Auction on February 10, 2014 in accordance with the Bidding Procedures.  [●] Qualified Bidders participated in the Auction.  The Purchaser submitted the highest and best offer for the Purchased Assets prior to or at the Auction on terms and conditions set forth in the Purchase Agreement by and between the Debtors and the Purchaser, dated as of January 27, 2014.

N.      The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Purchased Assets and no higher or better offer has been made than that of the Purchaser.

O.      The Debtors and the Purchaser have complied with the Bidding Procedures Order and the Bidding Procedures, the Adjournment Notice, and the Bid Protections Order in all respects.

### IV.      The Sale of the Purchased Assets to the Purchaser

P.      The transactions effectuating, and the terms and conditions governing, the sale of the Purchased Assets to the Purchaser are embodied in the Purchase Agreement and Ancillary Agreements.  A description of the Purchased Assets is contained in the Purchase Agreement and includes certain executory contracts and unexpired leases that will be assumed and assigned to the Purchaser pursuant to the terms of the Purchase Agreement (the "Assigned

Contracts"). The Assigned Contracts to be assumed and assigned to Purchaser as of the Closing are attached to the Purchase Agreement as Schedules 1.1(a), 1.1(b), 1.1(i) and 1.1(k). Purchaser may determine to include additional executory contracts and unexpired leases as Assigned Contracts at any time prior to the "Designation Deadline" (defined in the Purchase Agreement to be 30 days from the date of the Closing) and may also determine to not include any executory contract or unexpired lease (an "Excluded Contract") as an Assigned Contract. If an executory contract and unexpired lease has not been designated as an Assigned Contract as of the Designation Deadline, it shall automatically be an Excluded Asset (as defined in the Purchase Agreement). As provided in the Purchase Agreement, Purchaser is responsible to promptly pay for the costs associated with continuation of the Sellers of any such contract or lease as such costs become due, including all damages, losses, obligations, liabilities, penalties, and other expenses incurred by the Sellers arising out of or relating to such contract or lease arising after the Closing and until such contract is either assumed or rejected by the Debtors and such assumption or rejection is approved by the Court.

Q. The Purchase Agreement contemplates that the sale of the Purchased Assets shall be free and clear of all claims, liens, liabilities, rights, interests and encumbrances to the fullest extent permitted by and under sections 363(f) and 105 of the Bankruptcy Code (collectively, "liens"), except as expressly permitted by the Purchase Agreement; provided, however, that all liens will attach to the proceeds of the Sale with the same priority, validity, force and effect as established under the *Final Order Pursuant to 11 U.S.C. 105, 361, 362, 363, 364 and 507 (I) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying the Automatic Stay* [D.I. 153] (the "Final DIP Order")

and applicable nonbankruptcy law.

R.     The Net Asset Sale Proceeds shall be distributed in accordance with the terms of the Final DIP Order; provided, however, that the Debtors may reserve Net Asset Sale Proceeds for the payment of potential Cure Costs related to Deferred Contracts provided that if such funds are not used to pay Cure Costs, they shall be distributed in accordance with the Final DIP Order.

S.     The Purchaser's obligation to consummate the transactions contemplated in the Purchase Agreement is subject to the specific conditions outlined in the Purchase Agreement, including Court approval.  As of the date of entry of this Order, there is no known failure of any condition under the Purchase Agreement to the Purchaser's obligation to consummate the Sale that would entitle the Purchaser not to consummate the Sale pursuant to the Purchase Agreement or to terminate the Purchase Agreement.

T.     Upon entry of this Order, the Debtors and Sellers have full corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement and the Ancillary Agreements and have taken all corporate action necessary to authorize and approve the Purchase Agreement and the Ancillary Agreements and the consummation of the transactions contemplated thereby.

U.     The Debtors and Sellers require no further consents or approvals, other than those expressly provided for in the Purchase Agreement and this Order, to consummate the transactions contemplated in the Purchase Agreement and the Ancillary Agreements.

V.     Approval of the Purchase Agreement and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

W.     The Debtors and Sellers have demonstrated (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the Sale, the value of the Debtors' assets will be harmed.

X.     The Purchase Agreement was negotiated, proposed, and entered into by and between the Purchaser and the Debtors without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the application of section 363(n) of the Bankruptcy Code to the Sale, including having the Purchase Agreement avoided.

Y.     The Purchaser is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction under the Purchase Agreement, including the assumption and assignment of the Assigned Contracts, at any time after the expiration of any stay of this Order, whether pursuant to Bankruptcy Rule 6004(g) or otherwise.

Z.     The Purchaser is not an "insider" of any of the Debtors as that term is defined under section 101 of the Bankruptcy Code.

AA.    After the conclusion of the Auction on February 10, 2014, the Debtors determined in a valid and sound exercise of their business judgment that Purchaser delivered the highest and best bid for the Purchased Assets.

BB.    The terms and conditions of the Purchase Agreement and the consideration  to be provided by the Purchaser in accordance with the Purchase Agreement: (i)

are fair and reasonable, (ii) valid, binding and enforceable, (iii) constitute the highest and best offer for the Purchased Assets, (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (v) constitute reasonably equivalent value and fair consideration for the Purchased Assets under the Bankruptcy Code and the Uniform Fraudulent Transfer Act.

CC.    The transactions contemplated by the Purchase Agreement will, upon consummation thereof (the "Closing"), (i) be a legal, valid, and effective transfer of the Purchased Assets to the Purchaser with no further action required on the part of the Debtors or their respective affiliates, except as provided herein, and (ii) vest the Purchaser with good title to the Purchased Assets free and clear of all liens within the meaning of and to the fullest extent available under section 363(f) of the Bankruptcy Code, except as expressly permitted by the Purchase Agreement.

DD.    The Purchaser would not have entered into the Purchase Agreement and will not consummate the transactions described in the Purchase Agreement (thus adversely affecting the bankruptcy estate and its creditors) if the sale of the Purchased Assets and the proposed assignment of the Assigned Contracts, which are an integral part of the Purchase Agreement, were not free and clear of all liens, except as expressly permitted by the Purchase Agreement.

EE.    Neither the Purchaser nor any of its affiliates is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Purchase Agreement.

FF.     The relief sought in the Motion, including approval of the Purchase Agreement and consummation of the transactions contemplated thereof, is in the best interests of the Debtors, their bankruptcy estates, creditors, and all parties in interest.  The Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates.

GG.     The Debtors have demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of their business judgment, to (i) sell the Purchased Assets on the terms and conditions set forth in the Purchase Agreement; (ii) assume and assign the Assigned Contracts to the Purchaser in accordance with the procedures set forth herein and in the Bidding Procedures Order; and (iii) consummate all transactions contemplated by the Purchase Agreement, and the sale, assumption and assignment of the Purchased Assets, including the Assigned Contracts, is in the best interests of the Debtors, their estates and their creditors.

HH.     The provisions of sections 363 and 365 of the Bankruptcy Code (subject to the additional notice, opportunity to object and hearing, if necessary, with respect to any Assigned Contracts) have been complied with and are applicable to the sale of the Purchased Assets.

II.     The Debtors may consummate the transactions and transfer the Purchased Assets as set forth in the Purchase Agreement free and clear of all liens of any kind or nature whatsoever, except as expressly permitted by the Purchase Agreement, because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented

11

pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.  All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did object to the Motion and the relief requested therein fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens attach to the net proceeds of the transactions with the same validity, enforceability, priority, force and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens.

JJ.    Except as otherwise provided in the Purchase Agreement, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability.

KK.    As provided in the Purchase Agreement and herein, the Debtors hereafter will (i) cure, or provide adequate assurance that they will promptly cure (including as to Assigned Contracts with Undetermined Cure Costs, by reserving the full cure amount asserted by the non-Debtor contract party, subject to a final determination by the Court or agreement by the parties as to the Cure Amount), all defaults under the Assigned Contracts, if any, existing before the date of the assumption and assignment of any Assigned Contracts to the Purchaser, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party

resulting from a default before the date of the assumption and assignment of any Assigned

Contracts to the Purchaser under the Assigned Contracts, if any, within the meaning of section

365(b)(1)(B) of the Bankruptcy Code, and the Purchaser will provide adequate assurance of its

future performance of and under the Assigned Contracts, within the meaning of section

365(b)(1)(C) of the Bankruptcy Code by promising to perform the obligations under the

Assigned Contracts and providing such other assurance as may be necessary.

LL.    Those of the Debtors' employees that may be hired by the Purchaser are to

be hired under new employment contracts or other arrangements to be entered into or to become

effective at or after the Closing.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

## I.    **General Provisions**

1.    The findings of fact entered above and the conclusions of law stated herein

shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule

7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that

any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and

to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall

be so deemed.

2.    The Motion is granted.

3.    All parties in interest have had the opportunity to object to the relief

requested in the Motion and to the extent that objections to the Motion or the relief requested

therein have not been withdrawn, waived or settled, such objections and all reservations of right

included therein, are overruled on the merits.  The parties who did not object, or who withdrew

their objections, to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code. This Order and the Purchase Agreement shall be binding in all respects upon all creditors, whether known or unknown, of any Debtor, all non-debtor parties to the Assigned Contracts, all successors and assigns of Purchaser, the Debtors, their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' Chapter 11 cases or in any converted case under Chapter 7. No other order or any Chapter 11 plan of reorganization may conflict or derogate from the provisions of this Order, the Purchase Agreement and the terms of any Assigned Contract.

4.      The Court finds and concludes that the Debtors' business is not a health care business as defined under section 101(27A), and therefore, a patient care ombudsman is not required as provided in section 333 of the Bankruptcy Code.

5.      The Court finds that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in section 363(b)(1)(B).

**II.      <u>Approval of the Purchase Agreement</u>**

6.      The Purchase Agreement and all of the terms and conditions contained therein are approved in their entirety and are binding upon the parties thereto.

7.      The Sale of the Purchased Assets and the terms and conditions contemplated by the Purchase Agreement, including, without limitation, the closing of the transactions contemplated by the Purchase Agreement, are hereby approved pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code.

8.      The Debtors are authorized and directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Purchase Agreement and to execute such other documents and take such other actions as are reasonably

necessary to effectuate the transactions contemplated by the Purchase Agreement.

**III.     Transfer of the Purchased Assets to the Purchaser**

9.     The sale of the Purchased Assets, pursuant to this Order, any Deferred Assignment Order (as defined below), and the Purchase Agreement, will vest the Purchaser with good title to the Purchased Assets and will be a legal, valid and effective transfer of the Purchased Assets free and clear of all liens, except as expressly permitted by the Purchase Agreement.

10.     Except as expressly provided in the Purchase Agreement, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, upon the Closing, or, with respect to any Deferred Contract, upon the entry of a Deferred Assignment Order, the Purchased Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all liens, with all such liens to attach to the proceeds of sale of the Purchased Assets in the order of their priority, and with the same validity, priority, force and effect which they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens.  All non-debtor entities that are presently, or on the Closing Date, in possession of some or all of the Purchased Assets are hereby directed to surrender possession to Purchaser at Closing.

11.     To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any governmental authorization or approval with respect to the Purchased Assets and Assigned Contracts pursuant to the terms of the Purchase Agreement.  To the extent provided by section 525, no governmental unit may revoke or suspend any grant, permit or license related to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 cases

or the consummation of the Sale.

12.     All persons or entities holding liens in, to or against the Purchased Assets shall be, and they hereby are, forever barred, estopped and permanently enjoined from asserting such liens against Purchaser, its successors and assigns or such Purchased Assets after Closing.

**IV.     Assumption and Assignment of Assigned Contracts**

13.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to Purchaser, and Purchaser's assumption on the terms set forth in the Purchase Agreement, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(l) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

14.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon and subject to the occurrence of the Closing (or subject to the Closing and effective upon entry of an  Deferred Assignment Order (as defined in paragraph 23 herein) with respect to any Deferred Contract) any or all of the Assigned Contracts free and clear of all interests of any kind or nature whatsoever, which Assigned Contracts by operation of this Order, shall be deemed assumed and assigned in accordance with the Purchase Agreement and this Order, and (b) execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to Purchaser.

15.     The Assigned Contracts that shall not be Deferred Contracts or Excluded Contracts to be assumed and assigned to Purchaser as of the Closing are attached to the Purchase Agreement as Schedules 1.1(a), 1.1(b), 1.1(i) and 1.1(k).

16.    Subject to paragraphs 17-24 herein, the Assigned Contracts shall be transferred and assigned to, and following the Closing of the Sale remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such transfer and assignment to Purchaser.    Subject paragraphs 17-24 herein, the Debtors may assume the Assigned Contracts which are executory contracts and unexpired leases of the Debtors in accordance with section 365 of the Bankruptcy Code.    Subject to paragraphs 17-24 herein, the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, shall constitute unenforceable anti-assignment provisions which are void and of no force and effect.    Subject paragraphs 17-24 herein, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by the Debtors to Purchaser of each Assigned Contract have been satisfied.    Subject to paragraphs 17-24 herein, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract upon the earlier of Closing or upon entry of a Deferred Assignment Order.    Any portion of any Assigned Contract which purports to permit a landlord thereunder to cancel the remaining term of such Assigned Contract if the Debtors discontinue

their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against Purchaser, its assignees and sublessees; and the landlords under any such Assigned Contract shall not have the right to cancel or otherwise modify the Assigned Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assigned Contract to Purchaser, or the interruption of business activities at any of the leased premises.

17.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing or as of the entry of a Deferred Assignment Order, as applicable, (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), are deemed satisfied by the Cure Amounts with respect to such Assigned Contracts in those amounts set forth in the notices of assumption and assignment (as may have been amended, the "Notices of Assumption and Assignment"), which were served in accordance with the Bidding Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, by the Debtors pursuant to the Purchase Agreement.

18.    With the exception of the Cure Amounts set forth in the Notices of Assumption and Assignment, or as otherwise reflected in this Order or a Deferred Assignment Order, each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or Purchaser, or the property of any of them, any default existing as of the date of effective date of assumption and assignment; or, against Purchaser any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.  Except as provided in the Purchase Agreement or this Order, after earlier of the Closing or entry of a Deferred Assignment Order, as applicable, the Debtors and their estates

shall have no further liabilities or obligations with respect to any assumed liabilities under the Assigned Contracts and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

19.    All non-Debtor parties to the Assigned Contracts have received sufficient notice of the assumption, assignment and/or transfer and the proposed corresponding Cure Amount as provided under the Bidding Procedures Order.  For each contract selected as an Assigned Contract on or prior to the Designation Deadline, the Debtors shall satisfy the Cure Amounts as set forth in the Notice of Assumption and Assignment or as otherwise agreed by the non-Debtor contract party and the Debtors or as ordered by the Court.  All other defaults or obligations thereunder shall be deemed satisfied by the payment of the Cure Costs.

20.    <u>Excluded Contracts</u>.  As provided in the Purchase Agreement, the Purchaser shall have the right prior to the Designation Deadline to designate any executory contract or unexpired lease not included in Schedules 1.1(a), 1.1(b), 1.1(i) and 1.1(k) to the Purchase Agreement as an Excluded Contract, and such executory contract or unexpired lease will not be deemed Assigned Contracts and will not be assumed and assigned hereunder. For each executory contract or unexpired lease designated as an Excluded Contract on or prior to the Designation Deadline, the Debtors shall promptly provide notice of such exclusion to the non-Debtor contract party (which notice may be included in a rejection notice) and shall promptly reject such executory contract or unexpired lease immediately upon receipt of such notice from Purchaser of its intent to exclude such executory contract or unexpired lease.  If an executory contract and unexpired lease has not been designated as an Assigned Contract as of the Designation Deadline, it shall be an Excluded Contract.

21.    <u>Deferred Contracts</u>.  Purchaser shall promptly pay to the Debtors or as the Debtors direct in a signed writing all Liabilities associated with the continuation by Sellers of any executory contract and unexpired lease not assumed as an Assigned Contract or excluded as an Excluded Asset (a "<u>Deferred Contract</u>") on the Closing from the Closing and through and until either the date on which such Deferred Contract is rejected and such rejection is approved by the Bankruptcy Court or until such Deferred Contract is assumed and such assumption is approved by the Bankruptcy Court.

22.    <u>Assignment of Deferred Contracts</u>.  If at any time during the Designation Period, the Purchaser provides the Debtors with a written request for assumption and assignment of any Deferred Contract, the Debtors shall promptly serve a "<u>Notice of Assumption and Assignment of Deferred Contract</u>" by facsimile, electronic transmission, hand delivery or overnight mail on the counterparty to each Deferred Contract (and its attorney, if known) at the last known address available to the Debtors, counsel to the Committee, the United States Trustee, and counsel to the Debtors' Prepetition Lenders and DIP Lender.  Each Notice of Assumption and Assignment of Deferred Contract shall include the following:  (i) the name and address of the counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and the Purchaser to withdraw such request), (iii) identification of the Deferred Contract, (iv) the Cure Amount, if any, (v) a description of Purchaser, and a statement as to the ability of Purchaser to perform the Debtors' obligations under the Deferred Contract, and (vi) a proposed form of order approving the assumption and assignment.

23.    Unless the non-Debtor contract counterparty properly files an objection to the Notice of Assumption and Assignment of Deferred Contract within ten (10) calendar days of service of the Notice of Assumption and Assignment of Deferred Contract, the Debtors may

immediately submit a form of order authorizing the assumption and assignment of the Deferred Contract under certification of counsel for entry by the Court (a "Deferred Assignment Order"). If an objection is filed and served within ten (10) calendar days of service of the Notice of Assumption and Assignment of Deferred Contract, and the objection cannot be resolved consensually, then the Debtors will schedule a hearing to consider the objection at the next scheduled omnibus hearing, or as otherwise requested by the Debtors. Any order entered approving the assumption and assignment shall be a Deferred Assignment Order.

24.    Notwithstanding anything in this Order or the Purchase Agreement to the contrary, on the date any Deferred Contract is assumed and assigned to Purchaser pursuant to this Order and the Purchase Agreement, such Deferred Contract shall be deemed an Assigned Contract for all purposes under this Order and the Purchase Agreement.

## VI.    Sale Proceeds

25.    Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors other than set forth under the terms of the Purchase Agreement, Ancillary Agreements, and Assigned Contracts.

26.    The Net Asset Sale Proceeds shall be distributed in accordance with the terms of the Final DIP Order; provided, however, that the Debtors may reserve Net Asset Sale Proceeds for the payment of potential Cure Costs related to Deferred Contracts provided that if such funds are not used to pay Cure Costs, they shall be distributed in accordance with the Final DIP Order.  The allocation of the value by the Purchaser to the Purchased Assets for tax purposes shall not be binding on the Court or any party for purposes of these chapter 11 cases or distributions.

VII.    **Miscellaneous Provisions**

27.    The Sale of the Purchased Assets is consistent with the Debtors' policy concerning the transfer of personally identifiable information and no consumer privacy ombudsman is necessary as set forth in section 332 or 363(b)(1) of the Bankruptcy Code.  The Purchaser is a "covered entity" within the meaning of the Health Insurance Portability and Accountability Act.

28.    The consideration to be paid by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

29.    This Order (a) is and shall be effective as a determination that, upon the Closing except as expressly provided in the Purchase Agreement, all liens existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all liens.

30.    If any person or entity that has filed financing statement, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens or claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfactions, releases of all interests or claims that the person or entity has with respect to the Purchased Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens or claims in the Purchased Assets of any kind or nature.

31.     Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

32.     Except with respect to enforcing the terms of the Purchase Agreement, this Order, and/or any subsequent order approving the assumption and assignment of any Assigned Contracts, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

33.     The Purchase Agreement, Ancillary Agreements, and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement does not change materially the economic outcome of the transactions contemplated hereby for the Debtors' estates.

34.     In the absence of a stay of the effectiveness of this Order, in the event that

the Purchaser and the Debtors consummate the transactions contemplated by the Purchase Agreement at any time after entry of this Order, then with respect to the transactions approved and authorized herein, the Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

35.    Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement without charge or tax to the Debtors or Purchaser.

36.    Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (b) to compel transfer of the Purchased Assets to the Purchaser; (c) to compel the parties to perform their respective obligations under the Purchase Agreement; (d) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, including without limitation the adjudication of any cure required under Assigned Contracts; and (e) to interpret, implement and enforce the provisions of this Order.

37.    The terms of this Order, any Deferred Assignment Order, and the Purchase Agreement shall be binding on and inure to the benefit of the Debtors, the Purchaser and the Debtors' creditors and all other parties in interest, and any successors of the Debtors, the Purchaser and the Debtors' creditors, including any trustee or examiner appointed in these cases

or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

38.     The failure to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Purchase Agreement be authorized in its entirety.

39.     Any conflict between the terms and provisions of this Order and the Purchase Agreement shall be resolved in favor of this Order.

40.     The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase Agreement without further order of the Court.

41.     The Debtors and Purchaser are hereby authorized to perform each of their covenants and undertakings as provided in the Transition Services Agreement without further order of the Court.

42.     As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately.  The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Purchase Agreement immediately upon entry of this Order.  Time is of the essence in closing the transaction and parties to the Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of this Purchase Agreement.

43.     This Order shall be served upon the parties listed in Section I (H) of this Order.

Dated: _____, 2014                    _____

                                                            THE HONORABLE PETER J. WALSH
                                                            UNITED STATES BANKRUPTCY JUDGE

25

# EXHIBIT A

**Purchase Agreement**