IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re                                                 :   Chapter 11
                                                      :
Laboratory Partners, Inc., *et al.*,[1]               :   Case No. 13-12769 (PJW)
                                                      :
              Debtors.                                :   (Jointly Administered)
                                                      :
------------------------------------------------------x   Re: D.I. 46, 100, 262, 281, 282, 324

**DECLARATION OF WILLIAM A. BRANDT, JR. IN SUPPORT OF DEBTORS'
MOTION FOR ORDERS: (A)(I) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH SALE(S) OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS; (II) SCHEDULING HEARINGS TO CONSIDER SALES; (III) APPROVING
FORM AND MANNER OF NOTICE THEREOF; AND (IV) AUTHORIZING ENTRY
INTO STALKING HORSE AGREEMENTS SUBJECT TO FURTHER HEARING; (B)(I)
AUTHORIZING AND APPROVING SALES OF ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) APPROVING
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

I, William A. Brandt, Jr., being duly sworn, deposes, and says:

1. I am the Chief Executive Officer, President and Secretary of each of Laboratory Partners, Inc. ("Laboratory Partners"), Terre Haute Medical Laboratory, Inc., Pathology Associates of Terre Haute, Inc., Kilbourne Medical Laboratories, Inc., MedLAB Ohio, Inc., Suburban Medical Laboratory, Inc., and Biological Technology Laboratory, Inc. (collectively, the "Debtors"). I am over the age of 18, competent to testify, and authorized to submit this Declaration on behalf of the Debtors. I submit this declaration (the "Declaration") in support of the:

---

[1]   The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as Medlab. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

(i) *Debtors' Motion for Orders: (A)(I) Approving Bidding Procedures in Connection with Sales(s) of Substantially all of the Debtors' Assets; (II) Scheduling Hearings to Consider Sales; (III) Approving Form and Manner of Notice Thereof; and (IV) Authorizing Entry into Stalking Horse Agreements Subject to Further Hearing; (B)(I) Authorizing and Approving Sales of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (D.I. 46) (the "Sale Motion");

(ii) entry of the *Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances to Laboratory Corporation of America Holdings Pursuant To 11 U.S.C. § 363; (B) the Debtors' Entry Into and Performance of Their Obligations Under the Asset Purchase Agreement and Ancillary Agreements and (C) the Debtors' Assumption and Assignment of Certain Specified Executory Contracts and Leases Pursuant To 11 U.S.C. § 365; and (D) Related Relief* (Exh. B to D.I. 262) (the "Sale Order");[2] and

(iii) the Debtors' reply in support of the Sale Motion filed contemporaneously herewith.

A. **The Declarant's Position and Experience**

2. I am the President and CEO of Development Specialists, Inc. ("DSI"). I have provided a full range of crisis management services throughout North America to under-performing companies, including interim management and debtor advisory work; bankruptcy

---

[2] Undefined capitalized terms used herein shall have the meanings ascribed to them in the Sale Order.

preparation and management; litigation support; post-merger integration and debt restructuring and refinancing.

3. DSI is a financial consulting and management firm with offices throughout the United States, as well as an office in London. DSI provides consulting, liquidating, and management services to bankruptcy, insolvent, and reorganizing businesses. DSI operates, manages, and consults "troubled businesses" on behalf of lending institutions, other secured parties, bondholders, shareholder committees, court-approved fiduciaries, and business owners. The firm is experienced in all aspects of insolvency and bankruptcy consulting, and regularly serves as consultants to debtors or trustees in both chapter 7 and chapter 11 proceedings. The firm also frequently lends members of its staff to serve in the role of chapter 7 trustee, chapter 11 trustee, or examiner in a number of matters pending in bankruptcy courts in a variety of districts and jurisdictions throughout the United States. In the past thirty-five years, members of DSI have accepted appointments as chapter 7 and chapter 11 bankruptcy trustees and examiners and other fiduciary responsibilities in over 8,000 cases throughout the United States, Puerto Rico, Virgin Islands, Canada, and Europe.

4. I and members of DSI have been involved with some of the more celebrated financial restructuring cases in the nation's history, including Mercury Finance Company, Southeast Banking Corporation, Malden Mills, the Keck, Mahin & Cate law firm, the Coudert Brothers law firm, the Ohio "Coin Fund" scandal, and the Bernie Ebbers Settlement Trust.

5. I have held my current position with Laboratory Partners since August 20, 2013. I have held my current positions with the other Debtors since October 15, 2013. As a result of my work for the Debtors, review of relevant documents and discussions with other

members of the Debtors' management teams, I am familiar with the operations, business affairs, and books and records of the Debtors. In addition, as CEO of the Debtors, I oversaw the marketing process during these cases and directed the Debtors' advisors regarding such process. I have knowledge of the matters set forth herein and all facts set forth in the Declaration are based on my personal knowledge, my discussions with other members of Debtors' management teams, my review of relevant documents, or my opinion based on my knowledge of the Debtors' operations and financial conditions and the sales process in these cases, except as otherwise noted. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

B. **The Filing of the Debtors' Cases and the Bidding Procedures**

6. On October 25, 2013 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On November 7, 2013, an Official Committee of Unsecured Creditors (the "Committee") was appointed in these cases (D.I. 80).

7. The Debtors provide clinical laboratory and anatomic pathology services to (i) skilled nursing facilities in Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Ohio, Virginia and Washington DC (the "Long-Term Care Division"), (ii) physicians, physician offices and medical groups (the "Talon Division"), in Indiana and Illinois, and (iii) Union Hospital, Inc. in Terre Haute and Clinton, Indiana (the "Union Hospital Division").

8. On October 30, 2013, the Debtors filed the Sale Motion and on November 15, 2013, the Court entered an Order approving the bidding procedures portion of the Sale Motion (the "Bidding Procedures Order") (D.I. 100).

9. In connection with the entry of the Bidding Procedures Order, the Debtors with the assistance of their professionals, solicited bids for the Debtors' assets and provided notice of the potential sales (including notice of the assumption and assignment of contracts) in accordance with the Bidding Procedures Order and as set forth herein. In particular, the Notice of Auctions and Sale Hearings was designed to provide adequate notice to all potentially interested parties and the parties in interest and was widely served in accordance with the Bidding Procedures Order and published in the national edition of the New York Times.

C.  **The Post-Petition Marketing Process**

10. Prior to the filing of the Debtors' cases, the Debtors engaged Duff & Phelps Securities, LLC ("D&P") as the Debtors' investment banker to market the Debtors' assets. D&P was formally retained in the Debtors' cases by Order entered on November 16, 2013 (D.I. 142). I have overseen D&P's efforts in these cases.

11. Since their engagement by the Debtors, D&P has worked diligently to create as much interest as possible in the Debtors' assets. Specifically, D&P prepared marketing materials related to a potential sale of the Debtors' assets and the bid process in these cases. D&P provided these marketing materials to approximately 199 potential strategic and financial buyers that were most likely to express an interest in the Debtors' assets. In selecting the list of parties to contact, D&P focused on financial buyers that, among other things, have experience with buying distressed companies in bankruptcy proceedings as well as strategic buyers known to be in the industry by D&P. Additionally, D&P, with the assistance of the Debtors' senior

management, developed a comprehensive list of additional strategic parties that would also potentially have an interest in bidding for the Debtors' assets.

12. Following these initial canvassing efforts, D&P received positive responses from approximately forty-four (44) parties who were interested in some segment of the Debtors' businesses. These parties entered into confidentiality agreements with the Debtors and received a confidential information memorandum and access to an electronic data room.

13. The original bid deadline for the Talon and/or Union Hospital Divisions was January 15, 2014. To facilitate developing discussions with potential bidders, on January 15, 2014, after consultation with the Committee, the DIP Lender, and the Prepetition Lenders, the Debtors filed a notice extending certain deadlines with respect to the sale of the Talon and Union Hospital Divisions (D.I. 262) (the "Adjournment Notice").[3]

14. The extended Bid Deadline for the Talon and/or Union Hospital Division was February 5, 2014. As of the Bid Deadline and to date, the only Qualified Bid received by the Debtors for such assets is the bid encompassed in the Purchase Agreement (as defined below). As a result, on February 7, 2014, the Debtors filed a notice identifying the Purchaser as the Successful Bidder for the Purchased Assets identified in the Purchase Agreement and canceling the Auction for such Purchased Assets (D.I. 327).

D. **The Purchase Agreement**

15. On or about January 28, 2014, after receiving consent from the Committee, the DIP Lender, and the Prepetition Lenders, the Debtors entered into a stalking horse asset purchase agreement with Laboratory Corporation of America Holdings (the "Purchaser") for substantially all of the Debtors' Talon and Union Hospital Divisions (the

---

[3] The Debtors filed an additional notice extending certain of such deadlines on January 28, 2014 (D.I. 281).

"Purchase Agreement") and filed and served such agreement in accordance with the Bidding Procedures Order (D.I. 282).[4]

16.  The Purchase Agreement represents the culmination of an extensive and good faith negotiation process conducted by the Debtors and their advisors and the Purchaser and its advisors. The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, the sale of the Purchased Assets was not free and clear of all claims, liens, liabilities, rights, interests and encumbrances to the fullest extent permitted by and under sections 363(f) and 105 of the Bankruptcy Code, except as expressly permitted by the Purchase Agreement. The assumption and assignment of the Assigned Contracts as set forth in the Purchase Agreement is integral to the Purchase Agreement and is in the best interests of the Debtors, their estates, creditors, and other parties in interest and represents the exercise of sound business judgment by the Debtors. The Debtors will provide cure and/or other payments or actions required to assume and assign the Assigned Contracts to the Purchaser.

17.  The Purchase Agreement provides for the purchase of certain specified assets and the assumption of certain liabilities. Provider Agreements and provider numbers with Medicare, Medicaid or any other governmental body are not Purchased Assets under the Purchase Agreement. Further, the customer lists to be transferred under the Purchase Agreement do not contain patient protected health information, but are lists of physician practices and other health care entities with whom Sellers have arrangements to provide laboratory services. As of the Petition Date, the Debtors did not have a policy prohibiting the transfer of personally

---

[4] Also on January 28, 2014, the Debtors filed a motion seeking approval of certain bid protections for the Purchaser contained in the Purchase Agreement. The Court entered an Order approving such bid protections on February 4, 2014 (D.I. 310).

identifiable information about individuals to persons that are not affiliated with the Debtors. Accordingly the Debtors do not believe that a privacy ombudsman is required. Additionally, the Purchase Agreement excludes certain of the Debtors' assets, including, without limitation, the business of providing nuclear medicine to Union Hospital, Inc. and clinical laboratory and anatomic pathology services to skilled nursing and long-term care facilities other than in the counties of Greene, Parke, Vermillion and Vigo in the State of Indiana and the counties of Clark, Edgar and Vermillion in the State of Illinois. The Debtors continue to market the assets that are not included in the Purchase Agreement.

### E. The Purchaser is a Good Faith Purchaser

18. Negotiations of and the transactions contemplated by the Purchase Agreement were and are undertaken by the Debtors and the Purchaser at arms' length, without collusion and in good faith. The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors. At all times, the Debtors were free to deal with any other party interested in acquiring the Purchased Assets. The Purchaser is not an "insider" of the Debtors. The consideration to be provided by the Purchaser pursuant to the Purchase Agreement: (a) is fair and reasonable; (b) is the highest and otherwise best offer for the Purchased Assets; and (c) constitutes reasonably equivalent value and fair consideration. Consummation of the sale contemplated in the Purchase Agreement will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors, their creditors and estates.

19. For these reasons, the Sale Order should be entered and the sale of the Purchased Assets to the Purchaser should be approved.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 10th day of February 2014, at New York, New York.

_____
WILLIAM A. BRANDT JR.

*[Signature Page for Brandt Sale Declaration]*

7987321