**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------x
In re                                                 :   Chapter 11
                                                      :
Laboratory Partners, Inc., *et al.*,[1]               :   Case No. 13-12769 (PJW)
                                                      :
             Debtors.        :   (Jointly Administered)
                                                      :
---------------------------------------------------------x   **Re: D.I. 46, 100, 262, 281, 282, 324, 331**

**REPLY IN SUPPORT OF DEBTORS' MOTION FOR ORDERS:
(A)(I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH
SALE(S) OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS;
(II) SCHEDULING HEARINGS TO CONSIDER SALES; (III) APPROVING
FORM AND MANNER OF NOTICE THEREOF; AND (IV) AUTHORIZING
ENTRY INTO STALKING HORSE AGREEMENTS SUBJECT TO
FURTHER HEARING; (B)(I) AUTHORIZING AND APPROVING SALES OF
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
INTERESTS; AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C)
<u>GRANTING RELATED RELIEF</u>**

        The debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>") hereby file this reply (the "<u>Reply</u>"), in support of the *Debtors' Motion for Orders: (A)(I) Approving Bidding Procedures in Connection with Sales(s) of Substantially all of the Debtors' Assets; (II) Scheduling Hearings to Consider Sales; (III) Approving Form and Manner of Notice Thereof; and (IV) Authorizing Entry into Stalking Horse Agreements Subject to Further Hearing; (B)(I) Authorizing and Approving Sales of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory*

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as Medlab. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

*Contracts and Unexpired Leases; and (C) Granting Related Relief* (D.I. 46) (the "Sale Motion")[2] and in response to the Objection (as defined below). The declaration of William B. Brandt, Jr. in support of the Sale Motion (the "Brandt Declaration") (D.I. 331), filed contemporaneously herewith, is incorporated herein by reference. For their Reply and in support of the Sale Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1. The remaining substantive objection to the sale of substantially all of the Debtors' Talon and Union Hospital Divisions to the Purchaser is the Objection asserted by the Secretary. The Debtors submit that the Objection, in large part, arises from a misreading of the Sale Order, Purchase Agreement and ancillary agreements. The Debtors and the Secretary are continuing to discuss the issues raised in the Objection and the Debtors are hopeful that the Objection can be resolved. To the extent the Secretary determines to press its Objection, the Debtors submit that the Objection should be overruled for the following reasons, as more fully explained below: (a) the Medicare and Medicaid Provider Agreements will not be assigned to the Purchaser by operation of the Purchase Agreement or any provision of the Sale Order, (b) the appointment of the Purchaser as the Debtors' billing agent does not violate federal law, (c) the Transition Services Agreement does not violate federal law, (d) the Sale Order does not violate HIPAA, (e) neither the Sale Order nor the Purchase Agreement affect the United States' setoff or recoupment rights, and (f) the Secretary has failed to allege how the form HIPAA Business Associate Addendum does not comply with federal law.

---

[2] Undefined capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion or Sale Order (as defined below).

[3] Undefined capitalized terms used in the Preliminary Statement shall have the meanings ascribed below.

**BACKGROUND**

2.    On October 25, 2013 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On November 7, 2013, an Official Committee of Unsecured Creditors (the "Committee") was appointed in these cases (D.I. 80).

3.    On October 30, 2013, the Debtors filed the Sale Motion and on November 15, 2013, the Court entered an Order approving the bidding procedures portion of the Sale Motion (the "Bidding Procedures Order") (D.I. 100). As set forth in the Brandt Declaration, the Debtors, with the assistance of their professionals, solicited bids for their assets and provided notice of the potential sales (including notice of the assumption and assignment of contracts) in accordance with the Bidding Procedures Order.

4.    On January 15, 2014, after consultation with the Committee, the DIP Lender, and the Prepetition Lenders, the Debtors filed a notice extending certain deadlines with respect to the sale of the Talon and Union Hospital Divisions (D.I. 262) (the "Adjournment Notice").[4]

5.    Also on or about January 28, 2014, after receiving consent from the Committee, the DIP Lender, and the Prepetition Lenders, the Debtors entered into a stalking horse asset purchase agreement with Laboratory Corporation of America Holdings (the "Purchaser") for substantially all of the Debtors' Talon and Union Hospital Divisions (the "Purchase Agreement") and filed and served such agreement in accordance with the Bidding

---

[4] The Debtors filed an additional notice extending certain of such deadlines on January 28, 2014 (D.I. 281).

3

Procedures Order (D.I. 282). The Purchase Agreement attached a proposed form of sale order approving the Purchase Agreement as an exhibit (the "Sale Order").

6. The Bid Deadline for the Talon and/or Union Hospital Division was February 5, 2014. The Debtors did not receive any additional Qualified Bids other than the Purchase Agreement by the Bid Deadline. As a result, on February 7, 2014, the Debtors filed a notice identifying the Purchaser as the Successful Bidder for the Purchased Assets identified in the Purchase Agreement and canceling the Auction for such Purchased Assets (D.I. 327).

7. Pursuant to the Bidding Procedures Order, objections related to cure of executory contracts and unexpired leases were due within ten or fourteen days after service of cure notices. The Debtors have received several formal and informal comments from contract counter-parties regarding cure amounts related to the sale to the Purchaser; however, the Debtors believe that such objections have been resolved and are awaiting further confirmation of the same.

8. Pursuant to the Adjournment Notice, general sale objections to the Sale to the Purchaser were due on February 6, 2014 at 4:00 pm. (ET). As of the objection deadline, the only general sale objections (D.I. 216, 324) (together, the "Objection") received were from the Secretary. Although the Debtors continue to discuss the Objection with the Secretary, for the reasons set forth below, the Debtors believe the Objection is meritless and should be overruled.

**REPLY**

A. **Medicare and Medicaid Provider Agreements Will Not Be Assigned to Purchaser.**

9. The Objection raises a concern regarding assignment of Provider Agreements with Medicare and Medicaid. As acknowledged by the Secretary in the Objection, however, paragraph 1.4(q) of the Purchase Agreement specifically provides that no Provider

4

Agreement or provider numbers with Medicare, Medicaid or any other Governmental Body will be assumed by, or assigned to, Purchaser.[5]  Further, nothing in paragraph 11 of the Sale Order permits the use, assignment or assumption of any Provider Agreement or provider number with any Governmental Body.  Indeed, the language of the Purchase Agreement not only does not permit the Purchaser to "operate under the auspices of any of the Debtors' agreements with the Secretary," it specifically prohibits Purchaser from doing so.  Paragraph 11 of the Sale Order does nothing to change this, but simply includes a general authorization for the Purchaser to operate with respect to the Purchased Assets.  Because Medicare and Medicaid Provider Agreements are not Purchased Assets and will not be assigned under the terms of the Purchase Agreement or the Sale Order, there is no violation of federal law in connection with the sale of the Purchased Assets, nor is there any attempt to circumvent applicable federal law by way of Paragraph 11, or any other provision for that matter, of the Sale Order.  Therefore, the Debtors respectfully request that this Objection be overruled.

### B. Appointment of Purchaser as Sellers' Billing Agent Does Not Violate the Anti-Assignment Provision Set Forth at 42 C.F.R. § 424.73.

10. The Objection next raises a concern with the billing services to be provided by the Purchaser after the Closing.  The federal anti-assignment provision in 42 C.F.R. § 424.73 cited by the Secretary provides that, unless an enumerated exception is applicable,

---

[5] Paragraph 1.4(q) provides as follows:  "Without limitation of the foregoing and notwithstanding anything to the contrary set forth herein, in no event shall Purchaser assume or be deemed to assume any of Sellers' provider numbers under any Programs, or any of Sellers' agreements with the federal Medicare program, any state Medicaid program, or any other payor of health care services that is a Governmental Body (each a "Governmental Payor"), and Purchaser shall not be liable in any manner for any Liability of the Sellers to any Governmental Payor or third party payor, whether known or unknown, including any Liability for past overpayments, civil monetary penalties or false claims, and any Liabilities arising out of any failure of Seller to comply with any Law, regulation, rule, manual provision or other requirement applicable to providers of services paid under any Programs."

Medicare does not pay amounts that are due to a provider to any other person under an assignment, or power of attorney, or any other direct payment arrangement. *See* 42 C.F.R. § 424.73(a).[6] However, *Medicare will make payment to an agent of the provider who furnishes billing and collection services to the provider*. *See* 42 C.F.R. § 424.80(b)(4) (permitting assignment to a billing agent if the conditions of 42 C.F.R. § 424.73(b)(3) are met; specifically, if the billing agent, in receiving the payment, acts only on behalf of the supplier and the payment by Medicare is made in the name of the supplier).

11. The Transition Services Agreement (Exhibit C to the Purchase Agreement) does not violate the anti-assignment provision as alleged in the Secretary's Objection. To the contrary, Sellers are required by federal law to notify Medicare, via submission of the CMS Form 855B, that they will be using a billing agent to prepare and submit claims to Medicare on their behalf.[7] The Sellers are obligated to comply, and will comply, with this requirement pursuant to the terms of and as contemplated by the Transition Services Agreement. Likewise, each of the elements of 42 C.F.R. § 424.73(b)(3) is otherwise met, including that Purchaser's compensation under Sections 2(c) and 3 of the Transition Services Agreement is not related in any way to the dollar amounts billed or collected nor dependent upon actual collection of payment.

12. Further, neither the Purchase Agreement nor the Transition Services Agreement provides for the assignment of any Medicare accounts receivables of Sellers to the

---

[6] It should be noted that Sellers are Medicare Part B "suppliers." As such, 42 C.F.R. § 424.73(a) is not applicable to Sellers, but rather is directed to Medicare Part A "providers". However, Sellers acknowledge that they are subject to a similar federal anti-assignment provision applicable to Medicare Part B "suppliers" found at 42 C.F.R. § 424.80(a).

[7] *See*, CMS Form 855B, Section 8: Billing Agency Information. "A billing agency is a company or individual that you contract with to prepare and submit your claims. If you use a billing agency, you are responsible for the claims submitted on your behalf."

Purchaser. In fact, paragraph 1.2(b) of the Purchase Agreement specifically includes as an *excluded asset* "**all accounts receivable and notes receivable** (whether current or non-current) of any Seller or any Affiliates, including, with respect to the Business, **all accounts receivable and notes receivable created or otherwise relating to any periods prior to the Closing Date.**" (emphasis added). The Transition Services Agreement is required in order for Sellers to submit claims for services provided prior to the Closing Date, which claims will be submitted on Seller's behalf and payable to Sellers, because Sellers will no longer have the necessary staff to prepare and submit the claims without engaging an agent. Under the Transition Services Agreement, Purchaser will submit claims on behalf of the Sellers and, if it receives any payments from Medicare, such payments will be received in the name of Sellers, for the sole benefit of Sellers.

13. While the terms of the Purchase Agreement and the Transition Services Agreement are in full compliance with the federal anti-assignment provisions related to billing agents, it is also clear that the Transition Services Agreement does not involve a reassignment because the Purchaser will not, as a matter of course, be receiving the payments from Medicare on behalf of the Sellers. The parties' intent is for all payments to be made under the Transition Services Agreement to Sellers, in Sellers name, to a bank account solely controlled by Sellers. As noted in the Medicare Claims Processing Manual, Chapter 1, Section 30.2.4 (Payment to Agent - Claims Submitted to Carriers), "[A]n [billing] agency is an entity that provides computer and other billing to prepare claims, *and receives and processes Medicare benefit checks for the provider, supplier, physician or other practitioner*. . . . The conditions specified in subsection A [restating the requirements of 42 C.F.R. § 424.73(b)(3)] *do not apply if the agent merely prepares bills for the provider and does not receive and negotiate the checks payable to the*

7

*provider/supplier*" (emphasis added).  Under the Transition Services Agreement, Purchaser will not receive and negotiate checks as Medicare payments will continue to be made directly via electronic funds transfer to Seller's bank account.  Provisions in the Transition Services Agreement regarding forwarding of payments inadvertently or erroneously made to Purchaser, but owing to Sellers, are merely designed to ensure any payments erroneously directed to Purchaser are forwarded to Sellers.

14. For all of these reasons, the Debtors believe this Objection should be overruled.

    **C.**    **The Transition Services Agreement Does Not Violate Federal Law.**

15. In addition, "[t]he Secretary objects to Paragraph 12 of the Talon Asset Purchase Agreement (sic) *to the extent* it fails to comply with federal law."  There is no Paragraph 12 of the Purchase Agreement but to the extent the Secretary is referring to Paragraph 12 of the Transition Services Agreement (Exhibit C), Paragraph 12 is in full compliance with federal law, as articulated in Section B above.  Further, to the extent that the Secretary meant to object to paragraph 35 of the Sale Order, the Debtors are uncertain as to the basis of the objection.  For these reasons, the Debtors respectfully request that this Objection be overruled.

    **D.**    **The Sale Order Does Not Violate HIPAA.**

16. The Secretary further objects *to the extent* that the Debtors are selling customer lists to a non-covered entity. In its Objection, the Government appears to have conflated the phrase "customer lists" with "patient lists".  The customer lists, which are included as a Purchased Asset under Paragraph 1.1(e) of the Purchase Agreement, do not contain patient protected health information.  While the Secretary acknowledges in its Objection that it had no details about the customer lists, it nevertheless asserted that such customer lists "almost certainly

8

contain protected health information whose sale is restricted under HIPAA." Objection, ¶ 4. The customer lists to be sold to Purchaser contain the names of the physician practices and other health care *entities* with whom Sellers have arrangements to provide laboratory services. Brandt Declaration, ¶ 17. The customer lists do not contain the names of individual patients who have received prior laboratory testing from Sellers. *See id.* Thus, the customer lists do not contain "protected health information whose sale is restricted under HIPAA."

17. To the extent that any protected health information is transferred from Sellers to Purchaser through the sale, the Purchase Agreement contains the following unqualified representation and warranty of the Purchaser: "Purchaser is a 'covered entity' as defined by HIPAA." Purchase Agreement, ¶ 5.5. The Sale Order appropriately makes a similar determination at paragraph 27. The Secretary concedes that "if the Purchaser is a covered entity under HIPAA, the sale of the Acquired Assets would not necessarily require the authorization of the beneficiaries as it would be considered a disclosure for the purposes of health care operations."[8] Objection ¶ 5. A "covered entity" under HIPAA is defined to include "any health care provider who transmits any health information in electronic form." *See* 45 C.F.R. § 160.103. The Purchaser, one of the largest laboratory services providers in the United States, has represented and warranted in the Purchase Agreement that it is a "covered entity." *See* Purchase Agreement, ¶ 5.5; PRWeb.com, *Diagnostic & Medical Laboratories in the US Industry Market*

---

[8] HIPAA permits the disclosure of protected health information between covered entities for purposes of health care operations. *See* 45 C.F.R. § 164.506. Health care operations include, "The sale, transfer, merger, or consolidation of all or part of the covered entity with another covered entity, or an entity that following such activity will become a covered entity and due diligence related to such activity." 45 C.F.R. § 164.501 (paragraph 6(iv) of definition of "Health care operations"). In addition, in this instance, Purchaser will also serve as a custodian of protected health information on behalf Sellers pursuant to a Custodian of Records Agreement, which disclosure is permitted to a business associate of a covered entity. *See* 45 C.F.R. § 164.502(e).

*Research Report From IBISWorld Has Been Updated* (July 3, 2013); http://www.prweb.com/releases/2013/7/prweb10900273.htm (noting Quest Diagnostics and Laboratory Corporation of America are the top two players in the diagnostic and medical laboratories industry).

19. 18.    For the above reasons, Debtors respectfully request that this Objection be overruled.

### E.   Neither the Sale Order nor the Purchase Agreement Affect The United States' Setoff or Recoupment Rights.

19.    The Objection also objects to the Motion, *to the extent* any rights of setoff or recoupment of the United States are affected. The Objection does not, however, articulate how the Sale Order or the Purchase Agreement may affect any such rights.  As explained herein, the Sale Order and Purchase Agreement do not transfer or assign any of the Debtors' accounts receivable or accounts payable to the Purchaser.  The Sale Order and Purchase Agreement also do not affect any parties' rights that do not relate to the Purchased Assets.  To the extent that the United States is objecting to the sale of the Purchased Assets simply because the sold divisions will no longer have income after all accounts receivable are collected, the Objection should be overruled as their Debtors' right to sell their assets with approval of this Court is specifically authorized by the Bankruptcy Code and the Objection states no legal basis to the contrary.  As a result, the Debtors believe the Objection should be overruled.

### F.   The Form HIPAA Business Associate Addendum Complies with Federal Law.

20.    The Secretary finally objects to the Form HIPAA Business Associate Addendum *to the extent* it does not comply with federal non-bankruptcy law.  However, the Secretary fails to assert any basis for its assertion that the HIPAA Business Associate Addendum fails to comply.  The Debtors are unaware of the reason why the Secretary alleges the HIPAA

Business Associate Addendum is not in full compliance with federal law and as such, believe that this Objection should be overruled.  To the extent that the Secretary requests the inclusion of additional terms in the HIPAA Business Associate Addendum, then the Debtors and the Purchaser will consider including such additional terms if necessary to satisfy applicable law.

## CONCLUSION

WHEREFORE, for the reasons discussed, the Debtors respectfully request that the Court: (i) overrule the Objection; (ii) grant the relief requested in the Sale Motion with respect to the sale of the Talon and Union Hospital Divisions, as set forth in the Purchase Agreement; (iii) enter the Proposed Sale Order; and (iii) grant such other and further relief as it deems appropriate.

Dated: February 11, 2014
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Erin R. Fay*
Robert J. Dehney (No. 3578)
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Erin R. Fay (No. 5268)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone:  302-658-9200
Facsimile:  302-658-3989

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP
Leo T. Crowley
Jonathan J. Russo
Margot Erlich
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Counsel to Debtors and Debtors in Possession*

7986831.2