IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
In re                                     :   Chapter 11
                                          :
Laboratory Partners, Inc., *et al.*,[1]   :   Case No. 13-13-12769 (PJW)
                                          :
            Debtors.                      :   (Jointly Administered)
                                          :   **Re: D.I. 358, 359, 361, 363**
---------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING (A) THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT WITH UNION HOSPITAL, INC., (B) THE SALE OF CERTAIN OF THE DEBTORS' ASSETS TO UNION HOSPITAL, INC. PURSUANT TO SUCH ASSET PURCHASE AGREEMENT AND FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) MUTUAL RELEASES; AND (D) RELATED RELIEF**

Upon the motion (the "Motion") of the debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002 and 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*, authorizing and approving (a) the sale of certain assets relating to the Debtors' nuclear medicine business (the "Purchased Assets") described in and pursuant to the terms and conditions of the Asset Purchase Agreement, dated as of February 21, 2014 and substantially in the form annexed hereto as **Exhibit A** (collectively with all exhibits thereto and the Ancillary Agreements, the "Purchase Agreement") by and between certain of the Debtors, as sellers (the "Sellers"), and Union Hospital, Inc. (the

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as MEDLAB. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

"Purchaser"), and (b) related relief; and a hearing on the Motion having been held on March 6, 2014 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Hearing and the Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED:

I. **General**

A. All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Purchase Agreement.

B. The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Motion and the transaction that is the subject of the Purchase Agreement are core proceedings under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

D. On November 15, 2013, the Court entered the *Order: (I) Approving Bidding Procedures In Connection With Sale(s) Of Substantially All Of The Debtors' Assets; (II) Scheduling Hearing To Consider Sale; (III) Approving Form And Manner Of Notice Thereof; (IV) Authorizing Entry Into Stalking Horse Agreements Subject To Further Hearing; And (V) Granting Related Relief* (D.I. 100) (the "Bidding Procedures Order"), pursuant to which the Court, *inter alia*, approved the bidding procedures annexed to the Bidding Procedures Order for sales of the Debtors' assets and established procedures for the assumption, assignment and/or transfer of the executory contracts and unexpired leases to any purchaser of the Debtors' assets

and to resolve any objections thereto, including procedures to set the cure amounts to be paid under section 365 of the Bankruptcy Code.

  E. On February 21, 2014, the Debtors filed and served the Motion (D.I. 358, 361) seeking approval of the sale of the Purchased Assets to the Purchaser, along with a motion to shorten notice of the Motion (the "Motion to Shorten") (D.I. 359) and on February 24, 2014, the Court entered an Order (D.I. 363) approving the Motion to Shorten, setting corresponding objection deadlines, and setting the Sale Hearing for March 6, 2014.

  F. As evidenced by the certificates of service and publication filed with the Court (D.I. 58, 136, 269, 273, 375, 376) and based on the representations and argument of counsel, and evidence proffered or adduced, at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the transactions contemplated therein, and the Sale Hearing has been provided in accordance with sections 102, 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rule 2001-1; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the transactions contemplated therein, the Sale Hearing and the entry of this Order is required.

  G. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the U.S. Trustee; (ii) counsel for and members of the official committee of unsecured creditors appointed in these cases (the "Committee"); (iii) counsel to the DIP Lender and the Prepetition Lenders; (iv) all entities (or counsel therefor) known or reasonably believed to have asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon any portion of the Purchased Assets; (v) all Persons known or reasonably believed to have expressed

a bona fide interest in acquiring some or all of any of the Purchased Assets within the last six months; (vi) federal, state and local regulatory or taxing authorities or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any reasonably known interest in the relief requested by the Motion; (vii) the Internal Revenue Service; (viii) the Attorneys General in the states where the Purchased Assets are located; and (ix) all parties that have requested, prior to the date of service of the notice, or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## II. The Bankruptcy Cases

H. On October 25, 2013, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

I. The Debtors have asserted and provided notice to the Court and the United States Trustee that their business is not a health care business as defined under section 101(27A), and therefore, a patient care ombudsman is not required as provided in section 333 of the Bankruptcy Code.

J. The Debtors assert that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in section 363(b)(1)(B).

## III. The Sale Process for the Purchased Assets

K. Debtors have marketed the Purchased Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and best offer or offers therefor by, among other things, delivering offering materials to potential purchasers and inviting potential

purchasers to meet with management and the Debtors' professionals and providing potential purchasers with the opportunity to conduct extensive due diligence. In addition, the Debtors delivered the Bidding Procedures Order, the Bidding Procedures, the notices and the Motion to each of the entities that had previously expressed an interest in the Purchased Assets.

L. Potentially interested parties were afforded a full, fair and reasonable opportunity to make a higher or better offer for the Purchased Assets and no higher or better offer has been made than that of the Purchaser.

### IV. The Sale of the Purchased Assets to the Purchaser

M. The transactions effectuating, and the terms and conditions governing, the sale of the Purchased Assets to the Purchaser are embodied in the Purchase Agreement, which is in substantially the form attached hereto as **Exhibit A**.

N. The Purchase Agreement contemplates that the sale of the Purchased Assets shall be free and clear of all liens, claims, interests, and other encumbrances within the meaning of section 363(f) of the Bankruptcy Code (collectively, "liens"), except as expressly permitted by the Purchase Agreement; provided, however, that all liens will attach to the proceeds of the Sale with the same priority, validity, force and effect as established under the *Final Order Pursuant to 11 U.S.C. 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying the Automatic Stay* [D.I. 153] (the "Final DIP Order") and applicable nonbankruptcy law.

O. The Net Asset Sale Proceeds (as defined in the DIP Documents), if any, shall be applied as set forth in the DIP Documents (as defined in the Final DIP Order), unless

otherwise agreed to by the Debtors, Prepetition Lenders and DIP Lender.

P. The Purchaser's obligation to consummate the transactions contemplated in the Purchase Agreement is subject to the specific conditions outlined in the Purchase Agreement, including Court approval. As of the date of entry of this Order, there is no known failure of any condition under the Purchase Agreement to the Purchaser's obligation to consummate the Sale that would entitle the Purchaser not to consummate the Sale pursuant to the Purchase Agreement or to terminate the Purchase Agreement.

Q. The Purchase Agreement was negotiated, proposed, and entered into by and between the Purchaser and the Debtors without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the application of section 363(n) of the Bankruptcy Code to the Sale, including having the Purchase Agreement voided.

R. The Purchaser is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction under the Purchase Agreement at any time after the expiration of any stay of this Order, whether pursuant to Bankruptcy Rule 6004(g) or otherwise.

S. The Purchaser is not an insider of any of the Debtors as that term is defined under section 101 of the Bankruptcy Code.

T. The terms and conditions of the Purchase Agreement: (i) are fair and reasonable, (ii) valid, binding and enforceable, (iii) constitute the highest and best offer for the Purchased Assets, (iv) will provide a greater recovery for the Debtors' creditors than would be

provided by any other practical available alternative, and (v) constitute reasonably equivalent value and fair consideration for the Purchased Assets under the Bankruptcy Code and the Uniform Fraudulent Transfer Act.

U.     The transactions contemplated by the Purchase Agreement will, upon consummation thereof (the "Closing"), (i) be a legal, valid, and effective transfer of the Purchased Assets to the Purchaser with no further action required on the part of the Debtors or their respective affiliates and (ii) vest the Purchaser with good title to the Purchased Assets free and clear of all liens within the meaning of section 363(f) of the Bankruptcy Code, except as expressly permitted by the Purchase Agreement.

V.     The Purchaser would not have entered into the Purchase Agreement and will not consummate the transactions described in the Purchase Agreement (thus adversely affecting the bankruptcy estate and its creditors) if the sale of the Purchased Assets was not free and clear of all liens, except as expressly permitted by the Purchase Agreement.

W.     Neither the Purchaser nor any of its affiliates is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Purchase Agreement.

X.     The relief sought in the Motion, including approval of the Purchase Agreement and consummation of the transactions contemplated thereof, is in the best interests of the Debtors, their bankruptcy estates, creditors, and all parties in interest. The Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates.

Y.     Upon entry of this Order, the Debtors have all the corporate or

organizational power and authority necessary to consummate the transactions contemplated by the Purchase Agreement.

Z. Except as otherwise provided in this Order, no consents or approvals, other than this Order and those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement.

AA. The Debtors have demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of their business judgment, to (i) sell the Purchased Assets on the terms and conditions set forth in the Purchase Agreement; and (ii) consummate all transactions contemplated by the Purchase Agreement, and the sale of the Purchased Assets is in the best interests of the Debtors, their estates and their creditors.

BB. The provisions of section 363 of the Bankruptcy Code have been complied with and are applicable to the sale of the Purchased Assets.

CC. The Debtors may consummate the transactions and transfer the Purchased Assets free and clear of all liens of any kind or nature whatsoever, except as expressly permitted by the Purchase Agreement, because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did object to the Motion and the relief requested therein fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their liens attach

to the net proceeds of the transactions with the same validity, enforceability, priority, force and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens.

DD.   Except as otherwise provided in the Purchase Agreement, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability.

EE.   To the extent that the Purchased Assets constitute all or substantially all of the assets of any of the Debtors, substantial and sufficient business exigencies exist that permit the Purchased Assets to be sold outside of the context of a plan of reorganization.

FF.   Those of the Debtors' employees that may be hired by the Purchaser may be hired under new employment contracts or other arrangements to be entered into or to become effective at or after the Closing.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

I.   **General Provisions**

1.   The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall

be so deemed.

2. The Motion is granted and all objections or responses to the Motion are hereby resolved in accordance with the terms of this Order and as set forth in the record at the Sale Hearing. To the extent that such objections or responses were not otherwise overruled, withdrawn, settled, or resolved, they are hereby overruled and denied.

3. All parties in interest have had the opportunity to object to the relief requested in the Motion and to the extent that objections to the Motion or the relief requested therein have not been withdrawn, waived or settled, such objections and all reservations of right included therein, are overruled on the merits. The parties who did not object, or who withdrew their objections, to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

4. The Court finds and concludes that the Debtors' business is not a health care business as defined under section 101(27A), and therefore, a patient care ombudsman is not required as provided in section 333 of the Bankruptcy Code.

5. The Court finds that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in section 363(b)(1)(B).

II. **Approval of the Purchase Agreement**

6. The Purchase Agreement and all of the terms and conditions contained therein are approved in their entirety and are binding upon the parties thereto.

7. The Sale of the Purchased Assets and the terms and conditions contemplated by the Purchase Agreement, including, without limitation, the closing of the transactions contemplated by the Purchase Agreement, are hereby approved pursuant to sections

105(a) and 363 of the Bankruptcy Code.

8. The Debtors are authorized and directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Purchase Agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the Purchase Agreement.

### III. Transfer of the Purchased Assets to the Purchaser

9. The sale of the Purchased Assets, pursuant to this Order and the Purchase Agreement, will vest the Purchaser with good title to the Purchased Assets and will be a legal, valid and effective transfer of the Purchased Assets free and clear of all liens, except as expressly permitted by the Purchase Agreement.

10. Except as expressly provided in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Purchased Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all liens, with all such liens to attach to the proceeds of sale of the Purchased Assets in the order of their priority, and with the same validity, priority, force and effect which they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens.

11. All persons or entities holding liens in, to or against the Purchased Assets shall be, and they hereby are, forever barred from asserting such liens against Purchaser, its successors and assigns or such Purchased Assets after Closing.

### VI. Sale Proceeds

12. The Net Asset Sale Proceeds, if any, shall be distributed in accordance with the terms of the Final DIP Order, unless otherwise agreed to by the Debtors, the Prepetition

Lenders and the DIP Lender. The allocation of the value by the Buyer to the Purchased Assets for tax purposes shall not be binding on the Court or any party for purposes of these chapter 11 cases or distributions.

### VII. Mutual Releases

13. Purchaser, on behalf of itself and each of its subsidiaries and affiliates (each, a "Purchaser Party") hereby irrevocably and unconditionally fully releases, discharges and waives any and all claims, demands, suits, causes of actions, liabilities, obligations, damages, judgments, rights to payment, costs and expenses whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, contingent or non-contingent, liquidated or unliquidated, priority or unsecured, pre-petition or post-petition in law, equity or otherwise which against any Debtor, any of Debtor's Affiliates, and any of their respective directors, officers, stockholders, employees, advisors, attorneys, representatives and agents and each of their successors and assigns (each a "Debtor Party" and collectively, the "Debtor Parties") a Purchaser Party ever had, now has or may have in the future (including under Bankruptcy Code sections, including but not limited to, 365(d)(3), 365(d)(5), 365(g), 501(a), 502(b)(6), 502(g)(1), 503(b)(1)(A), 507(a)(2)) directly or indirectly arising out of or in connection with, in whole or in part, any facts, events, occurrences, acts, omissions or any other matter taking place on or prior to the Closing Date directly or indirectly relating to any agreement, understanding or relationship between the parties. For the avoidance of doubt, no Purchaser Party shall file any proofs of claim (or shall withdraw any previously filed proofs of claim) against any of the Debtors for any amounts owed pre or post-petition (whether as rejection damages, administrative or other claim) related to such matters covered by the release contained herein.

14. Each Seller, on behalf of itself and each of its subsidiaries and affiliates

(each, a "<u>Debtor Releasor</u>"), hereby irrevocably and unconditionally fully releases, discharges and waives any and all claims, demands, suits, causes of actions, liabilities, obligations, damages, judgments, rights to payment, costs and expenses whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, contingent or non-contingent, liquidated or unliquidated, priority or unsecured, pre-petition or post-petition in law, equity or otherwise which against any Purchaser Party (or any of its officers, directors, stockholders, employees, advisors, attorneys, representatives and agents) a Debtor Releasor ever had, now has or may have in the future directly or indirectly arising out of or in connection with, in whole or in part, any facts, events, occurrences, acts, omissions or any other matter taking place on or prior to the Closing Date directly or indirectly relating to any agreement, understanding or relationship between the parties; provided, however, that, notwithstanding the foregoing, nothing in this release shall modify or otherwise limit in any manner whatsoever any obligation a Purchaser Party may have to any Debtor Party arising out of or related to the Laboratory Services Agreement, the Service Agreements or the Purchase Agreement.

**VIII.** **<u>Miscellaneous Provisions</u>**

15. At Closing, Purchaser shall deliver to Sellers, among other things, the Lease Amendments and Termination to the Services Agreements.

16. The Sale of the Purchased Assets is consistent with the Debtors' policy concerning the transfer of personally identifiable information and no consumer privacy ombudsman is necessary as set forth in sections 332 or 363(b)(1) of the Bankruptcy Code.

17. The consideration to be paid by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

18. This Order (a) is and shall be effective as a determination that, upon the Closing, except as expressly provided in the Purchase Agreement, all liens existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all liens.

19. If any person or entity that has filed financing statement, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens or claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all interests or claims that the person or entity has with respect to the Purchased Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens or claims in the Purchased Assets of any kind or nature.

20. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right

(including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

21. Except with respect to enforcing the terms of the Purchase Agreement, this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

22. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

23. In the absence of a stay of the effectiveness of this Order, in the event that the Purchaser and the Debtors consummate the transactions contemplated by the Purchase Agreement at any time after entry of this Order, then with respect to the transactions approved and authorized herein, the Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

24. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement without charge or tax to the Debtors or Purchaser.

25. Until these cases are closed or dismissed, the Court shall retain exclusive

jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (b) to compel transfer of the Purchased Assets to the Purchaser; (c) to compel the Purchaser to perform all of its obligations under the Purchase Agreement; and (d) to interpret, implement and enforce the provisions of this Order.

26. The terms of this Order and the Purchase Agreement shall be binding on and inure to the benefit of the Debtors, the Purchaser, and the Debtors' creditors (whether known or unknown) and all other parties in interest, and any successors of the Debtors, the Purchaser and the Debtors' creditors, including any trustee or examiner appointed in these cases or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

27. The failure to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Purchase Agreement be authorized in its entirety.

28. Any conflict between the terms and provisions of this Order and the Purchase Agreement shall be resolved in favor of this Order.

29. The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase Agreement without further order of the Court.

17

30. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rule 6004(g) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Purchase Agreement immediately upon entry of this Order. Time is of the essence in closing the transaction and parties to the Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of this Purchase Agreement.

Dated: _March 6_, 2014          _/s/ Peter J. Walsh_
                                 THE HONORABLE PETER J. WALSH
                                 UNITED STATES BANKRUPTCY JUDGE