## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------x
In re                                    :        Chapter 11
                                         :
Laboratory Partners, Inc., et al.,¹      :        Case No. 13-12769 (PJW)
                                         :
          Debtors.                       :        (Jointly Administered)
--------------------------------------------------------x
```

---

## DISCLOSURE STATEMENT FOR DEBTORS' JOINT CHAPTER 11 PLAN

---

Dated: May 21, 2014

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Robert J. Dehney (No. 3578)
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Erin R. Fay (No. 5268)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone:  302-658-9200
Facsimile:  302-658-3989

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP
Leo T. Crowley
Jonathan J. Russo
Margot Erlich
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Counsel to Debtors and Debtors in Possession*

---

¹     The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485).  Certain of the Debtors do business as MEDLAB.  The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

**PLEASE REVIEW THIS DOCUMENT FOR IMPORTANT INFORMATION REGARDING:**
   * **Description of the Debtors**
   * **Classification and Treatment of Claims and Interests**
   * **Implementation and Execution of the Plan**
   * **Treatment of Contracts and Leases**
   * **Procedures to Assert Professional Fee, Administrative Expense Request and Rejection Claims**

**AND IMPORTANT DATES:**
   * **Record Date – May 15, 2014**
   * **Deadline to Submit Ballots – _____, 2014 (the "Voting Deadline")**
   * **Deadline to Object to Plan Confirmation– _____, 2014**
   * **Hearing on Plan Confirmation– _____, 2014**

**YOUR BALLOT, IF APPLICABLE, IS ATTACHED TO THE END OF THIS DOCUMENT.  PLEASE REVIEW THIS DOCUMENT AND COMPLETE AND RETURN THE BALLOT PER THE INSTRUCTIONS CONTAINED HEREIN.**

**A COPY OF THIS DISCLOSURE STATEMENT AND THE DEBTORS' JOINT CHAPTER 11 PLAN CAN BE FOUND AT www.bmcgroup.com/laboratorypartners.**

1.  **INTRODUCTION.**

   1.1.  **Purpose of the Disclosure Statement.**

   Notice of this disclosure statement (as amended, modified or supplemented, the "**Disclosure Statement**") is being provided by Laboratory Partners, Inc., Kilbourne Medical Laboratories, Inc., MedLab Ohio, Inc., Suburban Medical Laboratory, Inc., Biological Technology Laboratory, Inc., Terre Haute Medical Laboratory, Inc., and Pathology Associates of Terre Haute, Inc. (collectively, the "**Debtors**," or, alternatively, the "**Proponents**") to the Office of the United States Trustee, counsel to the Prepetition Lenders, the Internal Revenue Service, all parties that have requested, prior to the date hereof, or that are required to receive notice pursuant to Bankruptcy Rule 2002, and counsel to the Committee pursuant to Section 1125(b) of Title 11 of the United States Code (the "**Bankruptcy Code**") for the purpose of soliciting acceptances of the Debtors' Joint Chapter 11 Plan (the "**Plan**").  The Plan has been filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan.  A copy of the Plan is attached hereto as **Exhibit A**.  All capitalized terms used within this Disclosure Statement which are not defined herein or in section 1.2 of the Disclosure Statement have the meanings set forth in the attached Plan.

   **By Order (D.I.  ____) dated _____, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under Section 1125 of the Bankruptcy Code (the "Disclosure Statement Order").  A hearing on confirmation of the Plan shall be held on _____, 2014 at _____ (ET).  The deadline to object to Plan Confirmation is _____, 2014 at ____ (ET).**

   PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS AND PLEADINGS FILED BY THE DEBTORS.  STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ALTHOUGH THE PROPONENTS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE PROPONENTS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

   THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.  THIS DISCLOSURE

STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON ITS ACCURACY.

NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.  THE PROPONENTS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.

YOU ARE STRONGLY URGED TO CONSULT WITH YOUR FINANCIAL, LEGAL AND TAX ADVISORS TO UNDERSTAND FULLY THE PLAN AND DISCLOSURE STATEMENT.  THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE SUCH DATE.  THIS DISCLOSURE STATEMENT IS INTENDED, AMONG OTHER THINGS, TO SUMMARIZE THE PLAN AND MUST BE READ IN CONJUNCTION WITH THE PLAN AND ITS EXHIBITS, IF ANY.  IF ANY CONFLICTS EXIST BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

IF A HOLDER OF A CLAIM WISHES TO CHALLENGE THE ALLOWANCE OR DISALLOWANCE OF A CLAIM FOR VOTING PURPOSES UNDER THE TABULATION RULES SET FORTH IN THE DISCLOSURE STATEMENT ORDER, SUCH ENTITY MUST FILE A MOTION, PURSUANT TO BANKRUPTCY RULE 3018(A), FOR AN ORDER TEMPORARILY ALLOWING SUCH CLAIM IN A DIFFERENT AMOUNT OR CLASSIFICATION FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN AND SERVE SUCH MOTION ON THE UNDERSIGNED COUNSEL TO THE DEBTORS SO THAT IT IS RECEIVED NO LATER THAN **4:00 P.M. (ET), ON _____, 2014**.  THE DEBTORS SHALL HAVE UNTIL _____, 2014 TO FILE AND SERVE ANY RESPONSES TO SUCH MOTIONS.  UNLESS THE COURT ORDERS OTHERWISE, SUCH CLAIM WILL NOT BE COUNTED FOR VOTING PURPOSES IN EXCESS OF THE AMOUNT DETERMINED IN ACCORDANCE WITH THE TABULATION RULES.

    1.2.    <u>**Definitions of Terms Utilized in the Disclosure Statement.**</u>

Unless the context otherwise requires or a term is defined elsewhere in this Disclosure Statement or within the Plan itself, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

    1.2.1.    <u>**Assumed Liabilities:**</u>  Certain liabilities of the Debtors assumed or to be assumed by the LTC and/or Talon Purchaser pursuant to the LTC and/or Talon APA and LTC and/or Talon Sale Order, as and where applicable.

    1.2.2.    <u>**Balloting Agent:**</u>  BMC Group, Inc., or such other entity determined by the Debtors.

    1.2.3.    <u>**DIP Financing**</u>:  The postpetition financing provided by the DIP Lender to the Debtors pursuant to and under the DIP Documents, as amended from time to time in accordance with the provisions thereof.

    1.2.4.    <u>**DIP Order**</u>:  That certain *Final Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay*  (D.I. 153), as may be supplemented or amended in accordance with the provisions thereof.

    1.2.5.    <u>**DIP Documents**</u>:  The credit agreement and related documents by which the DIP Lender provided the DIP Financing, as amended from time to time in accordance with the provisions thereof.

    1.2.6.    <u>**File, Filed or Filing:**</u>  File, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

    1.2.7.    <u>**Local Rules:**</u>  The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

      1.2.8.   **LTC APA:**  The agreement by and among the LTC Purchaser and certain of the Debtors for the sale of the LTC Division.

      1.2.9.   **LTC Closing Dates:**  The dates on which certain of the Debtors or Reorganized Debtors, as applicable, close upon the sale of Purchased Assets (as defined in the LTC APA).

      1.2.10.  **LTC Purchaser:**  The purchaser under the LTC APA or its permitted designee, if any.

      1.2.11.  **LTC Sale Order:** The Order approving the sale of the purchased assets under the LTC APA to the LTC Purchaser, substantially in the form attached as Exhibit A to the LTC APA.

      1.2.12.  **Noticing Agent Website:**  www.bmcgroup.com/laboratorypartners.

      1.2.13.  **Order:**  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction.

      1.2.14.  **Plan:**  The Debtors' joint Chapter 11 plan as the same may hereafter be amended or modified.

      1.2.15.  **Record Date:**  May 15, 2014.

      1.2.16.  **Record Holder:**  The Holder of an Interest or Claim as of the Record Date.

      1.2.17.  **Talon APA:**  The agreement by and among the Talon Purchaser and certain of the Debtors for the sale of the Talon Division and a portion of the Union Hospital Division.

      1.2.18.  **Talon Closing Date:**  The date on which the Debtors closed on the sale of the Talon Division and a portion of the Union Hospital Division pursuant to the Talon Sale Order, which was February 24, 2014.

      1.2.19.  **Talon Division:**  That portion of the Debtors' businesses that provided, as of the Petition Date, clinical laboratory and anatomic pathology services to physicians, physician offices and medical groups in Indiana and Illinois.

      1.2.20.  **Talon Purchaser:**  Laboratory Corporation of America Holdings, the purchaser under the Talon APA.

      1.2.21.  **Talon Sale Order:** The Order approving the sale of the Talon Division and a portion of the Union Hospital Division to the Talon Purchaser.

      1.2.22.  **Unclassified Claims:**  Claims which, pursuant to Section 1123(a)(1) of the Bankruptcy Code, shall not be placed into a Class.  Unclassified Claims include Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.

      1.2.23.  **Unimpaired:**  With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

      1.2.24.  **Union Hospital Division:** That portion of the Debtors' businesses that provided, as of the Petition Date, clinical laboratory, anatomic pathology and nuclear imaging services to Union Hospital in Terre Haute and Clinton, Indiana.

      1.2.25.  **Union Hospital Nuclear Medicine APA:**  The agreement by and among the Union Hospital Nuclear Medicine Business Purchaser and certain of the Debtors for the sale of the Union Hospital Nuclear Medicine Business.

      1.2.26.  **Union Hospital Nuclear Medicine Business:**  That portion of the Union Hospital Division that provides nuclear imaging services to Union Hospital in Terre Haute and Clinton, Indiana.

      1.2.27.  **Union Hospital Nuclear Medicine Purchaser:** The purchaser under the Union Hospital Nuclear Medicine APA.

      1.2.28.  **Union Hospital Nuclear Medicine Sale Order:**  The Order approving the sale of the Union Hospital Nuclear Medicine Business to the Union Hospital Nuclear Medicine Business Purchaser.

      1.2.29.  **United States Trustee:** The Office of the United States Trustee for the District of Delaware.

      1.2.30.  **Voting Classes:**  Class 1 which is Impaired and entitled to vote on the Plan.

   1.3.   **Confirmation of the Plan.**

      1.3.1.   **Requirements.**  The requirements for Confirmation of the Plan are set forth in Section 1129 of the Bankruptcy Code.  The following summarizes some of the pertinent requirements:

         **(a)**    **Acceptance by Impaired Classes.**  Except to the extent that the cramdown provisions of Section 1129(b) of the Bankruptcy Code may be invoked, each Class of

Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims of such Class are not Impaired.

**(b)** **Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

**(c)** **"Best Interest" Test.** The Bankruptcy Court must find that the Plan is in the "best interest" of all Creditors and Interest holders. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against, or Interest in, the Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Debtors' property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

**(d)** **"Cramdown" Provisions.** Under the circumstances which are set forth in detail in Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of insiders, if the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes. The Proponents will invoke the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code should any voting Class fail to accept the Plan; provided that one voting Class has accepted the Plan. Debtors expect to invoke cramdown with respect to Classes 6, 7, 8 and 9, none of which will be receiving a distribution and therefore each such Class will be deemed to have rejected.

**(e)** **Confirmation Hearing.** To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code (the "**Confirmation Hearing**"). The Bankruptcy Court has set _____, 2014 at _____ **(Eastern Time)**, for the Confirmation Hearing.

**(f)** **Objection to Confirmation.** Any party-in-interest may object to the Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Court has set _____ **(Eastern Time)**, as the deadline for filing and serving objections to Confirmation of the Plan. Objections to Confirmation must be electronically filed with the Bankruptcy Court at the following address:

> U.S. Bankruptcy Court for the District of Delaware
> 824 Market Street, Third Floor
> Wilmington, Delaware 19801

with a copy served upon:

| Counsel for the Debtors: | Counsel for the Committee: |
|---|---|
| Robert J. Dehney | Margaret Manning |
| Derek C. Abbott | KLEHR HARRISON HARVEY BRANZBURG, LLP |
| Andrew R. Remming | 919 Market Street, Suite 1000 |
| Erin R. Fay | Wilmington, DE 19801-3062 |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 N. Market St., 16th Flr. | -and- |
| PO Box 1347 | |
| Wilmington, DE 19899-1347 | David M. Posner |
| Telephone: 302-658-9200 | OTTERBOURG P.C. |
| Facsimile: 302-658-3989 | 230 Park Avenue |
| | New York, NY 10169 |

4

-and-

Leo T. Crowley
Jonathan J. Russo
Margot Erlich
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

      1.3.2.    **Effect of Confirmation.**  Except as otherwise provided in the Plan, or the Confirmation Order, confirmation authorizes the Reorganized Debtors to complete performance under the LTC APA and thereafter transfer the Debtors' remaining Assets into the LPI Plan Trust free and clear of all Claims and Liens of Creditors and Interest holders, after the LPI Plan Trust Effective Date and subject to the provisions of the Plan. Confirmation also approves the assumption and assignment by the Debtors of certain Executory Contracts that will be either (i) assumed on the earlier of (a) the relevant LTC Closing Date or (b) the Effective Date and then assigned at the time of the Stage 1 Closing Date, the Stage 2 Closing Date or the Stage 3 Closing Date, as applicable, or (ii) if the Debtor, LTC Purchaser and applicable counterparty agrees, assumed and assigned upon the relevant LTC Closing Date. Confirmation serves to make the Plan binding upon the Debtors, all Creditors, Interest Holders and other parties-in-interest, regardless of whether they cast a ballot ("**Ballot**") to accept or reject the Plan.

    1.4.    **Voting on the Plan.**

      1.4.1.    **Impaired Claims or Interests.**  Pursuant to Section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a payment or distribution under the Plan may vote on the Plan. Pursuant to Section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims not Impaired by the Plan (Class 2 – Allowed Capital Lease Claims, Class 3 – Allowed Secured Tax Claims, Class 4 – Allowed Other Secured Claims and Class 5 – Priority Claims) are deemed to accept the Plan and do not have the right to vote on the Plan. The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Plan (Class 6 – Noteholder Claims; Class 7 – General Unsecured Claims, Class 8 – Intercompany Claims, and Class 9 – Interests) are deemed to reject the Plan and do not have the right to vote.

      1.4.2.    **Eligibility to Vote on the Plan.**  Unless otherwise ordered by the Bankruptcy Court, only Record Holders of Claims in Class 1 may vote on the Plan.

      1.4.3.    **Voting Procedure and Ballot Deadline.**  To ensure your vote is counted you must (i) complete the Ballot, (ii) indicate your decision either to accept or reject the Plan in the boxes provided in Item 3 of the Ballot, and (iii) sign and return the Ballot to the address set forth on the Ballot (please note that envelopes and prepaid postage have not been included with the Ballot). Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by the Balloting Agent on or before _____, 2014 **at 4:00 p.m. (ET)**. In order for a vote to count, you must complete, date, sign and properly mail the enclosed Ballot to:

**If by regular mail:**                                    **If by messenger or overnight delivery:**

BMC Group, Inc.                                             BMC Group, Inc.
P.O. Box 3020                                               18675 Lake Drive East
Chanhassen, MN 55317-3020                                   Chanhassen, MN 55317
(Attn: Laboratory Partners Balloting)                       (Attn: Laboratory Partners Balloting)

**BALLOTS SENT BY FACSIMILE TRANSMISSION OR ELECTRONIC MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.** Please refer to the Disclosure Statement Order posted on the Noticing Agent Website for further voting procedures and rules. Any Ballot received that is incomplete in any way shall be deemed to be cast as follows:

(a)     Ballots received that do not evidence the amount or evidence an incorrect amount of such Creditor's Claim shall be completed or corrected, as the case may be, based upon the Schedules filed by the Debtors if no proof of Claim has been filed by such Creditor, or based upon timely filed proofs of Claim, and counted as a vote to accept or reject the Plan;

(b)     Ballots received that do not identify the Creditor, whether or not signed by the Creditor, shall not be counted as a vote to accept or reject the Plan; and

(c)     Ballots received that do not reflect in which Class such Ballot is cast or incorrectly classify such Creditor's Claim and that are otherwise properly completed shall be completed or corrected, as the case may be, based upon the Schedules filed by the Debtors if no proof of Claim has been filed by such Creditor, or based upon timely filed proofs of Claim, and counted as a vote to accept or reject the Plan.

1.5.     **Acceptance of the Plan.** As a Creditor, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting must vote to accept the Plan, or the Plan must qualify for cramdown of any non-accepting Class of Claims pursuant to Section 1129(b) of the Bankruptcy Code. In any case, at least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

2.     **THE DEBTORS.**

2.1.     **Description of Debtors, Debtors' History, and Debtors' Business.** The Debtors, headquartered in Cincinnati, Ohio, and doing business primarily as MEDLAB, provide clinical diagnostic laboratory services to long-term care facilities, hospitals and physician offices through a network of clinical laboratories. On the Petition Date, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code. On November 7, 2013, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Debtors filed their Schedules on December 26, 2013 and filed certain amendments thereto on January 8, 2014. A further description of the Debtors' corporate history and businesses, among other matters, can be found in the *Declaration of William A. Brandt, Jr. In Support of First Day Relief* (D.I. 2), which was filed on the Petition Date.

2.2     **Description of the Debtors' Prepetition Indebtedness.** Prior to the Petition Date, the Debtors were borrowers and guarantors under the Prepetition Credit Facility among the Debtors, the Prepetition Agent, the Prepetition Arranger and the Prepetition Lenders. As of the Petition Date, the total outstanding secured indebtedness under the Prepetition Credit Facility was approximately $21,595,465.62. The obligations of the Debtors under the Prepetition Credit Facility are secured by a first-priority lien on substantially all of the assets of the Debtors. The indebtedness under the Prepetition Credit Facility matured by its terms on March 28, 2013.

Further, as of the Petition Date, the Debtors also had approximately $2.7 million in secured debt consisting of the capital leases for certain property and equipment. The capital leases are for various assets, including vehicles,

501320024v12

laboratory testing equipment, office equipment, information technology equipment and software. The capital leases are financed by specialty lease financing companies or by the related vendor.

In addition, the Debtors issued the Notes to certain individuals in 2007 in the aggregate principal amount of $13,140,000, and to certain other Persons in 2011 – 2013 in the original aggregate principal amount of $6,917,522.34 (without giving effect to a later reduction in principal on certain of those Notes) and payment in kind (PIK) Notes in the aggregate principal amount of $158,189.00. Approximately $18,424,917.67 was outstanding under the Notes as of the Petition Date. Prior to the Petition Date, the Debtors were in default under the Notes and the Notes had all matured.

As of the Petition Date, the Debtors also had approximately $11 million in general unsecured debt primarily consisting of outstanding payments under various contracts and other arrangements for goods and services supporting their operations.

2.3.    **Debtors' First Day Motions and DIP Loans.** On the Petition Date, the Debtors filed certain motions requesting authority to pay or honor certain prepetition obligations, including: (i) employee obligations (D.I. 11); (ii) insurance obligations (D.I. 9); (iii) tax obligations (D.I. 10); and (iv) customer obligations (D.I. 12). On October 29, 2013, the Bankruptcy Court granted the relief sought in such motions, among others.

Also on the Petition Date, the Debtors filed a motion for approval of certain secured postpetition financing to be provided by the DIP Lender on a superpriority basis pursuant to the DIP Credit Agreement. On November 26, 2013, the Bankruptcy Court entered the DIP Order (D.I. 153) approving the DIP Financing. The DIP Lender advanced $350,000 prepetition on October 16, 2013 (which amount was rolled in the DIP Financing pursuant to the DIP Order). The DIP Lender also advanced $2,500,000 to the Debtors on October 30, 2013 pursuant to the DIP Order. On December 17, 2013, the Debtors and the DIP Lender executed the first amendment to the DIP Credit Agreement therein, *inter alia*, amending certain milestones set forth in the DIP Credit Agreement. A notice of such amendment was filed with the Court on December 26, 2013 (D.I. 221). Additionally, the Debtors and the DIP Lender negotiated a further extension of the Debtors use of cash collateral and such continued use was approved by Court Order, dated April 9, 2014 (D.I. 426).

2.4.    **Sale of Substantially All of the Debtors' Assets.** On October 29, 2013, the Debtors filed a motion seeking approval of (i) certain bid procedures and (ii) the sales of the LTC, Talon and Union Hospital Divisions (D.I. 46) (the "**Bid Procedures/Sale Motion**") to Successful Bidders (as defined in the Sale Motion) following auctions. On November 15, 2013, the Court entered an Order approving the bid procedures portion of the relief in the Sale Motion (D.I. 100) (the "**Bid Procedures Order**"). Pursuant to the Bid Procedures Order, the Debtors and the Talon Purchaser entered into the Talon APA for sale of the Talon Division and a portion of the Union Hospital Division for a total purchase price of $10.5 million plus assumed liabilities, and the closing of that transaction occurred on February 24, 2014. All of the Debtors' obligations under the DIP Credit Agreement were repaid and satisfied with a portion of the net proceeds of such transaction. Additionally, $3,000,000 of such net sale proceeds were applied to pay down the obligations under the Prepetition Credit Facility in part. Further, on February 21, 2014, the Debtors and the Union Hospital Nuclear Medicine Purchaser entered into the Union Hospital Nuclear Medicine APA for the sale of the Union Hospital Nuclear Medicine Business. The transactions under the Union Hospital Nuclear Medicine APA closed on March 21, 2014.

Additionally, subject to entry of the LTC Sale Order, the Debtors have entered into the LTC APA with the LTC Purchaser which calls for a sale of the LTC Division in a staggered series of three closings. A summary of the material terms contemplated by the LTC transaction is attached hereto as Exhibit C.

2.5    **Remaining Assets.** Following the sales processes, the Debtors' remaining Assets will consist of the shares of stock of the subsidiary debtors (i.e., the Debtors other than Laboratory Partners, Inc.), certain accounts receivable, the Lab Corp Escrow, the Causes of Action, certain miscellaneous assets, and proceeds from the sales (the "**Sales**") of the LTC, Talon and Union Hospital Divisions (collectively, the "**Remaining Assets**"). The Remaining Assets will be liquidated and distributed as set forth in the Plan.

7

3.        **SUMMARY OF THE PLAN.**

3.1.        **Purpose of the Plan.**    The Debtors proposed the Plan over the alternative of converting the Debtors' bankruptcy cases to Chapter 7 of the Bankruptcy Code because the Debtors believe that: (i) subject to the entry of the LTC Sale Order, the entry into the LTC APA is in the best interest of the estates since the alternative would be the shutdown of the LTC Division which could cause continuity of care issues and the potential loss of up to approximately 800 jobs, (ii) the Plan ensures a timely distribution of the Debtors' Remaining Assets, (iii) the Plan maximizes recoveries on the Remaining Assets, and (iv) the Plan avoids unnecessary costs to the Debtors' estates which would accrue should the Debtors' bankruptcy cases be converted to Chapter 7 of the Bankruptcy Code.  **For these reasons, the Debtors are in favor of the Plan.**

3.2.        **Classification of Claims and Interests under the Plan.**    All Allowed Claims and Interests, except the Allowed Unclassified Claims, are placed in the Classes set forth in Article II of the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims have not been classified.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

3.3        **Secured Tax Claims and Other Secured Claims.**    The Debtors believe there are few, if any, Allowed Secured Tax Claims or Allowed Other Secured Claims.  The filed amount of such claims that purport to be liquidated does not in the aggregate exceed $41,600.

3.4.        **Implementation and Execution of the Plan.**

3.4.1.        **Effective Date.**    As set forth in Article VIII of the Plan, the Plan shall become effective after each condition set forth in Article VIII of the Plan has been satisfied or waived as set forth therein.  Upon the occurrence of the Effective Date, the Debtors will file with the Bankruptcy Court, serve on all known Holders of Claims, and post on the Noticing Agent Website a notice of confirmation and occurrence of the Effective Date.

3.4.2.        **Summary of Means of Implementation and Execution of the Plan.**    Article IV of the Plan sets forth the means by which the Plan shall be implemented and executed, including the effectuation of the transactions contemplated by the LTC APA, the amendment of the certificate of incorporation of Debtor Laboratory Partners, Inc., changing the board composition of the Reorganized Debtors, distributions, the dissolution of the Debtors, the eventual vesting of authority in the LPI Plan Trustee, the eventual vesting of the Remaining Assets in the LPI Plan Trust, and procedures for objections to and allowance of Claims for purposes of determining which Holders are entitled to distributions.

3.4.3.        **Substantive Consolidation.**    As set forth in Section VII.F of the Plan, for the sole purpose of implementing and executing the Plan only, all Assets of and Claims against the Debtors will be deemed to be substantively consolidated.  As a result, Claims filed against multiple Debtors seeking recovery of the same debt shall only receive a single distribution from the consolidated Debtors' estates to the extent such Claim is an Allowed Claim.  Intercompany Claims will be disregarded for both voting and distribution purposes.

3.4.4.        **The Debtors' Abandonment, Disposal and/or Destruction of the Records.**    As set forth in Section IV.O of the Plan, the Debtors shall be authorized to abandon all originals and/or copies of documents and business records pursuant to section 554 of the Bankruptcy Code.  Following the closing of the sale of the LTC Division, the Reorganized Debtors or the LPI Plan Trustee will identify certain documents, books and records (the "**Records**") that are outdated, burdensome, and/or of inconsequential value to the Debtors' estates and are not necessary or relevant to: (i) the LPI Plan Trustee's and Reorganized Debtors' performance of their duties and obligations, (ii) any pending litigation, (iii) the filing of any tax returns, (iv) the resolution of Claims against the Debtors, and (v) any potential causes of action that the Reorganized Debtors or LPI Plan Trustee may have.  To complete the Debtors' wind down, avoid the incurrence of unnecessary storage costs and facilitate the consolidation and preservation of any pertinent documents, books and records, the Debtors wish to proceed with the abandonment, disposal and/or destruction of the Records.  The Reorganized Debtors or the LPI Plan Trustee shall comply with the Debtors' privacy practices when abandoning such Records.  Any and all patient related records (and other records required to be retained under state law) will be transferred to the LTC Purchaser pursuant to the LTC APA.

Section 554 of the Bankruptcy Code provides that, *inter alia*, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts have held that a debtor-in-possession's decision to abandon property of the estate rests on the debtor's business judgment. *See, e.g., In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997). Any decision to abandon Records will be a decision in the LPI Plan Trustee's or the Debtors' business judgment that they no longer need to retain the Records.[1]

3.5.    **Executory Contracts and Unexpired Leases.**  Many Executory Contracts of the Debtors were assumed and assigned, or rejected, during the Chapter 11 Cases or in connection with the Sales of the Talon and Union Hospital Divisions. As stated in Article V of the Plan, Executory Contracts to be assumed pursuant to the sale of the LTC Division and set forth on the LTC Contract Schedule shall be either (i) assumed on the earlier of (a) the relevant LTC Closing Date or (b) the Effective Date and then assigned at the time of the Stage 1 Closing Date, the Stage 2 Closing Date or the Stage 3 Closing Date, as applicable, or (ii) if the Debtor, LTC Purchaser and applicable counterparty agrees, assumed and assigned upon the relevant LTC Closing Date.

Any Executory Contract listed on the Deferred Rejection Schedule will be deemed rejected at the time the conditions specified on such Deferred Rejection Schedule for such Executory Contract have occurred. In the case of any Executory Contract listed on the Deferred Rejection Schedule, the Debtors or Reorganized Debtors shall maintain all rights and shall satisfy all post-petition and post Effective Date obligations arising under such Executory Contract pending the effective date of rejection.

On the Effective Date, the Debtors shall reject all remaining Executory Contracts that (i) have not previously been assumed and assigned or rejected with the approval of the Bankruptcy Court, (ii) are not as of the Confirmation Date, the subject of a motion to assume or reject, (iii) have not expired by their own terms on or prior to the Confirmation Date, (iv) are not listed on either the LTC Contract Schedule or the Deferred Contract Schedule, or (iv) are listed on the Rejection Schedule.

Notwithstanding the above, the Debtors or Reorganized Debtors and the counterparty to any Executory Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Effective Date, subject to such conditions as shall be mutually agreeable.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and assignments and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Debtors reserve the right to amend the Deferred Rejection Schedule, the Rejection Schedule or the LTC Contract Schedule to add or delete any Executory Contracts therefrom up to 5 Business Days prior to the Confirmation Hearing. The Debtors shall provide any amendments of the Deferred Rejection Schedule, the Rejection Schedule or the LTC Contract Schedule to the parties to the Executory Contracts who are affected by such amendments. With respect to Executory Contracts listed on the LTC Contract Schedule, if the applicable counterparty agrees, the Debtors and the LPI Plan Trustee reserve the right to amend such Schedule to add or delete any Executory Contracts therefrom or modify any cure amount at any time prior to the relevant LTC Closing Date.

The Plan further provides that to the extent any insurance policies are considered Executory Contracts, the Debtors reserve their rights to assume any such insurance policies.

3.6.    **Conditions Precedent to Confirmation and Consummation of the Plan.**  Article VIII of the Plan sets forth the conditions that must occur prior to the Effective Date. This Article also describes the Debtors' in

---

[1]    The Reorganized Debtors or the LPI Plan Trustee shall not be required to comply with applicable local, state and federal statutes, rules and ordinances except to the extent that compliance is necessary to ensure the government's interest in public health and safety. *See generally Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494 (1986). Additionally, any action by any local, state or federal agency, department or governmental authority or any other entity to prevent, interfere with, or otherwise hinder the abandonment, disposal and/or destruction of the Records shall be enjoined.

501320024v12

consultation with the Prepetition Lenders' ability to waive such conditions, as well as the effect of non-occurrence of the conditions to the Effective Date, including the vacation of the Confirmation Order.  If the Confirmation Order is vacated pursuant to section VIII.B of the Plan, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

3.7.    **Miscellaneous Provisions.**  Article IX of the Plan contains several miscellaneous provisions, including, without limitation:  (i) the retention of jurisdiction by the Bankruptcy Court over certain matters following the Confirmation Date; and (ii) the payment of statutory fees pursuant to 28 U.S.C. § 1930.

**ADDITIONALLY, PLEASE NOTE THAT SECTION VII.C-VII.E OF THE PLAN GOVERNS THE RELEASE, EXCULPATION, AND LIMITATION OF LIABILITY OF CERTAIN PARTIES WITH RESPECT TO THE CHAPTER 11 CASES.  SECTIONS VII.A AND B OF THE PLAN GOVERN CERTAIN INJUNCTIONS WITH RESPECT TO THE CASES.  PLEASE REVIEW THESE PROVISIONS CAREFULLY.**

3.8.    **Final Fee Hearing, Administrative Expense Claim Bar Date and Final Decree.**

3.8.1    **The Professional Fee Claim Bar Date, Administrative Expense Claim Bar Date, and the Final Fee Hearing.**    Section II.B.1 of the Plan describes the Professional Fee Claim Bar Date, the Administrative Expense Claim Bar Date, and the Final Fee Hearing.  The Debtors will file with the Court and post on the Noticing Agent Website a notice of the Professional Fee Claim Bar Date and the Final Fee Hearing.  You will not receive further notice of the Professional Fee Claim Bar Date, the Administrative Expense Claim Bar Date, the Professional Fee Claims or the Final Fee Hearing and should monitor the Noticing Agent Website for such notice. The Professional Fee Claim Bar Date, the Administrative Expense Claim Bar Date, and the Final Fee Hearing Time can also be obtained by contacting counsel for the Debtors.

4.    **FEASIBILITY.**

4.1.    **Financial Feasibility Analysis.**

4.1.1.    **Bankruptcy Code Standard.**  The Bankruptcy Code requires that, in order to confirm a plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless contemplated by the plan.

4.1.2.    **No Need for Further Reorganization of Debtors.**  After the LPI Plan Trust Effective Date, the Plan provides for the vesting of the Debtors' Remaining Assets in the LPI Plan Trust, which will conduct limited operations in furtherance of an orderly wind-down of Debtors' business.  Accordingly, following the Stage 3 closing under the LTC APA, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors.

5.    **BEST INTERESTS OF CREDITORS AND ALTERNATIVES TO PLAN.**

5.1.    **Chapter 7 Liquidation.**

5.1.1.    **Bankruptcy Code Standard.**  Notwithstanding acceptance of a plan by the requisite number of creditors in an impaired class, the Bankruptcy Court must still independently determine that such plan provides each member of each impaired class of claims and interests a recovery that has a value at least equal to the value of the recovery that each such Person would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of such plan.  A liquidation analysis is attached hereto as **Exhibit B**.

5.1.2.    **Plan is in the Best Interests of Creditors.**  Notwithstanding acceptance of the Plan by a voting Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class which has not voted to accept the Plan. Accordingly, if an Impaired Class does not vote unanimously to accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the

Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the recovery that each such Class member would receive if the Debtors were liquidated under Chapter 7.

The Debtors believe that the Plan satisfies the best interests test, because, among other things, the recoveries expected to be available to Holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available in a Chapter 7 liquidation.

In a typical Chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

By the Confirmation Date, the Debtors expect that a significant portion of the Debtors' assets will have been sold pursuant to the Talon Sale Order and Union Hospital Nuclear Medicine Sale Order. As of the Effective Date, the Debtors expect that the Debtors will have been operating for the purposes of (i) collecting accounts receivable in respect of the Talon and Union Hospital Divisions, (ii) administering certain assets in the Talon and Union Hospital Divisions which may be subject to option rights of the Talon Purchaser, and (iii) operating the LTC Division in furtherance of the completion of the sale of such division to the LTC Purchaser to be carried out through staggered closing dates pursuant to the LTC APA.

Liquidating the Debtors' estates under Chapter 7 would not provide a timely distribution to Holders of Claims and would likely provide a smaller distribution to Holders of Claims because of the fees and expenses which would be incurred during a Chapter 7 liquidation, including potential added time and expense incurred by the trustee and any retained professionals in familiarizing themselves with the Chapter 11 Cases. Furthermore, the Debtors believe that priority claims and administrative claims (including, without limitation, claims under 503(b)(9)) would be unlikely to be paid if the Debtors' Chapter 11 Cases were converted to cases under Chapter 7. Additionally, confirmation of the Plan, relative to a Chapter 7 liquidation, will result in far fewer Executory Contract rejections, and hence fewer counterparties suffering uncompensated rejection damage claims.

Accordingly, the Debtors believe that the Plan is in the best interests of Creditors.

5.2.    **Continuation of the Bankruptcy Case.** After satisfaction of Allowed Claims as set forth in the Plan, the Debtors do not believe that any constituency other than the Holders of the Prepetition Lender Secured Claim (who have a lien on substantially all the Debtors' assets and are currently owed in excess of $19,500,000) has any economic or other interest in the Debtors and the Assets. Accordingly, there is no benefit to remaining in Chapter 11.

5.3.    **Alternative Plan(s).** The Debtors do not believe that there are any alternative plans. The Debtors believe that the Plan, as described herein, enables holders of Claims to realize the greatest possible value under the circumstances, and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

6.    **RISK FACTORS.**

Holders of Claims who are entitled to vote on the Plan should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement and the Plan, before deciding whether to vote to accept or reject the Plan.

6.1.    **Certain Bankruptcy Considerations.** Even if the Voting Class votes to accept the Plan, and with respect to any Impaired Class deemed to have rejected the Plan, the requirements for "cramdown" are met, the Court may exercise substantial discretion and may choose not to confirm the Plan. Section 1129 of the Bankruptcy Code requires, among other things, that the value of distributions to dissenting holders of Claims or Interests may

not be less than the value such Holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Although the Proponents believe that the Plan will meet such requirement, there can be no assurance that the Court will reach the same conclusion.

6.2. **Claims Estimation.** There can be no assurance that estimates herein or in the Plan are correct, and the actual allowed amounts of Claims may differ from any estimates given. Any value given as to the Claims against and the Assets of the Debtors is based upon an estimation of such value.

7. **TAX CONSEQUENCES OF THE PLAN.**

THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE IRS OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THUS, NO ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

8. **CONCLUSION.** It is important that you exercise your right to vote on the Plan. It is the Proponents' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Debtors.

12

IN WITNESS WHEREOF, the Proponents have executed this Disclosure Statement this ___ day of May 2014.

> Laboratory Partners, Inc.
> Kilbourne Medical Laboratories, Inc.
> MedLab Ohio, Inc.
> Suburban Medical Laboratory, Inc.
> Biological Technology Laboratory, Inc.
> Terre Haute Medical Laboratory, Inc.
> Pathology Associates of Terre Haute, Inc.

> By: _____
> Name: William A. Brandt, Jr.
> Title: Chief Executive Officer

13

# **EXHIBIT A**

**Debtors' Joint Chapter 11 Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Laboratory Partners, Inc., *et al.*,[1] | : | Case No. 13-12769 (PJW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

---

## DEBTORS' JOINT CHAPTER 11 PLAN

---

Dated: May 21, 2014

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Robert J. Dehney (No. 3578)
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Erin R. Fay (No. 5268)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone:  302-658-9200
Facsimile:  302-658-3989

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP
Leo T. Crowley
Jonathan J. Russo
Margot Erlich
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Counsel to Debtors and Debtors in Possession*

---

[1]      The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485).  Certain of the Debtors do business as MEDLAB. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

**INTRODUCTION**

Laboratory Partners, Inc., Kilbourne Medical Laboratories, Inc., MedLab Ohio, Inc., Suburban Medical Laboratory, Inc., Biological Technology Laboratory, Inc., Terre Haute Medical Laboratory, Inc., and Pathology Associates of Terre Haute, Inc., the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), propose this Chapter 11 Plan (the "Plan") pursuant to the provisions of the Bankruptcy Code.

The Plan calls for the Reorganized Debtors to complete the sale of most of their remaining operations to one buyer in a series of staged closings over several months. After the third and final such staged closing (or after a termination of the LTC APA or upon the written request of the Prepetition Lenders) the Plan effects a transfer, after the LPI Plan Trust Effective Date, of all of the Debtors' then remaining Assets and liabilities into the newly formed LPI Plan Trust created for purposes of, inter alia, making distributions to the Holders of Allowed Claims, pursuing Causes of Action, and otherwise completing the liquidation of the Estates, all as more fully set forth in this Plan.

**ARTICLE I**

**DEFINITIONS**

A.     **Defined Terms**

Unless otherwise provided in this Plan, all terms used herein shall have the meanings ascribed to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1.     **"ACH"** shall mean an automated clearing house transfer from a domestic bank.

2.     **"Administrative Claim"** shall mean any Claim for costs and expenses of administration of these Chapter 11 Cases with priority under Bankruptcy Code § 507(a)(2), including, without limitation, costs and expenses allowed under Bankruptcy Code § 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under Bankruptcy Code § 503(b)(9), any claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claims, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

3.     **"Administrative Expense Request"** shall mean a request or motion for payment of an Administrative Claim.

4.     **"Administrative Expense Request Deadline"** shall mean the date set as the deadline for filing Administrative Expense Requests for Administrative Claims, which shall be thirty (30) days after the Effective Date, excluding Professional Fee Claims and any fees or charges asserted against the Estates of the Debtors under 28 U.S.C. §1930.

5.     **"Administrative Fund"** shall mean the reserve established for the Post-Confirmation Expenses in accordance with Article IV.G herein, which reserve may be augmented by the LPI Plan Trustee in consultation with and at the direction of the Trust Oversight Committee.

6.     **"Allowed Claim"** shall mean a Claim: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date and (x) no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made, and (y) the Reorganized Debtors or the LPI Plan Trustee has determined that no objection, or motion to subordinate, disallow or otherwise limit recovery, will be made to such Claim; (iii) as to which a timely Administrative Expense Request has been filed and (x) no objection thereto, or application to equitably subordinate or otherwise limit recovery has been made, and (y) the Reorganized Debtors or the LPI Plan Trustee has determined that no objection, or application to equitably subordinate or otherwise limit recovery, will be made to such Administrative Expense Request; or (iv) that has been allowed by a

Final Order. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Secured Claim as permitted by Bankruptcy Code § 506(b) or as specifically provided in this Plan, or by Final Order of the Bankruptcy Court. If the Reorganized Debtors or the LPI Plan Trustee shall object to any Claim in accordance with Bankruptcy Code § 502(d), such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

7.     **"Allowed [_____] Claim"** shall mean an Allowed Claim of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Priority Claim, Prepetition Lender Secured Claim, Capital Lease Claim, Secured Tax Claim, Other Secured Claim, Noteholder Claim, General Unsecured Claim, or Intercompany Claim, as the case may be.

8.     **"Assets"** shall mean all assets of the Debtors as of the Effective Date, of any nature whatsoever, including, without limitation, all property of the Estate under and pursuant to Bankruptcy Code § 541; Cash; Causes of Action, including Avoidance Actions; rights; interests; and property, real and personal, tangible and intangible.

9.     **"Avoidance Action(s)"** shall mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code.

10.    **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases, as in effect on the Petition Date.

11.    **"Bankruptcy Court"** shall mean the United States District Court for the District of Delaware with jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Delaware, or any court having competent jurisdiction to enter the Confirmation Order.

12.    **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. § 2075, as the same shall from time to time be amended.

13.    **"Bar Date"** shall mean (i) February 3, 2014 at 4:00 p.m. Central Time, and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against any one or more of the Debtors, must have filed a Proof of Claim or be forever barred from asserting such Claim.

14.    **"Bar Date Order"** shall mean that certain order of the Bankruptcy Court dated as of December 9, 2013 [Docket No. 180], establishing the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

15.    **"Business Day"** shall mean a day other than Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

16.    **"Capital Leases"** shall mean the financed leases by and among certain of the Debtors and the Capital Lessors for various assets, including vehicles, laboratory testing equipment, office equipment, information technology equipment and software.

17.    **"Capital Lease Claim"** shall mean the secured Claim held by a Capital Lessor arising from or related to a Capital Lease or Leases.

18.    **"Capital Lessor"** shall mean the lessors under the Capital Leases.

19.    **"Cash"** shall mean cash and cash equivalents in certified or immediately available funds, including, but not limited to, bank deposits, checks and similar items.

20.    **"Cash Collateral Order"** shall mean that certain Order Amending Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (and any future amendments or modifications thereto) (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing

2

Superpriority Administrative Expense Status and (4) Granting Adequate Protection, and (5) Modifying Automatic Stay.

      21.    **"Causes of Action"** shall mean all claims as defined in section 101(5) of the Bankruptcy Code, causes of action, third-party claims, counterclaims and crossclaims (including, but not limited to, any and all alter ego or derivative claims and any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that are pending on the Effective Date or may be instituted after the Effective Date against any Person, including, but not limited to the Avoidance Actions.

      22.    **"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court jointly administered under Case No. 13-12769 (PJW).

      23.    **"Claims"** shall mean any claim(s) against any Debtor as such term is defined in Bankruptcy Code § 101(5).

      24.    **"Class"** shall mean each class of Holders of Claims or Interests specified in Article II.A of this Plan.

      25.    **"Committee"** shall mean the Official Committee of Unsecured Creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases, as its composition may change from time to time.

      26.    **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

      27.    **"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of this Plan.

      28.    **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan, pursuant to Bankruptcy Code § 1129, and approving the transactions contemplated herein.

      29.    **"Creditor"** shall have the meaning in Bankruptcy Code § 101(10).

      30.    **"Debtor"** shall mean individually, each of Laboratory Partners, Inc., Kilbourne Medical Laboratories, Inc., MedLab Ohio, Inc., Suburban Medical Laboratory, Inc., Biological Technology Laboratory, Inc., Terre Haute Medical Laboratory, Inc., and Pathology Associates of Terre Haute, Inc. each of which is a Debtor in the Chapter 11 Cases (collectively, the "**Debtors**").

      31.    **"Deferred Rejection Schedule"** shall mean a schedule filed with the Plan Supplement setting forth the Executory Contracts to be rejected with such rejection to take effect after the Effective Date as listed and described therein.

      32.    **"Deficiency Claims"** shall mean any Claim secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, to the extent that the value of such Creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

      33.    **"DIP Agent"** shall mean The Bank of New York Mellon, as administrative agent and collateral agent under the DIP Credit Agreement.

      34.    **"DIP Credit Agreement"** shall mean that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of October 30, 2013, as amended from time to time, among the Debtors, the DIP Lender and the DIP Agent.

      35.    **"DIP Lender"** shall mean Marathon Special Opportunity Fund, L.P., as lender under the DIP Credit Agreement.

      36.    **"Disallowed Claim"** shall mean a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy

501320013v16

Court, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors, the Reorganized Debtors or the LPI Plan Trust and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

37.    **"Disbursing Agent"** shall mean, after the Effective Date, the Reorganized Debtors or after the LPI Plan Trust Effective Date, the LPI Plan Trustee unless another Person is designated to be the Disbursing Agent by the Trust Oversight Committee pursuant to Article VI.

38.    **"Disclosure Statement"** shall mean the Disclosure Statement dated May ____, 2014 related to this Plan, and all exhibits thereto, filed pursuant to Bankruptcy Code § 1125 and approved by the Bankruptcy Court.

39.    **"Disputed Claim"** shall mean a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including, without limitation, all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed or at zero, whether or not such Claims are the subject of a Proof of Claim in the Bankruptcy Court, or (ii) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

40.    **"Distribution Record Date"** shall mean the Confirmation Date.

41.    **"Effective Date"** shall mean the day after the Confirmation Order has become a Final Order and each of the conditions set forth in Article VIII.A hereof have been satisfied or waived by the Debtors in consultation with the Holders of the Prepetition Lender Secured Claims.

42.    **"Entity"** shall mean an "entity" (as that term is defined in Section 101(15) of the Bankruptcy Code).

43.    **"Estates"** shall mean the Estates of the Debtors created by Bankruptcy Code § 541.

44.    **"Executory Contract"** shall mean any executory contract or unexpired lease subject to Bankruptcy Code § 365, between the Debtors and any other Person.

45.    **"Face Amount"** shall mean (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

46.    **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

47.    **"Final Order"** shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.  Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

48.    **"General Unsecured Claim"** shall mean any Claim against a Debtor that is not a Prepetition Lender Secured Claim, a Capital Lease Claim, a Secured Tax Claim, an Other Secured Claim, an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Noteholder Claim, an Intercompany Claim, or an Interest.  Deficiency Claims shall be General Unsecured Claims.

49.    **"Holder"** shall mean the owner or holder of any Claim or Interest.

4

50.    **"Impaired"** shall have the meaning set forth in Bankruptcy Code § 1124.

51.    **"Intercompany Claim"** shall mean any Claim by a Debtor against another Debtor.

52.    **"Initial Distribution"** shall mean the first date on which the Disbursing Agent remits payment on any Allowed Claims to Holders entitled to receive distributions under this Plan.

53.    **"Insurance Schedule"** shall mean the schedule of insurance policies to be filed as a Plan Supplement.

54.    **"Intercompany Interest"** shall mean any Interest in a Debtor held by another Debtor.

55.    **"Interest"** shall mean, with respect to any Debtor, any "equity interest" as such term is defined in Bankruptcy Code § 101(16). Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any shares of stock in any Debtor.

56.    **"Interest Transfer Agreement"** shall mean an agreement by which any Holder of Third Party Interests agrees, upon the election of the Prepetition Lenders, to transfer their Third Party Interests to the LPI Plan Trust at the LPI Plan Trust Effective Date at no cost to the LPI Plan Trust, and which agreement shall be filed with the Plan Supplement prior to the Confirmation Hearing.

57.    **"IRS"** shall mean the Internal Revenue Service.

58.    **"Lab Corp Escrow"** shall mean all of the Debtors' rights in those funds remaining in the escrow account funded in connection with certain of the Debtors' sale of selected operating assets to Laboratory Corporation of America Holdings in June, 2013. As of the Petition Date, there was $1,000,000, in such account plus accrued interest from June 3, 2013.

59.    **"Lien"** shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

60.    **"LPI Plan Trust"** shall mean the Delaware Common Law Trust, which shall also be treated as a grantor trust and as described more fully in Article IV.D of this Plan.

61.    **"LPI Plan Trust Agreement"** shall mean that trust agreement for the LPI Plan Trust which shall be filed with the Plan Supplement prior to the Confirmation Hearing.

62.    **"LPI Plan Trust Effective Date"** shall mean the earliest of (i) the next business day after the Stage 3 Closing Date; (ii) five (5) business days after the Prepetition Lenders notify the Reorganized Debtors in writing that the Prepetition Lenders are prepared to proceed to the LPI Plan Trust Effective Date, (iii) the next business day after the LTC APA has been validly terminated in accordance with section 3.4 thereof, unless the Reorganized Debtors and Prepetition Lenders agree otherwise, and (iv) such other date as may be mutually agreed between the Reorganized Debtors and the Prepetition Lenders.

63.    **"LPI Plan Trustee"** shall mean that Person appointed by the Debtors, with the reasonable consent of the Holders of the Prepetition Lender Secured Claims, by written notice included as part of the Plan Supplement to act as the trustee of the LPI Plan Trust or any of his, her or its successors.

64.    **"LTC APA"** shall mean that certain asset purchase agreement entered into by certain of the Debtors and Amerathon, LLC, as such agreement may be amended from time to time, for the sale of the LTC Division.

65.    **"LTC Contract Schedule"** shall mean the Executory Contracts proposed to be assumed and assigned pursuant to the sale of the LTC Division and set forth on a schedule filed with the Plan Supplement.

66.    **"LTC Division"** shall mean that portion of the Debtors' businesses that provided, as of the Petition Date, clinical laboratory and anatomic pathology services to skilled nursing and long-term care facilities in Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Ohio, Virginia and Washington DC.

67.     **"LTC Purchaser"** shall mean the purchaser under the LTC APA or its designee, if any.

68.     **"Maximum Administrative, Priority and Secured Schedule"** shall mean the schedule to be filed as part of the Plan Supplement which lists the maximum amount of Allowed and Disputed Capital Lease Claims, Secured Tax Claims, Other Secured Claims, Priority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims.

69.     **"Notes"** shall mean the subordinated unsecured promissory notes issued by any of the Debtors to the Noteholders.

70.     **"Noteholder Claims"** shall mean the claims of the Noteholders arising from or related to the Notes.

71.     **"Noteholders"** shall mean collectively, M. Bashar Kashlan, M.D., Gerald Longa, M.D., Paul Kilborne, Sr., Jay Braun, Fort Washington Private Equity Opportunities Fund II, L.P., Oxford Bioscience Partners V L.P., Primus Capital Fund VI, LP., Chrysalis Ventures II, L.P., Indiana Investment Fund, L.P. Tri-State Growth Capital Fund I, L.P., Fort Washington Private Equity Investors VI, L.P. Richard T. Daly, University of Kentucky, and mRNA Fund V L.P.

72.     **"Organization Documents"** shall mean any certificate filed with the applicable Secretary of State prior to the Effective Date, including any certificate of incorporation, and any amendments or restatements thereto, and the bylaws and any amendments and restatements thereto, of any of the Debtors.

73.     **"Other Secured Claim"** shall mean any secured claim other than a Prepetition Lender Secured Claim, a Capital Lessor Claim or a Secured Tax Claim that is either (i) a Claim that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Section 506(a) of the Bankruptcy Code; or (ii) a Claim which is Allowed under the Plan as an Other Secured Claim.

74.     **"Person"** shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

75.     **"Petition Date"** shall mean October 25, 2013, the date the Debtors commenced the Chapter 11 Cases.

76.     **"Plan"** shall mean this Chapter 11 Plan (as the same may be modified or amended by the Debtors in accordance with the Bankruptcy Code, the Bankruptcy Rules and other applicable law) and any exhibits hereto and any documents incorporated herein by reference.

77.     **"Plan Supplement"** means any document, schedule and/or exhibit relevant to implementation of the Plan, that will be filed no later than five (5) days prior to the Voting Deadline (as defined in the Disclosure Statement), and which may be amended, supplemented or modified through and including the date of the Confirmation Hearing.  Any Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth therein.

78.     **"Post-Confirmation Debtors**" shall mean the Reorganized Debtors and where the context so requires, Post-Confirmation Debtors shall include the Estates and/or the LPI Plan Trustee.

79.     **"Post-Confirmation Expense"** shall mean any fees, costs and expenses (including, without limitation, United States Trustee fees, LPI Plan Trustee fees, attorneys' fees, Disbursing Agent fees, the fees of other professionals, and any taxes imposed on the LPI Plan Trust or in respect of its Assets) necessary to complete the liquidation and winding up of the Debtors, their Estates and the LPI Plan Trust after the Effective Date.

80.     **"Prepetition Agent"** shall mean The Bank of New York Mellon, as administrative agent and collateral agent under the Prepetition Credit Facility.

81.     **"Prepetition Arranger"** shall mean Marathon Special Opportunity Fund, L.P., as lead arranger under the Prepetition Credit Facility.

82.     **"Prepetition Credit Facility"** shall mean that certain Amended and Restated Credit and Guaranty Agreement, dated as of August 5, 2008, as amended or otherwise modified from time to time, among the Debtors, the Prepetition Agent, the Prepetition Arranger and the Prepetition Lenders.

83.     **"Prepetition Lenders"** shall mean Marathon CLO I, LTD., Marathon CLO II, LTD. and Marathon Financing I, B.V., in their capacities as lenders under the Prepetition Credit Facility.

84.     **"Prepetition Lender Secured Claims"** shall mean shall mean the secured claims held by or on behalf of the Prepetition Lenders pursuant to the Prepetition Credit Facility in the amount of approximately $19,670,411 (less any amounts that have been credit bid as part of the purchase price under the LTC APA) and which are deemed Allowed under the Plan.

85.     **"Priority Claim"** shall mean a Claim entitled to priority pursuant to Bankruptcy Code § 507 that is not an Administrative Claim or a Priority Tax Claim.

86.     **"Priority Tax Claim"** shall mean a Claim of the kind specified in Bankruptcy Code § 507(a)(8).

87.     **"Professional"** shall mean a Person (i) employed by the Debtors and/or the Committee pursuant to a Final Order in accordance with Bankruptcy Code §§ 327 and 1103 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330 and 331, or (ii) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4) by a Final Order.  This term excludes professionals that may be selected and employed by the LPI Plan Trustee, the LPI Plan Trust or the Trust Oversight Committee on and after the LPI Plan Trust Effective Date.

88.     **"Professional Fee Claim"** shall mean all fees and expenses claimed by Professionals which remain unpaid as of the Effective Date.

89.     **"Proof of Claim"** shall mean a proof of claim filed in the Chapter 11 Cases pursuant to Bankruptcy Code § 501 and/or any order of the Bankruptcy Court, together with supporting documents.

90.     **"Pro Rata"** shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

91.     **"Protected Party"** shall mean any of the Debtors, the LPI Plan Trustee, the Estates, the LPI Plan Trust, the Committee, the Prepetition Agent, the Prepetition Arranger, the Prepetition Lenders, the DIP Agent, the DIP Lender and the Trust Oversight Committee and their respective Representatives of all of the foregoing as of the Effective Date.

92.     **"Released Party"** shall mean, collectively, the Debtors, the Prepetition Agent, the Prepetition Arranger, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Committee and the individual members thereof in their capacity as such and all of the Representatives of each of the foregoing who served as such at any time during the Debtors' Chapter 11 Cases.

93.     **"Rejection Schedule"** shall mean the Executory Contracts proposed to rejected as of the Effective Date and set forth on a schedule filed with the Plan Supplement.

94.     **"Reorganized Debtors"** shall mean each of the Debtors after the Effective Date.

95.     **"Representative"** shall mean, with regard to any Entity, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective directors, officers, employees, members and professionals).

96.      **"Scheduled,"** with respect to any Claim, shall mean listed on the Schedules.

97.      **"Schedules"** shall mean the *Statements of Financial Affairs* and *Schedules of Assets and Liabilities* filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such *Statements of Financial Affairs* and *Schedules of Assets and Liabilities* have been or may be amended or supplemented from time to time.

98.      **"Secretary of State"** shall mean the Secretary of State of the State of Delaware or comparable office in the States of Ohio, Indiana or Missouri, as the case may be.

99.      **"Secured Tax Claim"** shall mean a secured Claim that is secured by a valid, first priority tax related lien on the Debtors property which is senior to the Prepetition Lender Secured Claim and is not entitled to priority under section 507(a)(8) of the Bankruptcy Code.

100.      **"Stage 1 Closing Date"** shall mean the closing date applicable to the transactions contemplated by Section 1.5(a) of the LTC APA.

101.      **"Stage 2 Closing Date"** shall mean the closing date applicable to the transactions contemplated by Section 1.5(b) of the LTC APA.

102.      **"Stage 3 Closing Date"** shall mean the closing date applicable to the transactions contemplated by Section 1.5(c) of the LTC APA.

103.      **"STAT Contracts"** shall mean those contracts primarily related to the LTC Division between any of the Debtors and the hospital and/or other organizations providing STAT laboratory services.

104.      **"Third Party Interest"** shall mean any Interest in a Debtor that is not an Intercompany Interest.

105.      **"Trust Oversight Committee"** shall mean the LPI Plan Trust Oversight Committee formed on the Effective Date and composed solely of the Holders of the Prepetition Lender Secured Claims or their designees.

106.      *"***Voting Deadline***"* means _____, 2014 at 4:00 p.m. prevailing Eastern Time for all Holders of Claims, which is the date and time by which all votes must be received in accordance with the procedures set forth in the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court.

## B.      Other Terms

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan.  A reference to an "Article" refers to an Article, or referenced portion thereof, of this Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code.  The rules of construction set forth in Bankruptcy Code § 102 shall apply in constructing this Plan.

## C.      Exhibits

All exhibits to this Plan are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

501320013v16

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

**A.      Classification**

        The classification of Claims (except for Administrative Claims and Priority Tax Claims) and Interests listed below is for all purposes, including, without limitation, voting, confirmation and distributions under this Plan and under Bankruptcy Code §§ 1122 and 1123(a)(1).  Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent such Claim or Interest satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim or Interest satisfies the definition of such different Class.  A Claim is in a particular Class only to the extent such Claim has not been paid or otherwise settled before the Effective Date.  NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR CLAIM OR INTEREST IS CLASSIFIED IN A CERTAIN CLASS FOR VOTING PURPOSES.  THE REORGANIZED DEBTORS OR THE LPI PLAN TRUSTEE MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS OR INTERESTS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER A CLAIM IS CLASSIFIED IN A CERTAIN CLASS.  The classification of Claims and Interests pursuant to this Plan is as follows:

| CLASS | STATUS | VOTING RIGHTS |
|---|---|---|
| Class 1:  Prepetition Lender Secured Claims | Impaired | Entitled to Vote |
| Class 2:  Capital Lease Claims | Unimpaired | Not Entitled to Vote |
| Class 3:  Secured Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 4:  Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 5:  Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 6:  Noteholder Claims | Impaired | Not Entitled to Vote |
| Class 7:  General Unsecured Claims | Impaired | Not Entitled to Vote |
| Class 8:  Intercompany Claims | Impaired | Not Entitled to Vote |
| Class 9:  Interests | Impaired | Not Entitled to Vote |

**B.      Unclassified Claims: Administrative Claims and Priority Tax Claims**

        As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Professional Fee Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.B.

        **1.      Administrative Claims**

        **a.      Non-Professional Fee Claims**

        The Reorganized Debtors or the LPI Plan Trustee, as applicable, shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the later of the Effective Date or within 10 days after the date such Administrative Claim becomes an Allowed Claim.  Notwithstanding anything herein to the contrary, a

Holder of an Allowed Administrative Claim may be paid on such other date or dates and upon such other less favorable terms as may be agreed upon by such Holder and the Reorganized Debtors or the LPI Plan Trustee, as applicable.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Reorganized Debtors or the LPI Plan Trustee no later than thirty (30) days after the Effective Date or when due in the ordinary course.

> **b.      Professional Fee Claims**

The Reorganized Debtors or the LPI Plan Trustee, as applicable, shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Debtors' Estates pursuant to Bankruptcy Code §§ 503(b)(2) - (b)(6), in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Reorganized Debtors, counsel for the LPI Plan Trust and the LPI Plan Trustee, counsel for the Prepetition Lenders, and counsel for the Committee at the addresses listed in Article IX.N of this Plan as well as on the Office of the United States Trustee so that it is received no later than thirty (30) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their Estates, the LPI Plan Trust, the LPI Plan Trustee and their successors, their assigns or their Assets.

> **c.      Procedure for Filing Administrative Claim**

Each Holder of an Administrative Claim (excluding Professional Fee Claims) must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than the Administrative Expense Request Deadline; provided, however, that any such Administrative Expense Request need not be filed with a hearing date.  The Administrative Expense Request Deadline will be prominently set forth in a "Notice of Effective Date," which will be filed and served on all parties in interest on the Effective Date.  Nothing herein extends any Bar Date established in the Bar Date Order.

> **2.      Priority Tax Claims**

The Reorganized Debtors or the LPI Plan Trustee, as applicable, shall pay each Holder of an Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors in consultation with the Prepetition Lenders or the LPI Plan Trustee in consultation with the Trust Oversight Committee, (i) in full, in Cash, as soon as practicable after the later of (a) the Effective Date or (b) 10 days after the date such Priority Tax Claim becomes an Allowed Claim or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years after the date of assessment of such Allowed Priority Tax Claim.  All Allowed Priority Tax Claims against the Debtors that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

**C.      Classes of Claims and Interests: Classification, Treatment and Voting Rights**

Holders of Claims and Interests are divided into Classes and treated as follows:

> **1.      "Class 1" – Prepetition Lender Secured Claims**

> **a.      Classification**

Class 1 consists of all Prepetition Lender Secured Claims.

b.      **Treatment**

On the Effective Date, the Holders of the Prepetition Lender Secured Claims shall receive an outright assignment of the Debtors' interest in the Lab Corp Escrow.  On the LPI Plan Trust Effective Date, the Holders of the Prepetition Lender Secured Claims shall receive, in full and final satisfaction, settlement and release and discharge of and in exchange for such Claims, 100% of the beneficial interest in the LPI Plan Trust.  Pending the LPI Plan Trust Effective Date, all liens, claims and rights associated with the Prepetition Lender Secured Claims shall remain in full force and effect, including as against the Debtors, the Estates and the Reorganized Debtors; provided, however, all such liens, claims and rights held by the Prepetition Lenders as against all property of the Debtors sold pursuant to the LTC APA shall terminate as of the applicable Stage 1, 2, or 3 Closing Dates.

c.      **Voting**

Class 1 is Impaired.  Therefore, Holders of Class 1 Claims are entitled to vote to accept or reject this Plan.

2.      <u>**"Class 2" – Capital Lease Claims**</u>

a.      **Classification**

Class 2 consists of all Capital Lease Claims.

b.      **Treatment**

Each Holder of an Allowed Capital Lease Claim shall receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, (a) such treatment as the Reorganized Debtors or the LPI Plan Trustee and the Holder agree, or (b) at the Reorganized Debtors' or the LPI Plan Trustee's option, (i) assumption of the applicable Capital Lease and assignment of same to a purchaser subject to all of the existing terms of the applicable Capital Lease, or (ii) abandoning the property subject to the Capital Lease to the Capital Lessor, with such Lessor retaining all of its legal, equitable and contractual rights, or (iii) paying the Allowed Capital Lease Claim in cash in full; provided, however, that unless otherwise agreed to by the Holder of such Claim and the Debtors, the Reorganized Debtors or the LPI Plan Trustee, any Holder of an Allowed Capital Lease Claim shall be entitled to a Deficiency Claim for any portion of their Claim over the value of the collateral securing such claim. There will not be any distribution on account of such Deficiency Claim.

c.      **Voting**

Class 2 is not Impaired.  Holders of Class 2 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

3.      <u>**"Class 3" – Secured Tax Claims**</u>

a.      **Classification**

Class 3 consists of all Secured Tax Claims.

b.      **Treatment**

Subject to the provisions of § 502(b)(3) of the Bankruptcy Code and herein and unless the Holder of an Allowed Secured Tax Claim agrees to other, less-favorable treatment, each Holder of an Allowed Secured Tax Claim shall receive, on the Effective Date, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, either, at the Reorganized Debtors' or the LPI Plan Trustee's sole option, (i) 100% of the unpaid amount of such Allowed Secured Tax Claim in Cash or (ii) the collateral securing such Allowed Secured Tax Claim.

11

c.      **Voting**

Class 3 is not Impaired.  Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 3 are not entitled to vote to accept or reject this Plan.

4.      **"Class 4" -- Other Secured Claims**

a.      **Classification**

Class 4 consists of all Other Secured Claims.

b.      **Treatment**

Subject to the provisions of § 506(d) of the Bankruptcy Code and herein, each holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, either (a) such treatment as the Debtors or the LPI Plan Trustee and the Holder of an Allowed Other Secured Claim agree, or (b) at the Debtors' or the LPI Plan Trustee's option:  (i) payment of such Claim in full or (ii) leaving unaltered the legal, equitable and contractual rights of the Holder of such Claim securing the Allowed Other Secured Claim, up to the unpaid amount of such Allowed Other Secured Claim, subject to applicable inter-creditor lien priorities; provided, however, that unless otherwise agreed to by the Holder of such Claim and the Debtors, the Reorganized Debtors or the LPI Plan Trustee, any Holder of an Other Secured Claim shall be entitled to a Deficiency Claim for any portion of their Claim over the value of the collateral securing such claim.  There will not be any distribution on account of such Deficiency Claim.

c.      **Voting**

Class 4 is not Impaired.  Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 4 are not entitled to vote to accept or reject this Plan.

5.      **"Class 5" – Priority Claims**

a.      **Classification**

Class 5 consists of all Claims entitled to priority under section 507(a) of the Bankruptcy Code, except Priority Tax Claims.

b.      **Treatment**

Subject to the terms herein and unless the Holder of an Allowed Priority Claim agrees to other, less-favorable treatment, each Holder of an Allowed Priority Claim shall receive, on the later of (a) the Effective Date or (b) 10 days after the date that such Priority Claim becomes an Allowed Claim, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, 100% of the unpaid amount of such Allowed Priority Claim in Cash or such other less favorable treatment as shall be agreed to between the Holder of such Priority Claim and the Reorganized Debtors or the LPI Plan Trustee.

c.      **Voting**

Class 5 is not Impaired.  Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 5 are not entitled to vote to accept or reject this Plan.

6.    **"Class 6" – Noteholder Claims**

   a.    **Classification**

   Class 6 consists of all Noteholder Claims.

   b.    **Treatment**

   Holders of Claims in this Class will not receive any recovery on their Claims.

   c.    **Voting**

   Class 6 Claims are Impaired and will receive no distributions or dividends under this Plan.  Holders of Class 6 Noteholder Claims are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code §1126(g).  Therefore, Holders of Class 6 Claims will not be entitled to vote to accept or reject the Plan.

7.    **"Class 7" – General Unsecured Claims**

   a.    **Classification**

   Class 7 consists of all General Unsecured Claims, including Deficiency Claims, and claims of non-debtor parties arising from the rejection of an Executory Contract.

   b.    **Treatment**

   Holders of Claims in this Class will not receive any recovery on their Claims.

   c.    **Voting**

   Class 7 Claims are Impaired and will receive no distributions or dividends under this Plan.  Holders of Class 7 General Unsecured Claims are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code §1126(g).  Therefore, Holders of Class 7 Claims will not be entitled to vote to accept or reject the Plan.

8.    **"Class 8" – Intercompany Claims**

   a.    **Classification**

   Class 8 consists of all Intercompany Claims.

   b.    **Treatment**

   Holders of Claims in this Class will not receive any recovery on their Claims.

   c.    **Voting**

   Class 8 Claims are Impaired and will receive no distributions or dividends under this Plan.  Holders of Class 8 Intercompany Claims are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code §1126(g).  Therefore, Holders of Class 8 Claims will not be entitled to vote to accept or reject the Plan.

501320013v16

**9.**     **"Class 9" – Interests**

     **a.**     **Classification**

        Class 9 consists of all Interests.

     **b.**     **Treatment**

        Shareholders of the Debtors and other holders of Interests will retain no ownership interests in the Debtors under the Plan and will not receive any recovery on account of their Interests.  Third Party Interests shall, upon the election of the Prepetition Lenders (which election shall be made prior to the LPI Plan Trust Effective Date), either be (i) cancelled effective as of the LPI Plan Trust Effective Date or (ii) transferred by such Holder thereof to the LPI Plan Trust as of the LPI Plan Trust Effective Date in accordance with the terms of any Interest Transfer Agreement.  Intercompany Interests shall, upon the election of the Prepetition Lenders (which election shall be made prior to the LPI Plan Trust Effective Date), either be (i) cancelled effective as of the LPI Plan Trust Effective Date or (ii) transferred to the LPI Plan Trust by the Reorganized Debtors as of the LPI Plan Trust Effective Date.

     **c.**     **Voting**

        Class 9 Interests are Impaired and will receive no distributions or dividends under this Plan.  Holders of Class 9 Interests are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code §1126(g).  Therefore, Holders of Class 9 Interests will not be entitled to vote to accept or reject the Plan.

## ARTICLE III

## ACCEPTANCE OR REJECTION OF THIS PLAN

**A.**     **Impaired Classes of Claims Entitled to Vote**

        Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 1 (Prepetition Lender Secured Claims) shall be entitled to vote to accept or reject this Plan.  If and to the extent any Class identified as being not Impaired is Impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), such Class shall be entitled to vote to accept or reject this Plan.

**B.**     **Classes Deemed to Accept this Plan**

        Class 2 (Capital Lease Claims), Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), and Class 5 (Priority Claims) are unimpaired by this Plan.  Pursuant to Bankruptcy Code § 1126(f), Classes 2, 3, 4, and 5 are conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in Classes 2, 3, 4, and 5 will therefore not be solicited.

**C.**     **Classes Deemed to Reject this Plan**

        Holders of Claims and Interests in Class 6 (Noteholder Claims), Class 7 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 9 (Interests) are not entitled to receive any distribution under this Plan on account of such Claims and Interests.  Pursuant to Bankruptcy Code § 1126(g), Classes 6, 7, 8, and 9 are Impaired and are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims and Interests in Class 6, 7, 8, and 9  therefore will not be solicited.

14

# ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Implementation of Plan**

        The Debtors propose to implement and consummate this Plan on and after the Effective Date.

**B.    Reorganized Debtors**

        On the Effective Date:

        1.      The Seventh Amended and Restated Certificate of Incorporation of Debtor Laboratory Partners, Inc. shall be amended, the form thereof to be filed with the Plan Supplement.

        2.      All of the current board of directors of each Reorganized Debtor shall be replaced with a new board of directors consisting of not less than one and not more than three individuals who will be identified in the Plan Supplement.  The new board members will hold office until the LPI Plan Trust Effective Date.

        3.      There will be no change in ownership of the Debtors or the Reorganized Debtors until the LPI Plan Trust Effective Date.

        4.      Any and all property Assets, Claims and Causes of Action of the Debtors' Estates and all rights, privileges and immunities of the Debtors, including, without limitation, the attorney-client privileges, work product privilege and any other evidentiary privileges of the Debtors shall vest in the Reorganized Debtors.

**C.    Operation of the Reorganized Debtors After the Effective Date and Prior to the LPI Plan Trust Effective Date**

        Prior to the LPI Plan Trust Effective Date, the Reorganized Debtors shall continue to wind down their businesses by, inter alia, effectuating the LTC APA transactions, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and the requirements of this Plan.  Pending the LPI Plan Trust Effective Date, (i) the Reorganized Debtors' use of Cash constituting cash collateral of the Prepetition Lenders shall remain subject to the Cash Collateral Order and (ii) the Reorganized Debtors shall consult regularly with the Prepetition Lenders regarding the use of cash collateral, the status of the LTC Division and such other matters as the Prepetition Lenders may reasonably request.

**D.    Formation of the LPI Plan Trust**

        This Plan contemplates the transfer, after the LPI Plan Trust Effective Date, of all of the Reorganized Debtors' remaining Assets, including all Causes of Action, into the LPI Plan Trust and the LPI Plan Trust making all further distributions to the beneficiaries provided for under the Plan.

        The LPI Plan Trust shall be established as a Delaware Common Law Trust, which shall also be a grantor trust for the sole purpose of liquidating the Estates and making distributions to Holders of Allowed Claims, in accordance with this Plan and Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the LPI Plan Trust as a liquidating trust for all federal income tax purposes.

        The LPI Plan Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the LPI Plan Trustee and to ensure the treatment of the LPI Plan Trust as a liquidating trust for federal income tax purposes, all consistent with the Plan.

        For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Reorganized Debtors, the LPI Plan Trustee and Holders of Allowed Claims and Interests) shall treat the transfer of Assets to the LPI Plan Trust, in accordance with the terms of this Plan, as a transfer to Holders of Allowed Claims

15

followed by a transfer by such Holders to the LPI Plan Trust, and the beneficiaries of the LPI Plan Trust shall be treated as the grantors and owners thereof.  The beneficiaries of the LPI Plan Trust shall be the Holders of the Prepetition Lender Secured Claim.

The LPI Plan Trust shall terminate no later than the fifth (5th) anniversary of the LPI Plan Trust Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest may extend the term of the LPI Plan Trust if it is necessary to facilitate or complete the liquidation of the LPI Plan Trust's assets.  Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the LPI Plan Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the LPI Plan Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

E.      **Appointment and Term of the LPI Plan Trustee**

On the LPI Plan Trust Effective Date, the LPI Plan Trustee shall succeed in all respects to all of the rights, privileges and immunities of the Reorganized Debtors, including, without limitation, the attorney-client privileges, work product privilege and any other evidentiary privileges of the Reorganized Debtors and shall be appointed as the sole officer of the Reorganized Debtors as of the LPI Plan Trust Effective Date.  The initial LPI Plan Trustee, and each successor LPI Plan Trustee, shall serve until the earlier of (i) the entry of the Final Decree and the payment of final distributions to Holders of Allowed Prepetition Lender Secured Claims pursuant to the Plan; or (ii) the expiration of the term of such LPI Plan Trustee's employment agreement or such LPI Plan Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to the LPI Plan Trust Agreement or order of the Bankruptcy Court; or (iii) the conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The LPI Plan Trustee may also be removed by the Bankruptcy Court upon motion for good cause shown by any Creditor.

As set forth herein, after the LPI Plan Trust Effective Date, the liquidation and winding up of the LPI Plan Trust and the Reorganized Debtors shall become the responsibility of the LPI Plan Trustee, who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to oversight or approval of the Trust Oversight Committee as may be required pursuant to the Plan and the LPI Plan Trust Agreement.

The LPI Plan Trustee may be removed or replaced at any time by the Trust Oversight Committee in accordance with the procedures in the LPI Plan Trust Agreement.  In the event of the death or incompetency (in the case of a LPI Plan Trustee that is a natural person), dissolution (in the case of a LPI Plan Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the LPI Plan Trustee, the Trust Oversight Committee shall have the authority to appoint a successor trustee as set forth in the LPI Plan Trust Agreement.

Upon creation of the LPI Plan Trust, the LPI Plan Trustee shall be the trustee of the LPI Plan Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the LPI Plan Trust.

F.      **Duties of the LPI Plan Trustee**

In addition to the duties as set forth elsewhere in this Plan, the LPI Plan Trustee, in consultation with, and at all times subject to the ultimate direction and control of, the Trust Oversight Committee as set forth more specifically in the LPI Plan Trust Agreement and Article IV.J herein, shall have the following duties:

1.      to employ, supervise and compensate any employees of the LPI Plan Trust;

2.      to make and file tax returns for the Debtors, the Reorganized Debtors and the LPI Plan Trust;

16

3.    to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

4.    to retain and pay professionals (including the Debtors' or the Committee's Professionals) or other Persons to assist the LPI Plan Trustee in the liquidation of the Debtors' Assets, without prior Bankruptcy Court approval, and to designate another Person to be the Disbursing Agent;

5.    to file any and all reports, pleadings and other documents to the extent such filings do not require the consent of the Trust Oversight Committee;

6.    to incur any reasonable and necessary expenses in the performance of his duties;

7.    to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his duties, including to execute such documents and take such other action on behalf of the LPI Plan Trust or the Reorganized Debtors;

8.    to take any and all actions, including any action set forth in Article IV.L hereof, necessary to dissolve and cancel the existence of the Debtors in the State of Delaware and in any other jurisdiction in which the Debtors are organized or qualified to do business;

9.    to pay Allowed Administrative Claims and Priority Tax Claims and to make any and all distributions required or permitted to be made under this Plan;

10.    to authorize and benefit from any insurance policies and rights of indemnification; and

11.    to the extent the actions do not require the consent of the Trust Oversight Committee as described below, to take any and all other actions necessary or appropriate to implement this Plan and the liquidation and winding up of the Debtors, the Reorganized Debtors, the Estates and the LPI Plan Trust in accordance with applicable law, provided, that nothing herein shall permit the LPI Plan Trustee to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; and provided further that the LPI Plan Trustee shall not renew or extend such insurance coverage, or other new or substitute coverage, without the approval of the Trust Oversight Committee.

In connection with the execution of his, her or its duties under this Plan, the LPI Plan Trustee, as set forth more specifically in the LPI Plan Trust Agreement and herein, shall not take any of the following actions except with the consent of the Trust Oversight Committee:

a.    to investigate and, if necessary and appropriate, to prosecute and enforce (or not prosecute or enforce), or to compromise, release or settle any Causes of Action on behalf of the Estates and the LPI Plan Trust;

b.    to invest the Assets of the LPI Plan Trust and the Estates in accordance with this Article IV.F;

c.    to pay out of the LPI Plan Trust any and all valid Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all valid and outstanding Post-Confirmation Expenses;

d.    to commence and pursue dissolution or winding up of proceedings for the LPI Plan Trust;

e.    to request the entry of a Final Decree;

f.    to file, prosecute, compromise and settle objections to Claims;

g.    to sell, liquidate and/or recover any and all Assets of the Debtors' Estates and Reorganized Debtors and of the LPI Plan Trust, including without limitation, effectuating any remaining obligations in connection with the sale of the LTC Division pursuant to the LTC APA;

17

h.      to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Claim or Cause of Action or the sale or disposition of any Asset, provided that nothing herein shall require the LPI Plan Trustee to seek any such order; and

i.      to employ such other procedures, not inconsistent with this Plan, necessary for the LPI Plan Trustee to perform his, her or its duties hereunder.

The LPI Plan Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the LPI Plan Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Causes of Action and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with this Plan or the status of the LPI Plan Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.  In discharging the foregoing responsibilities, the LPI Plan Trustee shall be entitled to exercise and rely upon his, her or its business judgment in consultation with the Trust Oversight Committee.  The LPI Plan Trustee shall not be obligated to take any action or to pursue any Causes of Action unless justified in his, her or its reasonable determination by fact and law, nor shall the LPI Plan Trustee be obligated to take any action that could reasonably cause him, her or it personal liability.  Without limiting the generality of the foregoing, the LPI Plan Trustee may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his, her or its business judgment.  Such authorization and benefits shall also extend to any, each and every successor LPI Plan Trustee, without reservation or limitation.

The LPI Plan Trustee, at the direction of the Trust Oversight Committee, shall be permitted to make any investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise and pursuant to the investment guidelines of Bankruptcy Code §345.  The LPI Plan Trustee, at the direction of the Trust Oversight Committee, may expend the Cash of the LPI Plan Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the LPI Plan Trust during liquidation, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee fees, LPI Plan Trustee fees, professional fees, and taxes imposed on the LPI LPI Plan Trust), and (c) to satisfy other respective liabilities incurred by the LPI Plan Trust in accordance with the Plan or the LPI Plan Trust Agreement.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the LPI Plan Trustee of a private letter ruling if the LPI Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the LPI Plan Trustee), the LPI Plan Trustee will file returns for the LPI Plan Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The LPI Plan Trustee will also send to each Holder of a beneficial interest in the LPI Plan Trust an annual statement setting forth the Holder's share of items of income, gain, loss, deduction or credit, and provide to all such Holders information for reporting such items on their federal income tax returns, as appropriate.  The LPI Plan Trustee will file (or cause to be filed) any other statements, returns, or disclosures relating to the LPI Plan Trust that are required by any governmental unit.

## G.      Post Confirmation Expenses

On the LPI Plan Trust Effective Date, the LPI Plan Trustee shall establish the Administrative Fund.  The initial amount of the Administrative Fund shall be based on the LPI Plan Trustee's good faith estimate of the cost necessary to complete the LPI Plan Trust's obligations under this Plan and the LPI Plan Trust Agreement and will include the amount budgeted for the LPI Plan Trust's professionals pursuant to Article IV.F of this Plan. The LPI Plan Trust shall pay all costs and expenses related to carrying out its obligations under this Plan and the LPI Plan Trust Agreement from the Administrative Fund and, in the LPI Plan Trustee's discretion, and with approval of the Trust Oversight Committee, may add additional amounts to the Administrative Fund to prosecute the Causes of Action or for administration and other miscellaneous needs of the LPI Plan Trust without further notice or motion in accordance with the terms of the LPI Plan Trust Agreement.

The reasonable and necessary fees and actual and necessary expenses of the LPI Plan Trustee, the Trust Oversight Committee and the professionals retained by the LPI Plan Trustee and the Trust Oversight

18

Committee shall be paid by the LPI Plan Trustee in accordance with the following procedures: Upon the submission of a fee and/or expense statement to the LPI Plan Trustee and the Trust Oversight Committee, the LPI Plan Trustee and the Trust Oversight Committee shall have twenty (20) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional or Person seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made shall be filed with the Bankruptcy Court by the objecting party, served upon the professional or Person seeking compensation or reimbursement, and heard by the Bankruptcy Court at the next regularly scheduled omnibus hearing.  The uncontested portion of each invoice shall be paid immediately following expiration of the above-described twenty (20) day objection period.

## H.    Liability; Indemnification

No Protected Party shall be liable for the act or omission of any other Protected Party.  The LPI Plan Trustee or any member of the Trust Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in his, her or its capacity as LPI Plan Trustee or as a member of the Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the LPI Plan Trustee's or Trust Oversight Committee member's willful misconduct, gross negligence or fraud.  The LPI Plan Trustee and the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the LPI Plan Trustee and the Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the LPI Plan Trustee or the Trust Oversight Committee, as the case may be.  Notwithstanding such authority, the LPI Plan Trustee and the Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the LPI Plan Trustee or the Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud.  The LPI Plan Trust and the Estates shall indemnify and hold harmless the LPI Plan Trustee, the Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the LPI Plan Trustee or the Trust Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred primarily as a result of willful misconduct, gross negligence or fraud.

## I.    Dissolution of the Committee

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to Bankruptcy Code § 503(b) for making a substantial contribution in the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.  The Committee members and the Professionals retained by the Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date and for services rendered in connection with (iv) herein.

## J.    Trust Oversight Committee

On the LPI Plan Trust Effective Date, the Trust Oversight Committee shall be formed.  The Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Holders of Allowed Claims.

501320013v16

The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Trust Oversight Committee shall have the following rights and duties:

1.    to approve any release or indemnity in favor of any third party granted or agreed to by the LPI Plan Trustee;

2.    to authorize the LPI Plan Trustee to commence any Cause of Action or Avoidance Action;

3.    to approve the settlement of any Cause of Action or Avoidance Action and to approve any application by the LPI Plan Trustee for an order in connection with any such settlement;

4.    to approve the allowance of any Disputed Claim;

5.    to approve the sale of any Assets by the LPI Plan Trustee;

6.    to review all financial information relating to the LPI Plan Trust and the Estate, which shall be promptly provided by the LPI Plan Trustee upon request by the Trust Oversight Committee;

7.    to review and assert objections to motions filed or Claims asserted;

8.    to monitor distributions to creditors;

9.    to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan;

10.    to approve the LPI Plan Trustee's retention of professionals;

11.    to remove the LPI Plan Trustee in accordance with the procedures in the LPI Plan Trust Agreement; and

12.    to approve the reserves under the Plan and LPI Plan Trust.

The duties and powers of the Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the LPI Plan Trust, and (iii) the payment of the final distributions to Holders of Allowed Prepetition Lender Secured Claims pursuant to the Plan.

The Trust Oversight Committee shall have the right, but shall not be required to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel as well as the reasonable and necessary expenses of the members of the Trust Oversight Committee (including reasonable fees and expenses of counsel to the members of the Trust Oversight Committee) shall be paid by the LPI Plan Trustee.

**K.    Corporate Action**

On the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtors or the Reorganized Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, including, but not limited to dissolution of the Debtors or the Reorganized Debtors, as the case may be, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtors or the Reorganized Debtors, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, members or shareholders, as applicable, of the Debtors or the Reorganized Debtors.

**L.    Dissolution of the Debtors and the LPI Plan Trust**

Immediately after the LPI Plan Trust Effective Date, the LPI Plan Trustee shall be authorized to take, in consultation with and at the direction of the Trust Oversight Committee, all actions reasonably necessary to dissolve the Reorganized Debtors under applicable laws, including, without limitation, under the laws of the

20

jurisdiction in which the Reorganized Debtors may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolution, including the costs of preparing or filing any necessary paperwork or documentation.

**M.      Saturday, Sunday or Legal Holiday**

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**N.      Preservation of All Avoidance Actions and Causes of Action**

From and after the Effective Date, the Reorganized Debtors, and after the LPI Plan Trust Effective Date, the LPI Plan Trust and the LPI Plan Trustee, subject to approval of the Trust Oversight Committee as set forth in Article IV of this Plan, may litigate or settle any Avoidance Action, recovery or subordination actions under Bankruptcy Code §§ 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 or any other Causes of Action or rights to payments or claims that belong to the Debtors that may be pending on the Effective Date or instituted after the Effective Date.  Pursuant to Bankruptcy Code § 1123(b)(3)(B), no other Person may pursue any such Avoidance Actions, recovery or subordination actions or other Causes of Action that belong to the Debtors unless otherwise provided by order of the Court.

**O.      Records**

Pursuant to section 554 of the Bankruptcy Code, the Reorganized Debtors and/or the LPI Plan Trustee shall be authorized to abandon all originals and/or copies of Records consistent with the Debtors' prepetition privacy policies.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Assignment of Certain Executory Contracts and Leases and Cure Payments**

Executory Contracts to be assumed pursuant to the sale of the LTC Division and set forth on the LTC Contract Schedule shall be either (i) assumed on the earlier of (a) the relevant LTC Closing Date or (b) the Effective Date and then assigned at the time of the Stage 1 Closing Date, the Stage 2 Closing Date or the Stage 3 Closing Date, as applicable, or (ii) if the Debtor, LTC Purchaser and applicable counterparty agrees, assumed and assigned upon the relevant LTC Closing Date.

Any Executory Contract listed on the Deferred Rejection Schedule will be deemed rejected at the time the conditions specified on such Deferred Rejection Schedule for such Executory Contract have occurred.  In the case of any Executory Contract listed on the Deferred Rejection Schedule, the Debtors or Reorganized Debtors shall maintain all rights and shall satisfy all post-petition and post Effective Date obligations arising under such Executory Contract pending the effective date of rejection.

On the Effective Date, the Debtors shall reject all remaining Executory Contracts that (i) have not previously been assumed and assigned or rejected with the approval of the Bankruptcy Court, (ii) are not as of the Confirmation Date, the subject of a motion to assume or reject, (iii) have not expired by their own terms on or prior to the Confirmation Date, (iv) are not listed on either the LTC Contract Schedule or the Deferred Contract Schedule, or (iv) are listed on the Rejection Schedule.

Notwithstanding the above, the Debtors or Reorganized Debtors and the counterparty to any Executory Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Effective Date, subject to such conditions as shall be mutually agreeable.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and assignments and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  The

21

Debtors reserve the right to amend the Deferred Rejection Schedule, the Rejection Schedule or the LTC Contract Schedule to add or delete any Executory Contracts therefrom up to 5 Business Days prior to the Confirmation Hearing. The Debtors shall provide any amendments of the Deferred Rejection Schedule, the Rejection Schedule or the LTC Contract Schedule to the parties to the Executory Contracts who are affected by such amendments. With respect to Executory Contracts listed on the LTC Contract Schedule, if the applicable counterparty agrees or subject to an order of the Bankruptcy Court, the Reorganized Debtors and the LPI Plan Trustee reserve the right to amend such Schedule to add or delete any Executory Contracts therefrom or modify any cure amount at any time prior to the relevant LTC Closing Date.

STAT Contracts are deemed to not be executory.

**B.    Rejection Damages Bar Date**

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Debtors' claims agent, BMC Group, Inc., at the following address:

> BMC Group, Inc.
> P.O. Box 3020
> Chanhassen, MN 55317-3020
> (Attn: Laboratory Partners Claims Processing)

within thirty (30) days of the Confirmation Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, the Reorganized Debtors, their Estates, the LPI Plan Trust, the LPI Plan Trustee, their successors, their assigns or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 7 (General Unsecured Claims); such Class will not receive a distribution, will be deemed to reject and will not be solicited to vote on the Plan. Nothing in this Plan extends or modifies any previously applicable Bar Date.

**C.    Insurance Policies**

To the extent any or all of the insurance policies set forth on the Insurance Schedule are considered to be Executory Contracts, then notwithstanding anything contained in this Plan to the contrary, this Plan shall constitute a motion to assume the insurance policies set forth on such schedule. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code § 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in this Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on the Insurance Schedule. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. This Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on the Insurance Schedule and all rights thereunder and rights under any other insurance policies under which the Debtors may be a beneficiary (including the rights to make, amend, prosecute and benefit from claims) are retained and will be transferred to the LPI Plan Trust pursuant to this Plan. The LPI Plan Trustee shall have the right to cancel, terminate or not assume any insurance policy in his, her or its sole discretion, except for any directors' and officers' liability insurance policy or products liability insurance policy. For the avoidance of doubt, neither the LPI Plan Trust nor the LPI Plan Trustee shall be obligated to pay any amounts in connection with any insurance policy, including any directors' and officers' liability insurance policy or products liability insurance policy.

## ARTICLE VI

## DETERMINATION OF CLAIMS AND DISTRIBUTIONS

A.      **Disbursing Agent**

      **1.**      **Reorganized Debtors and the LPI Plan Trustee as Disbursing Agents**

      After the Effective Date, the Reorganized Debtors, and after the LPI Plan Trust Effective Date, the LPI Plan Trustee shall be the Disbursing Agent, and the Disbursing Agent shall make all distributions under this Plan.

      **2.**      **Alternative Disbursing Agent Qualification**

      No Person other than the Reorganized Debtors or the LPI Plan Trustee shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Trust Oversight Committee consents in writing to that Person serving as Disbursing Agent, and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his, her or its duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

B.      **Time and Manner of Distributions**

      The Disbursing Agent shall make Initial Distributions under the Plan on account of Claims Allowed before the Effective Date as soon as practicable on or after the Effective Date, to the extent consistent with the Reorganized Debtors' performance of their obligations on the LTC APA, except as otherwise agreed by the Reorganized Debtors in consultation with the Holders of the Prepetition Lender Secured Claims, the LPI Plan Trustee in consultation with the Trust Oversight Committee or by order of the Bankruptcy Court.  The Disbursing Agent shall have the power, subject to the Holders of the Prepetition Lender Secured Claims consent (if the Reorganized Debtors is the Disbursing Agent) or the Trust Oversight Committee consent (if the LPI Plan Trustee is the Disbursing Agent), to make interim distributions to Holders of Allowed Claims entitled to receive distributions under this Plan if the Reorganized Debtors or the LPI Plan Trustee, as applicable, determines that such interim distributions are warranted and economical.  If the Reorganized Debtors or the LPI Plan Trustee, as applicable, determines to make interim distributions to Holders of Allowed Claims entitled to receive distributions under this Plan, the Reorganized Debtors or the LPI Plan Trustee, as applicable, will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims.  Amounts withheld will be placed in an interest-bearing account approved by the Trust Oversight Committee, which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

      At the option of the Disbursing Agent, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH.  Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).  Any distribution of less than $20.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $20.00 will not receive any distribution unless and until the aggregate of such distributions exceed $20.00.  Such undistributed funds shall remain with and vest in the LPI Plan Trust for distribution to other Holders of Allowed Claims.

C.      **Delivery of Distributions**

      Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors and the LPI LPI Plan Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the LPI Plan Trustee after the date of any related

23

Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Reorganized Debtors or the LPI Plan Trustee has not received a written notice of a change of address.

**D.      Undeliverable Distributions**

If a distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of a Claim shall be made unless and until the Reorganized Debtors or the LPI Plan Trustee, as applicable, and the Disbursing Agent are notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of this Article VI.D) all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed. All funds or other undeliverable distributions returned to the Disbursing Agent in respect of any Claim that are not claimed within four (4) months of return shall be forfeited and remain with and vest in the LPI Plan Trust for distribution to other Holders of Allowed Claims and such Claim shall not be entitled to any additional distributions.

**E.      Claims Administration Responsibility**

**1.      Reservation of Rights to Object to Claims or Interests**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the Reorganized Debtors or the LPI Plan Trustee, as applicable, reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims or Interests, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Tax Claims, Capital Lease Claims, Other Secured Claims, Noteholder Claims, General Unsecured Claims, Intercompany Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Reorganized Debtors' or the LPI Plan Trust's and/or the LPI Plan Trustee's failure to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors, the LPI Plan Trust's and the LPI Plan Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest.

**2.      Objections to Claims or Interests**

The Reorganized Debtors (in consultation with the Holders of the Prepetition Lender Secured Claims) or the LPI Plan Trustee (at the direction of and in consultation with the Trust Oversight Committee as set forth in the LPI Plan Trust Agreement), as applicable, shall be responsible for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims and Interests. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Reorganized Debtors or the LPI Plan Trustee will be filed and served not later than 180 days after the Effective Date, provided that the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his, her or its business judgment. A motion seeking to extend the deadline to object to any Claim or Interest shall not be deemed an amendment to this Plan.

**3.      Filing of Objections**

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Reorganized Debtors or the LPI Plan Trust or the LPI Plan Trustee effect service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

24

4.     **Determination of Claims**

Any Claim as to which a Proof of Claim or Interest or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim or Interest, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim or Interest, filed by the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim or Interest.  Any such Claim determined to be Allowed, shall be deemed to be an Allowed Claim for such liquidated amount (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) and shall be satisfied in accordance with this Plan.  Nothing contained in this Article VI.E shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Reorganized Debtors or the LPI Plan Trustee may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

F.     **Procedures for Treating and Resolving Disputed and Contingent Claims**

1.     **No Distributions Pending Allowance**

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim or Interest; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Disbursing Agent may make, in his, her or its discretion, a distribution pursuant to the Plan on account of the portion of such Claim that becomes an Allowed Claim.

2.     **Claim Estimation**

The Reorganized Debtors or the LPI Plan Trustee, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code § 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code § 502(c), and (ii) the timing and procedures for such estimation proceedings, if any.

G.     **Setoffs and Recoupment**

The Reorganized Debtors or the LPI Plan Trustee, as applicable, may, pursuant to Bankruptcy Code §§ 553 and 558 or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other claim or Cause of Action.  To the extent otherwise available under applicable law, the rights of the United States Government to set off and/or recoup against Medicare payments in order to satisfy claims for disallowance of previously paid Medicare goods and services shall ride through and be unimpaired by the Plan.

H.     **Allowance and Disallowance of Claims Subject to Bankruptcy Code § 502**

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Bankruptcy Code § 502, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

I.     **Cancellation of Instruments and Agreements**

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any

Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Reorganized Debtors, the LPI Plan Trustee, the Estates, the Trust Oversight Committee, or the LPI Plan Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan.  As set forth in Section II.C.1, pending the LPI Plan Trust Effective Date, all liens, claims and rights associated with the Prepetition Lender Secured Claims shall remain in full force and effect, including as against the Debtors, the Estates and the Reorganized Debtors; provided, however, all such liens, claims and rights held by the Prepetition Lenders as against all property of the Debtors sold pursuant to the LTC APA shall terminate as of the applicable Stage 1, 2, or 3 Closing Dates.

All Notes shall be deemed automatically canceled and discharged on the Effective Date.

On and as of the LPI Plan Trust Effective Date, the LPI Plan Trustee will hold a single, nominal share of common stock in each of the Post-Confirmation Debtors for the sole and limited purpose of maintaining the corporate existence of the Post-Confirmation Debtors following the LPI Plan Trust Effective Date and pending dissolution of the Post-Confirmation Debtors.

**J.      No Interest on Claims**

Unless otherwise specifically provided for in this Plan, the Confirmation Order or a post-petition agreement in writing between the Debtors and a Holder of a Claim and approved by an order of the Bankruptcy Court, and unless provided for in the Bankruptcy Code, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim, except as may be required by the Bankruptcy Code.

**K.      Withholding Taxes**

The Reorganized Debtors or the LPI Plan Trustee, as applicable, shall be entitled to deduct any federal, state, local or foreign withholding taxes from any payments under this Plan.  As a condition to making any distribution under this Plan, the Reorganized Debtors or the LPI Plan Trustee, as applicable, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Reorganized Debtors or the LPI Plan Trustee, as applicable, may deem necessary to comply with applicable tax reporting and withholding laws.

**L.      Reports**

From the Effective Date, until a Final Decree is entered, the Reorganized Debtors or the LPI Plan Trustee, as applicable, shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements of the LPI Plan Trust as required by the United States Trustee guidelines.

**ARTICLE VII**

**EFFECT OF CONFIRMATION**

**A.      Injunction**

**Except as otherwise expressly provided in this Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or any property of the**

26

Debtors' Estates, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee, or any property of the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest; (iii) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtors' Estates, the Reorganized Debtors,  the LPI Plan Trust, the LPI Plan Trustee or any property of the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest; (iv) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or any property of the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.  Nothing contained in this Article VII.A shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Reorganized Debtors, the LPI Plan Trustee or the LPI Plan Trust under this Plan.  The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against the Debtors' Estates or the Reorganized Debtors or any property of the Debtors' Estates or Reorganized Debtors based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article VI.K of this Plan have been made or are not yet due under Article VI.K of this Plan.

Notwithstanding the above, all set off and recoupment rights of the United States Government against the Debtors with respect to post-petition Medicare claims are reserved and shall survive Confirmation.

B.      Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the LPI Plan Trust.

C.      Exculpation

None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claims, liens, encumbrances, obligations, damages, demands, debts, suits, Causes of Action, judgments, liabilities or rights whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place after the Petition Date but on or prior to the Effective Date to any other Protected Party, to any Holder of a Claim or an Interest in their capacity as such, in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan and/or the property to be distributed under this Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan.  Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of Bankruptcy Code § 1125(e).

**D.      Releases by Debtors**

On the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtors and any entity seeking to exercise the rights of the Debtors or their Estates, including, without limitation, any successor to the Debtors including the Reorganized Debtors, the LPI Plan Trust and LPI Plan Trustee, shall completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive and discharge each Released Party from any and all Claims, liens, encumbrances, obligations, damages, demands, debts, suits, Causes of Action, judgments, liabilities or rights whatsoever (other than the rights of the Debtors or their successors to enforce this Plan and contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence from the beginning of the world to the Effective Date, provided, however, that the foregoing shall not operate as a waiver or release of Claims or Causes of Action, if any, against any current or former director, officer or other employee of the Debtors arising out of fraud, misappropriation or criminal conduct, in each case subject to determination of such by final order of a court of competent jurisdiction.  This release, waiver and discharge will be in addition to the discharge of Claims and termination of Interests provided herein and under the Bankruptcy Code.  Notwithstanding anything to the contrary herein, nothing in this Plan or Confirmation Order shall release or waive any right of the Estate or the LPI Plan Trustee to object to any filed or scheduled Claims of any Released Party and nothing in this Plan shall be construed as or constitute a waiver of any defense to any Claim or right to payment asserted by any party.

**E.      Release by Holders of Claims**

On the Effective Date, except as otherwise expressly provided herein, for good and valuable consideration, to the fullest extent permissible under applicable law, each Holder of Claims against each of the Debtors and/or each of the Released Parties that votes to accept the Plan shall be deemed to completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge each of the Debtors' Estates and/or each of the Released Parties from any and all Claims, liens, encumbrances, obligations, damages, demands, debts, suits, Causes of Action, judgments, liabilities or rights whatsoever (other than the right to enforce the Debtors' obligations under this Plan and the contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors or their Estates (whether pre- or post- petition), the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of this Plan, or any other contract, instrument, release agreement, settlement or document created, modified, amended, terminated or entered into in connection with this Plan, the restructuring of any Claims against the Debtors' Estates, the property to be distributed under this Plan, or any other act or omission in connection with the Debtors' bankruptcy, without further notice to or action by the Bankruptcy Court, or act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any entity; provided, however, that the foregoing shall not limit the liability of the Debtors' professionals to their client or the Debtors' Estates contrary to the law or operate as a waiver or release of any Claims or Causes of Action, if any, arising primarily from gross negligence or willful misconduct as determined by a final order of a court of competent jurisdiction.

**F.      Substantive Consolidation**

1.      The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.  Intercompany Claims are deemed to be satisfied and resolved by the substantive consolidation provided for herein.

28

2.      The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and distributions.  If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors.  Moreover, (a) no distribution shall be made under the Plan on account of any Claim held by any one of the Debtors against any of the other Debtors and such Intercompany Claims will be extinguished; (b) no distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein; (c) all guaranties of any one of the Debtors of the obligations of any of the other Debtors shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates; and (d) every Claim that is timely filed or to be filed in the Chapter 11 Cases of any of the Debtors shall be deemed filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

3.      In addition, notwithstanding any provision of the Plan to the contrary, any Holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.  Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed only once as if such Claim were against a single Debtor.

4.      Any alleged defaults under any applicable agreement, including Executory Contracts, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

## ARTICLE VIII

## CONDITIONS PRECEDENT

### A.      Conditions Precedent to Effective Date

This Plan shall not become effective unless and until each of the following conditions shall have been either (a) satisfied or (b) waived by the Debtors in consultation with the Holders of the Prepetition Lender Secured Claims to the extent possible in accordance with applicable law:

1.      The Bankruptcy Court shall have approved a disclosure statement with respect to this Plan;

2.      The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness; the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under Bankruptcy Code § 1144 shall have been made, or, if made, shall remain pending;

3.      The total of Allowed and Disputed Capital Lease Claims, Secured Tax Claims, Other Secured Claims, Priority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, shall not exceed the amount(s) listed in Maximum Administrative, Priority and Secured Schedule; and

4.      The appointment of the LPI Plan Trustee shall have been confirmed by the Confirmation Order or order of the Bankruptcy Court.

**B.**      **Revocation, Withdrawal or Non-Consummation of Plan**

If, after the Confirmation Order is entered, all of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by sixty (60) days after the Confirmation Date, then upon motion by the Reorganized Debtors or the Prepetition Lenders, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this Article VIII.B, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute a release, indemnification or exculpation by the Debtors, the Estates or any other party pursuant to the Plan.

# ARTICLE IX

## ADMINISTRATIVE PROVISIONS

**A.**      **Retention of Jurisdiction by the Bankruptcy Court**

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  Pursuant to Bankruptcy Code §§ 105(a) and 1142, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1.      All matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2.      All matters relating to the LTC APA or the Talon APA;

3.      All matters relating to the ownership of a Claim or Interest;

4.      All matters relating to distributions to Holders of Allowed Claims and to the determination of Claims;

5.      Any and all matters involving the LPI Plan Trustee and/or the LPI Plan Trust and/or the Trust Oversight Committee;

6.      All matters relating to or arising in connection with the disallowance, allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

7.      To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

8.      All matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

9.      All matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes involving the injunction and exculpation provisions of this Plan, and disputes arising under agreements, documents or instruments executed in connection with this Plan;

10.      To consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

11.    All applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under Bankruptcy Code §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4);

12.    To hear and determine all motions requesting allowance of an Administrative Claim;

13.    To determine requests for the payment of Claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation and reimbursement of expenses of parties entitled thereto;

14.    All Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets of the LPI Plan Trust, as successor-in-interest to the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

15.    All matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

16.    Any other matter to the extent such jurisdiction is consistent with the Bankruptcy Code;

17.    All disputes involving the existence, nature or scope of the Confirmation Order, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

18.    To enter the Final Decree closing the Chapter 11 Cases; and

19.    To enforce all orders previously entered by the Bankruptcy Court.

**B.    Payment of Statutory Fees**

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date.  All fees payable after the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtors or the LPI Plan Trustee, as applicable, out of the Assets of the Estates and/or the LPI Plan Trust, as applicable.

**C.    Headings**

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**D.    Discharge and Binding Effect of Plan**

The Debtors shall receive a discharge to the fullest extent permitted by sections 524 and 1141 of the Bankruptcy Code.  Except as otherwise provided in the Plan, on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Reorganized Debtors, the Estates, the LPI Plan Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under this Plan and whether or not such Holder has accepted this Plan.  The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the LPI Plan Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

**E.    Final Order**

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors, the Reorganized Debtors or the LPI Plan Trustee in consultation with the Holders of

31

the Prepetition Lender Secured Claims, upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**F.    Withholding and Reporting Requirements**

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Reorganized Debtors or the LPI Plan Trustee, as applicable, and the LPI Plan Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtors or the LPI Plan Trustee, as applicable, may require, as a condition to receipt of a distribution, that the Holder of a Claim provide such Holder's taxpayer identification number and such other information and certification (including Form W-8 and Form W-9) as the Reorganized Debtors or the LPI Plan Trustee, as applicable, may deem necessary to comply with applicable tax reporting and withholding laws.

**G.    Tax Exemption**

Pursuant to Bankruptcy Code § 1146, any transfers from the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the LPI Plan Trust's real or personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the LPI Plan Trustee of the Debtors' or the LPI Plan Trust's property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfers of property by the LPI Plan Trustee) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**H.    Governing Law**

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors, the Reorganized Debtors and the LPI Plan Trust, corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

**I.    Severability**

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**J.    Revocation**

The Debtors reserve the right, in consultation with the Holders of the Prepetition Lender Secured Claims, to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the

rights of the Debtors or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors.

**K.      Construction**

        The rules of construction as set forth in Bankruptcy Code § 102 shall apply to the construction of this Plan.

**L.      Plan Controls Disclosure Statement**

        In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.

**M.      Amendments and Modifications**

        The Debtors may alter, amend or modify this Plan under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in Bankruptcy Code § 1101(2)) of this Plan, the Reorganized Debtors in consultation with the Holders of the Prepetition Lender Secured Claims or the LPI Plan Trustee in consultation with the Trust Oversight Committee may institute proceedings in the Bankruptcy Court pursuant to Bankruptcy Code § 1127(b) to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

**N.      Notices**

        Any notices required under this Plan or any notices or requests of the Debtors, the Reorganized Debtors or the LPI Plan Trustee by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by each of the following parties:

    To the Debtors, the Reorganized Debtors, the LPI Plan Trust and the LPI Plan Trustee:

    To LPI Plan Trustee:

    _____

    To Debtors' or Reorganized Debtors' Counsel:

    MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
    Attn:    Robert J. Dehney, Esq.
           Derek C. Abbott, Esq.
           Andrew R. Remming, Esq.
           Erin R. Fay, Esq.
           1201 N. Market St. 16th Floor
           P.O. Box 1347
           Wilmington, DE 19899-1347

    -and-

    PILLSBURY WINTHROP SHAW PITTMAN LLP
    Leo T. Crowley
    Jonathan J. Russo

Margot Erlich
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

**O.      Filing of Additional Documents**

On or before substantial consummation of this Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**P.      Direction to a Party**

From and after the Effective Date, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

**Q.      Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

Dated:  May ___, 2014

Respectfully submitted,

**Laboratory Partners, Inc.**
**Kilbourne Medical Laboratories, Inc.**
**MedLab Ohio, Inc.**
**Suburban Medical Laboratory, Inc.**
**Biological Technology Laboratory, Inc.**
**Terre Haute Medical Laboratory, Inc.**
**Pathology Associates of Terra Haute, Inc.**

Name:        William A. Brandt, Jr.
Title:         Chief Executive Officer

34

<u>**EXHIBIT B**</u>

**Liquidation Analysis**

(to be filed not less than five days before the Disclosure Statement Hearing)

**EXHIBIT C**

**Summary of Material Terms of LTC Transaction**

## Summary of Material Terms of LTC Transaction

The Debtors' long-term care division (the "LTC Division") provides clinical laboratory and anatomic pathology services to skilled nursing and long-term care facilities located in Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Ohio, Virginia and Washington, D.C. The division employs approximately 800 individuals and conducts business through the following Debtor entities: Kilbourne Medical Laboratories, Inc., Medlab Ohio, Inc., Suburban Medical Laboratory, Inc., Biological Technology Laboratory, Inc. and Laboratory Partners, Inc. (collectively, the "Sellers").

The proposed purchaser (the "LTC Purchaser") is a joint venture between the Debtors' prepetition secured lenders, managed by Marathon Asset Management, and America Health Associates, Inc., a clinical reference laboratory located in Ft. Lauderdale, Florida that services a broad spectrum of health care facilities, including skilled nursing facilities and assisted living facilities.

The LTC Purchaser will receive an assignment of a portion of the prepetition secured debt from the prepetition secured lenders which it will credit bid (approximately $5,500,000 in total) in connection with the proposed asset purchase transaction. The proposed transaction structure is staggered in three stages whereby the purchaser will purchase substantially all of the assets of the Sellers primarily used in the LTC Division. The Sellers' leased facilities that are included in the definition of purchased assets under the asset purchase agreement but are not acquired by the LTC Purchaser at a respective closing will continue to be leased by the Sellers. A description of the staged closings follows:

Stage 1 Closing:
Promptly following entry of applicable orders of the Bankruptcy Court approving the sale of the LTC Division and on or prior to July 3, 2014, the LTC Purchaser will acquire certain of the assets of the Uniontown, Ohio laboratory, Beltsville, MD and the Farmington Hills, Michigan facilities (the "Stage 1 Facilities"), including two real property leases, equipment housed at these facilities, client contracts and two CLIA certificates. Additionally, the LTC Purchaser will acquire certain of the Sellers' capital leases related to the Stage 1 Facilities. The LTC Purchaser will also acquire cash proceeds from accounts receivable and related to services rendered at the Stage 1 Facilities as of such Closing Date.

Stage 2 Closing:
Promptly following receipt of the Medicare supplier numbers for the Stage 1 Facilities (which is expected to occur on or prior to August 29, 2014), the LTC Purchaser will acquire certain assets related to nine Ohio facilities (Cincinnati, Cleveland, Columbus, Centerville (Dayton), Canfield, Cadiz, Parma, Vermillion and Lima (collectively, the "Stage 2 facilities")), including substantially all of the Sellers' provider agreements and a significant number of customer agreements, information technology agreements, capital leases, CLIA licenses, vehicles and medical laboratory equipment necessary to operate the Stage 1 and Stage 2 Facilities. The LTC Purchaser will also acquire a portion of cash proceeds from accounts receivable and related to services rendered at the Stage 2 Facilities as of such Closing Date.

Stage 3 Closing:
Promptly following confirmation that the Stage 2 Facilities have been added to the Medicare supplier numbers of the Uniontown facility (which is expected to take place on or prior to October 3, 2014), the LTC Purchaser will acquire certain assets of the Louisville, Kentucky, Lexington, Kentucky, St. Louis, Missouri, Greenwood, Indiana, Springfield, Illinois and Columbia, Illinois laboratory facilities (collectively, the "Stage 3 Facilities"), including customer contracts, real property leases, medical laboratory equipment, vehicles, CLIA licenses, provider agreements, and capital leases.  In addition, the LTC Purchaser will acquire a portion of cash proceeds from accounts receivable and related to services rendered at the Stage 3 Facilities as of such Closing Date.

Under a Services Agreement, a proposed form of which will be included in a Plan Supplement, the Debtors will engage the LTC Purchaser to provide administrative, consulting and other services to the Debtors during the period between the Stage 2 Closing and the date that is two hundred and forty (240) days following the Stage 2 Closing Date and the LTC Purchaser will engage the Debtors to provide certain support to the LTC Purchaser with regard to electronic health records systems during the period between the Stage 1 Closing and the Stage 2 Closing Date.  Control of the facilities will remain vested in the Debtors until each facility has been conveyed to the LTC Purchaser under the asset purchase agreement.