## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Laboratory Partners, Inc., *et al.*,[1] | : | Case No. 13-12769 (PJW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

: Disclosure Statement Hearing: As directed by the Court
: Disclosure Statement Obj. Due: As directed by the Court
: Confirmation Hearing: As directed by the Court
: Confirmation Obj. Deadline: As directed by the Court

----------------------------------------------------x

**DEBTORS' MOTION FOR THE ENTRY OF: (I) AN ORDER (A) SCHEDULING HEARING ON DISCLOSURE STATEMENT AND (B) LIMITING AND SHORTENING THE NOTICE THEREOF, AND (II) AN ORDER (A) APPROVING DISCLOSURE STATEMENT, (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT CHAPTER 11 PLAN, (C) APPROVING FORM OF BALLOT AND SOLICITATION MATERIALS, (D) ESTABLISHING VOTING RECORD DATE, (E) SCHEDULING A CONFIRMATION HEARING AND SETTING A DEADLINE FOR FILING OBJECTIONS THERETO, AND (F) APPROVING RELATED NOTICE PROCEDURES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion"), pursuant to sections 105(a), 1125, 1126 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002(b), 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3017-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of: (i) an order (a) scheduling a hearing on the

---

[1]    The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as Medlab. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

Disclosure Statement and (b) limiting and shortening the notice thereof; (ii) an order (a) approving the Disclosure Statement, (b) establishing procedures for solicitation and tabulation of votes to accept or reject the Debtors' chapter 11 plan, (c) approving the form of ballot and solicitation materials, (d) establishing a voting record date, (e) scheduling a confirmation hearing and setting a deadline for filing objections thereto, and (f) approving the related notice provisions. As set forth below, Debtors' proposed plan will require solicitation of only one class and there are only two creditors in that class (and they are two funds under common management). All other classes are either being left unimpaired, or receiving no distribution and therefore would be deemed to reject. Concurrently with the plan process, the Debtors will be seeking authorization to engage in a staged sale transaction of their remaining operating line of business. In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION, VENUE AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. The statutory bases for the relief requested herein are sections 105(a), 1125, 1126 and 1128 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002(b), 3016(b), 3017, 3018, 3020, and 9006, and Local Rules 3017-1 and 9006-1.

### SUMMARY OF RELIEF REQUESTED

3. The Debtors submit this Motion in connection with the Debtors' proposed disclosure statement, dated May 21, 2014 (as the same may be amended or modified, the

"<u>Disclosure Statement</u>"),[2] relating to the Debtors' Joint Chapter 11 Plan, dated May 21, 2014 (as the same may be amended or modified, the "<u>Plan</u>"), both of which are attached hereto as **Exhibit A**. As set forth herein, the Debtors, at the requested hearing, will seek, among other things, entry of an order, substantially in the form attached hereto as **Exhibit B** (the "<u>Scheduling Order</u>"), scheduling a hearing for May 30, 2014 or as soon thereafter as the Debtors may be heard (the "<u>Disclosure Statement Hearing</u>"), limiting and shortening the notice thereof, setting a related objection deadline, and approving the form of notice related thereto.

4. At the Disclosure Statement Hearing, the Debtors intend to seek the entry of an order, substantially in the form attached hereto as **Exhibit C** (the "<u>Disclosure Statement Order</u>"), granting the following relief:

a) Approving the Disclosure Statement as containing "adequate information" with respect to the Plan and authorizing the Debtors to solicit acceptances or rejections of the Plan from holders of Allowed Class I Claims;

b) Scheduling a hearing (the "<u>Confirmation Hearing</u>") to consider Plan confirmation pursuant to section 1129 of the Bankruptcy Code and approving the form and manner of notice related thereto;

c) Fixing the time and manner for filing objections to Plan confirmation;

d) Establishing procedures for solicitation and tabulation of votes to accept or reject the Plan;

e) Setting a record date for determining the creditors who may vote on the Plan;

f) Approving the related notice provisions; and

g) Granting such other and further relief as the Court may deem just and proper.

5. As set forth below, the Plan has only one voting class, consisting of the Debtors' principal prepetition secured creditors -- two funds managed by Marathon Asset Management

---

[2] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

("Marathon").  The Plan would leave several other classes unimpaired and would not provide any distribution to certain other classes who would be deemed to reject.  Neither the unimpaired classes nor the "deemed to reject" classes would be solicited.  The Debtors are also under pressure to complete a sale transaction of their long term care division as soon as possible.  Consequently, the Debtors request that this Court exercise its authority under Bankruptcy Rule 9006(c) to shorten the time for notice of the Disclosure Statement Hearing and the Confirmation Hearing.

## BACKGROUND

6.      On October 25, 2013 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.  The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      On November 7, 2013, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

8.      Laboratory Partners, Inc. through its subsidiaries provides, or provided as of the Petition Date, clinical laboratory and anatomic pathology services to (i) skilled nursing facilities in Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Ohio, Virginia and Washington DC (the "Long-Term Care Division"), (ii) physicians, physician offices and medical groups (the "Talon Division"), in Indiana and Illinois, and (iii) Union Hospital, Inc. in Terre Haute and Clinton, Indiana (the "Union Hospital Division").

9.      The events leading up to the Petition Date are set forth in the *Declaration of William A. Brandt, Jr. In Support of First Day Relief* (D.I. 2), filed on the Petition Date.

10.    On the Petition Date, the Debtors filed certain motions requesting authority to pay certain prepetition obligations, including: (i) employee obligations (D.I. 11); (ii) insurance obligations (D.I. 9); (iii) tax obligations (D.I. 10); and (iv) customer program obligations (D.I. 12) (collectively, the "Prepetition Motions").  On October 29, 2013, the Bankruptcy Court granted the relief sought in the Prepetition Motions.  Also on the Petition Date, the Debtors filed a motion for approval of certain secured postpetition financing to be provided by Marathon on a superpriority basis pursuant to the terms of the Debtors' agreement with Marathon.  The Court entered a final order approving such financing on November 26, 2013 (D.I. 153).

11.    The Debtors' primary objectives in these cases have been to continue providing uninterrupted services to their clients, to fulfill their duties as debtors in possession, and to maximize the value of their estates for the benefit of their creditors and other stakeholders.  To that end, since the Petition Date, the Debtors have focused their efforts principally on operating their businesses, seeking approval of and running sale processes, preparing their schedules of assets and liabilities and statements of financial affairs, and establishing a bar date for filing proofs of claims.

### A.    Sales Efforts

12.    In the approximately six months since the Petition Date, the Debtors have made strides in achieving their objective of value maximization.  On November 15, 2013, the Court entered an order (the "Bidding Procedures Order") (D.I. 100) approving, *inter alia*, certain bidding procedures for sales of substantially all of the Debtors' assets.  The Bidding Procedures Order contemplated a staggered sale process with the sale of the Long-Term Care Division occurring first, followed by the sale of the Talon Division and possibly the Union Hospital Division.

13.     In accordance with the Bidding Procedures Order, the Debtors along with their professionals, including their Court-approved investment banker, Duff & Phelps Securities, LLC ("D&P"), have undertaken significant efforts to locate and meet with potential purchasers, respond to due diligence requests, and run thorough sale processes. Since their engagement by the Debtors, D&P has worked diligently to create as much interest as possible in the Debtors' assets. Specifically, D&P prepared marketing materials related to a potential sale of the Debtors' assets and the bid process in these cases. D&P provided these marketing materials to approximately 199 potential strategic and financial buyers. In selecting the list of parties to contact, D&P focused on financial buyers that, among other things, have experience with buying distressed companies in bankruptcy proceedings as well as strategic buyers known to be in the industry by D&P. Additionally, D&P, with the assistance of the Debtors' senior management, developed a list of additional strategic parties that would also potentially have an interest in bidding for the Debtors' assets.

14.     Following these initial canvassing efforts, D&P received positive responses from approximately forty-four (44) parties who were interested in some segment of the Debtors' businesses. These parties entered into confidentiality agreements with the Debtors and received a confidential information memorandum and access to an electronic data room.

(i)     **The Combined Talon and Union Hospital Division Sale Process**

15.     The Debtors engaged in negotiations with several interested parties regarding the Debtors' Talon and Union Hospital Divisions. To facilitate the continuation of such discussions, on January 15, 2014, after consultation with the Committee, DIP Lender and Prepetition Lenders, the Debtors filed a notice extending certain deadlines with respect to the sale of the

Talon and Union Hospital Divisions (D.I. 262).  The Debtors filed an additional notice extending certain of such deadlines on January 28, 2014 (D.I. 281).

16.     On January 27, 2014, after receiving consent from the Committee, the DIP Lender, and the Prepetition Lenders, the Debtors entered into a stalking horse asset purchase agreement with Laboratory Corporation of America Holdings ("LabCorp") for substantially all of the Debtors' Talon and Union Hospital Divisions (the "Talon APA") and filed and served such agreement in accordance with the Bidding Procedures Order (D.I. 282).

17.     No additional bids for the assets included in the Talon APA were received by the Debtors by the applicable Bid Deadline.  As a result, on February 7, 2014, the Debtors filed a notice identifying LabCorp as the successful bidder for the assets identified in the Talon APA and canceling the Auction for such assets. On February 18, 2014, the Court held a hearing to consider the sale of certain of the Debtors' assets as contemplated in the Talon APA and entered an Order approving such sale (D.I. 348) (the "Talon Sale Order").

18.     Notably, the Talon APA, as approved by the Talon Sale Order excludes certain of the Debtors' assets, including, without limitation, the business of providing nuclear medicine to Union Hospital, Inc. (the "Union Hospital Nuclear Medicine Business") and the Long-Term Care Division.

**(ii)     The Union Hospital Nuclear Medicine Business Sale Process**

19.     The Debtors marketed the Union Hospital Nuclear Medicine Business along with all their other assets as described above and provided notice of the sale of such assets as required in the Bidding Procedures Order.  Following such marketing and noticing, the only offer for the Union Hospital Nuclear Medicine Business made to the Debtors was the offer by Union Hospital, Inc., set forth in an asset purchase agreement (the "Union Hospital Nuclear Medicine APA").  On February 21, 2014, the Debtors filed a motion seeking approval of the Union

Hospital Nuclear Medicine APA, the Debtors' entry into the Union Hospital Nuclear Medicine APA, and related relief (D.I. 358).  On March, 6, 2014, the Court held a hearing to consider the sale of certain of the Debtors' assets as contemplated in the Union Hospital Nuclear Medicine APA and entered an Order approving such sale (D.I. 387) (the "Union Hospital Nuclear Medicine Sale Order").

(iii)    <b>The Long-Term Care Sale Process</b>

20.    Despite the extensive marketing for the Long-Term Care Division described above and although the Debtors have engaged in active negotiations with several interested parties, the Debtors did not receive any Qualified Bids for the Long-Term Care Division by the applicable Bid Deadline set forth in the Bid Procedures Order.  As a result, the Debtors adjourned the hearing on the sale of the Long-Term Care Division to a date to be determined.

21.    Since such adjournment, the Debtors have continued negotiations with any interested parties.  As a result of such discussions, the Debtors and the LTC Purchaser have finalized negotiations regarding an asset purchase agreement (the "LTC APA"), subject to Court approval.  The terms of the LTC APA are beneficial to the Debtors and their estates and provide for the continued employment of the Debtors' Long-Term Care Division employees, continuity of care to the Long-Term Care Division customers, and a business partner for the Long-Term Care Division vendors.  The Debtors believe that the LTC APA represents the highest and best available bid for substantially all of the Long-Term Care Division assets.

22.    Subject to the necessary approval in the LTC Sale Order, the Debtors and the LTC Purchaser will finalize the LTC APA that provides for a sale of the Long-Term Care Division, in a series of three staggered closings, the first of which shall occur approximately concurrently with the Confirmation Date.  A summary of material terms of the transaction contemplated by the LTC APA is attached to the Disclosure Statement as Exhibit C.

Approximately concurrently herewith, the Debtors will file a separate motion for approval of the LTC APA under Bankruptcy Code section 363.

23.     As stated in Article V of the Plan, many executory contracts and unexpired leases of the Debtors were assumed and assigned, or rejected, during the cases.  Executory contracts or unexpired leases associated with the Long-Term Care Division will be designated for (i) rejection, (ii) assumption and assignment in connection with the LTC Sale, or (iii) such other treatment as the counterparty and the Debtors may agree.[3]

**B.      The Debtors' Chapter 11 Plan**

24.     As reflected in the Plan, the only class of claims or interests entitled to vote on the Plan is Class I, which is comprised of Claims of the Debtors' Prepetition Secured Lenders.  The Prepetition Secured Lenders have had input into the Plan and Disclosure Statement.  Due to the Debtors' need to exit these cases and the limited voting Creditors, by this Motion, the Debtors seek a process that will streamline and simplify the Disclosure Statement and Plan process, including solicitation and confirmation.  The process is intended to minimize further disruption to the going-concern value of the Long-Term Care Division, reduce administrative expenses, and benefit Creditors receiving distributions in a more expeditious manner.

25.     Article IV and VI of the Plan sets forth the means by which the Plan shall be implemented and executed, including the distribution, procedures for objections to and

---

[3]     To the extent an executory contract or unexpired lease has not been assumed by the Confirmation Date or in connection with the LTC Sale, all such unassumed executory contracts and unexpired leases, shall be deemed rejected and any resulting Rejection Claims should be filed in accordance with the procedures set forth in the Plan.  All Rejection Claims will be treated as a Class VII-General Unsecured Claim, which class shall not receive a distribution under the Plan.  In certain cases the Plan proposes that rejections have deferred effective dates, so that the rejection, although provided for in the Plan, would take effect post-confirmation.  Notwithstanding the above, the Plan reserves to the Debtors the right to assume insurance policies if they are deemed to be executory.

allowance of Claims for purposes of the distributions and voting, the donation of returned distributions to the Charity, the vesting of the estates' assets in the Reorganized Debtors and then the Remaining Assets in the LPI Plan Trust, the dissolution of the Debtors, the resignation of the Debtors' directors and officers, and the vesting of authority in the LPI Plan Trustee.

26.     Following the sales processes, the Debtors' remaining assets will consist of the shares of stock of the subsidiary debtors (i.e., the Debtors other than Laboratory Partners, Inc.), certain accounts receivable, the Lab Corp Escrow, the Causes of Action, certain miscellaneous assets, and proceeds from the sales of the Long-Term Care, Talon and Union Hospital Divisions. Such remaining assets will be liquidated and distributed as set forth in the Plan.

27.     The Plan filed concurrently herewith has been proposed by the Debtors, in consultation with the Prepetition Secured Lenders, over the alternative of converting the Debtors' bankruptcy cases to chapter 7 of the Bankruptcy Code because the Debtors believe that: (i) the Plan ensures a timely distribution of the Debtors' remaining assets and (ii) the Plan avoids unnecessary costs to the Debtors' estates which would accrue if the Debtors' bankruptcy cases were converted to chapter 7 of the Bankruptcy Code.  Furthermore, the Debtors believe that priority claims and administrative claims (including, without limitation, claims under Bankruptcy Code section 503(b)(9)) that will be paid through the Plan are unlikely to be paid if the Debtors' cases are converted to cases under chapter 7 of the Bankruptcy Code.  A liquidation analysis will be filed at least five days before the Disclosure Statement Hearing.

## DISCLOSURE STATEMENT

**I.     Order Scheduling Disclosure Statement Hearing, Setting Deadline for Filing Objections Thereto, and Approving Notice of the Disclosure Statement Hearing**

28.     For the reasons set forth below, the Debtors believe that it is in the best interests of their estates and creditors to schedule the Disclosure Statement Hearing as expeditiously as

possible.  The Debtors seek entry of an order: (i) shortening notice to allow the Disclosure Statement to be considered for approval on an expedited basis; (ii) scheduling the Disclosure Statement Hearing for May 30, 2014 or as soon thereafter as is practicable; (iii) setting a deadline to object to the Disclosure Statement of May 29, 2014 for filed objections and at the hearing for oral objections; and (iv) limiting notice of the Disclosure Statement Hearing to: (a) the U.S. Trustee, (b) the Committee, (c) the Prepetition Secured Lenders, (d) the LTC Purchaser, and (e) all parties that have filed a notice of appearance and request for service of notices pursuant to Bankruptcy Rule 2002.

### A.    Shortened Notice

29.    Bankruptcy Rule 3017(a) provides that the Court shall hold a hearing to consider a disclosure statement and any objections or modifications thereto upon not less than twenty-eight (28) days' notice to the debtor, creditors, equity security holders and other parties in interest.  Local Rule 3017-1(a) provides that the hearing date shall be not less than thirty-five (35) days following service of a disclosure statement.  Bankruptcy Rule 9006(c), however, permits the Court to reduce time periods otherwise required under the Bankruptcy Rules for cause shown.[4]  Local Rule 9006-1(e) similarly provides for shortened notice "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice."  Del. Bankr. L.R. 9006-1(e).  As set forth below, shortened notice is justified here.

30.    It is imperative that these cases conclude efficiently and promptly.  The Debtors believe that the best process to accomplish these goals is through expedited approval of the

---

[4]    Bankruptcy Rule 9006(c)(2) prohibits the Court from shortening the notice required by certain Bankruptcy Rules; however, such rule does not apply to the relief requested herein.

Disclosure Statement and an expedited Plan process contemporaneously with the sale of the Long-Term Care Division.  As the only voting creditors – the Prepetition Secured Lenders - have been involved in the Plan drafting process and have agreed to the timetables requested herein, such parties will not be prejudiced by shortened notice of the Disclosure Statement Hearing. Also, shortening notice of the Disclosure Statement Hearing will preserve assets of the estates. Accordingly, the Debtors believe that cause exists to shorten notice of the Disclosure Statement Hearing.

**B.    Notice**

31.    The Debtors propose to serve the notice of the Disclosure Statement Hearing, in the form attached hereto as **Exhibit D** (the "Disclosure Statement Hearing Notice"), and a copy of the Disclosure Statement and Plan by overnight mail upon: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the LTC Purchaser; (iv) counsel to the Prepetition Secured Lenders; and (v) all parties that have filed a notice of appearance and request for service of notices pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that notice to such parties is proper and sufficient.  The Disclosure Statement and Plan shall also be made available on the website of BMC Group, Inc. (the "Noticing Agent") at **www.bmcgroup.com/laboratorypartners** (the "Noticing Agent Website").

**C.    Objections**

32.    The Debtors propose that any objections or proposed modifications to the Disclosure Statement shall either: (1) (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules of this Court, (c) set forth the name of the objecting party, and the nature and amount of any claim or interest alleged by such objecting party against the Debtors' estates or properties, (d) state with particularity the legal and factual basis for such objections, and

include, where appropriate, suggested language to amend the Disclosure Statement in a manner that would resolve such objection, and (e) be filed with the Office of the Clerk of the Bankruptcy Court in accordance with the Local Rules with a copy served upon: (i) the Debtors, 671 Ohio Pike, Suite K, Cincinnati, OH 45245; (ii) co-counsel to the Debtors, (a) Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036 (Attn: Leo Crowley, Jonathan Russo and Margot Erlich) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P. O. Box 1347, Wilmington, DE 19899-1347 (Attn: Robert Dehney and Derek Abbott); (iii) investment bankers to the Debtors, Duff & Phelps Securities, LLC, 10100 Santa Monica Blvd, Suite 1100, Los Angeles, CA 90067 (Attn: Mark Catania); (iv) Development Specialists, Inc., Three First National Plaza, 70 West Madison Street, Suite 2300, Chicago, IL 60602-4250 (Attn: William A. Brandt, Jr.); (v) counsel to Prepetition Secured Lenders, Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022 (Attn: Mark Deveno and Erin Mautner) and Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE  19801 (Attn: Mark Collins); (vi) counsel to the Committee, Otterbourg P.C., 230 Park Avenue, New York, NY 10169 (Attn: David M. Posner), and Klehr Harrison Harvey Branzburg, LLP, 919 Market Street, Suite 1000, Wilmington, DE 19801-3062 (Attn: Margaret Manning); and (vii) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Richard Schepacarter) (collectively, the "Service Parties"), such that all written objections are received by the Service Parties and filed no later than the 4:00 p.m. (ET) on May 29, 2014, or (2) be made in person at the Disclosure Statement Hearing.

### D.    Limited Notice

33.    Bankruptcy Rule 3017(a) requires "notice to the debtor, creditors, equity security holders and other parties in interest" of a disclosure statement hearing and the time for filing

objections or modifications thereto." Fed. R. Bankr. P. 3017(a). The Debtors submit that it is in the best interests of their estates to limit the notice of the Disclosure Statement Hearing required under Bankruptcy Rule 3017(a).

34.     As discussed herein, the Debtors are filing this Motion to move these cases to a successful conclusion expeditiously and to preserve estate assets and jobs associated with the Long-Term Care Division. Thus, limiting notice is in the best interests of these estates because it will permit prompt noticing of key parties while limiting the accrual of additional administrative expenses. In addition, Creditors entitled to vote will receive prompt notice of the Disclosure Statement Hearing. All creditors, equity security holders and other parties in interest will receive notice of the Confirmation Hearing and will be able to raise objections in connection therewith.

35.     The Debtors respectfully submit that it is in the best interests of these estates to limit notice of the Disclosure Statement Hearing and the related relief requested.

**E.    Conclusion**

36.     Accordingly, the Debtors respectfully request that this Court enter a Scheduling Order, substantially in the form attached hereto as **Exhibit B**: (i) shortening notice to allow the Disclosure Statement to be considered on an expedited basis; (ii) scheduling the Disclosure Statement Hearing for May 30, 2014 or as soon thereafter as is practicable; (iii) requiring all objections to the Disclosure Statement be filed and served by May 29, 2014 at 4:00 p.m. (ET) or raised at the Disclosure Statement Hearing; and (iv) approving the limited notice of the Disclosure Statement Hearing to the U.S. Trustee, the Committee, the LTC Purchaser, the Prepetition Secured Lenders, and all parties that have filed a notice of appearance and request for service of notices pursuant to Bankruptcy Rule 2002.

## II.    Adequacy of Disclosure Statement

37.    Section 1125 of the Bankruptcy Code requires that a disclosure statement be approved by the court as containing "adequate information" prior to a debtor's solicitation of acceptances or rejections of a plan.  11 U.S.C. § 1125(b).  "Adequate information" is defined in the Bankruptcy Code as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant case to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a).  The Debtors' Disclosure Statement therefore must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the Plan.  *See Krystol-Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F3d 314, 322 (3d Cir. 2003).  Essentially, the Disclosure Statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Fevretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

38.    In evaluating whether a disclosure statement provides "adequate information," courts adhere to section 1125's instruction that making this determination is a flexible exercise based on the facts and circumstances of each case and is within the broad discretion of the Court. See 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in

15

sufficient detail, as far as is reasonably practicable *in light of the nature and history of the debtor and the condition of the debtor's books and records....*") (emphasis added); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

39.     In accordance with these precepts, the Disclosure Statement provides a review of the Debtors' cases, assets and liabilities, and a summary of the Plan.  In drafting the Plan and Disclosure Statement, the Debtors also sought and received comments on the Plan and Disclosure Statement from counsel to the Prepetition Secured Lenders.

40.     Specifically, the Debtors' Disclosure Statement contains the pertinent information necessary for holders of eligible claims to make an informed decision about whether to vote to accept or reject the Plan, including, among other things, information regarding:

- the Plan, including a summary of the classification and treatment of all classes of creditors and interests;
- a brief summary of the Debtors' remaining assets and liabilities;
- the Debtors' prepetition capital structure and indebtedness;
- certain risk factors to consider that may affect the Plan;
- the provisions governing distributions under the Plan; and
- the means for implementation of the Plan.

41.     The Debtors respectfully submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code.  To the extent necessary, the Debtors will demonstrate at the Disclosure Statement Hearing that the Disclosure Statement addresses the

information set forth above in a manner that provides those entities entitled to vote on the Plan with adequate information within the meaning of section 1125.

**SOLICITATION PROCEDURES**

**I.      Procedures for Solicitation and Tabulation of Votes**

      **A.      <u>Approval of Form of Ballot</u>**

42.      In accordance with Bankruptcy Rules 3017(d) and 3018(c), the Debtors propose to mail to the holders of Claims entitled to vote on the Plan, a form ballot attached hereto as **Exhibit E**, and incorporated herein by reference (the "<u>Ballot</u>").[5]   The Ballot is substantially similar to Official Form No. 14, but has been modified to be consistent with the specific provisions of the Plan.   The instructions for completion of the Ballot are included in the Disclosure Statement.   The Debtors propose that the appropriate form of Ballot be distributed to the Creditors in Class I (the "<u>Voting Class</u>").

43.      The Voting Class is the only class that will receive the Ballot as it is the only class of Claims and Interests that will be entitled to vote under the Plan.   The remaining classes of Claims and Interests set forth below (the "<u>Non-Voting Classes</u>" and together with the Voting Class, the "<u>Classes</u>") are not entitled to vote on the Plan as they have been conclusively presumed to have accepted the Plan in accordance with section 1126(f) or rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code, as indicated:

---

[5]      Postage and envelopes for the submission of the Ballots are not included in the Solicitation Package (as defined herein).

| Class II: Capital Lease Claims | Unimpaired, Not Entitled to Vote | Each Holder of an Allowed Capital Lease Claim shall receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, (a) such treatment as the Reorganized Debtors or the LPI Plan Trustee and the Holder agree, or (b) at the Reorganized Debtors' or the LPI Plan Trustee's option, (i) assumption of the applicable Capital Lease and assignment of same to a purchaser subject to all of the existing terms of the applicable Capital Lease, or (ii) abandoning the property subject to the Capital Lease to the Capital Lessor, with such Lessor retaining all of its legal, equitable and contractual rights, or (iii) paying the Allowed Capital Lease Claim in cash in full; provided, however, that unless otherwise agreed to by the Holder of such Claim and the Debtors, the Reorganized Debtors or the LPI PlanTrustee, any Holder of an Allowed Capital Lease Claim shall be entitled to a Deficiency Claim for any portion of their Claim over the value of the collateral securing such claim.  There will not be any distribution on account of such Deficiency Claim. |
| --- | --- | --- |
| Class III: Secured Tax Claims | Unimpaired, Not Entitled to Vote | Subject to the terms of the Plan and unless the Holder of an Allowed Secured Tax Claim agrees to other, less-favorable treatment, each Holder of an Allowed Secured Tax Claim shall receive, on the Effective Date, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, either, at the Reorganized Debtors' or the LPI Plan Trustee's sole option, (i) 100% of the unpaid amount of such Allowed Secured Tax Claim in Cash or (ii) the collateral securing such Allowed Secured Tax Claim. |

| Class IV: Other Secured Claims | Unimpaired, Not Entitled to Vote | Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code and the Plan, each holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, either (a) such treatment as the Debtors or the LPI Plan Trustee and the Holder of an Allowed Other Secured Claim agree, or (b) at the Debtors' or the LPI Plan Trustee's option: (i) payment of such Claim in full or (ii) leaving unaltered the legal, equitable and contractual rights of the Holder of such Claim securing the Allowed Other Secured Claim, up to the unpaid amount of such Allowed Other Secured Claim, subject to applicable inter-creditor lien priorities; provided, however, that unless otherwise agreed to by the Holder of such Claim and the Debtors, the Reorganized Debtors or the LPI Plan Trustee, any Holder of an Other Secured Claim shall be entitled to a Deficiency Claim for any portion of their Claim over the value of the collateral securing such claim.  There will not be any distribution on account of such Deficiency Claim. |
| --- | --- | --- |
| Class V: Priority Claims | Unimpaired, Not Entitled to Vote | Subject to the terms of the Plan and unless the Holder of an Allowed Priority Claim agrees to other, less-favorable treatment, each Holder of an Allowed Priority Claim shall receive, on the later of (a) the Effective Date or (b) 10 days after the date that such Priority Claim becomes an Allowed Claim, in full and final satisfaction, settlement, release and discharge of and in exchange for such Claim, 100% of the unpaid amount of such Allowed Priority Claim in Cash or such other less favorable treatment as shall be agreed to between the Holder of such Priority Claim and the Reorganized Debtors or the LPI Plan Trustee. |

| Class VI: Noteholder Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on their Claims. |
|---|---|---|
| Class VII: General Unsecured Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on their Claims. |
| Class VIII: Intercompany Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on their Claims. |
| Class IX: Interests | Impaired, Deemed to Reject | Shareholders of the Debtors and other holders of Interests will retain no ownership interests in the Debtors under the Plan and will not receive any recovery on account of their Interests. Third Party Interests shall, upon the election of the Prepetition Lenders (which election shall be made prior to the LPI Plan Trust Effective Date), either be (i) cancelled effective as of the LPI Plan Trust Effective Date or (ii) transferred by such Holder thereof to the LPI Plan Trust as of the LPI Plan Trust Effective Date in accordance with the terms of any Interest Transfer Agreement. Intercompany Interests shall, upon the election of the Prepetition Lenders (which election shall be made prior to the LPI Plan Trust Effective Date), either be (i) cancelled effective as of the LPI Plan Trust Effective Date or (ii) transferred to the LPI Plan Trust by the Debtors as of the LPI Plan Trust Effective Date. |

44.    In accordance with Bankruptcy Rule 3017(d), the Debtors propose that the aforementioned Non-Voting Classes of Claims and Interests not entitled to vote on the Plan, receive a notice to that effect, substantially in the form of **Exhibit F** attached hereto and incorporated herein by reference (the "Non-Voting Notice"), and not receive a Solicitation Package (as defined herein). The Debtors shall serve a copy of the Non-Voting Notice upon the members of the Non-Voting Classes no later than three (3) business days after the entry of the

Disclosure Statement Order. However, a copy of the Plan and Disclosure Statement will be made available to holders of Claims and Interests in the Non-Voting Classes upon written request or from the Noticing Agent Website.

45.     The Debtors respectfully submit that the proposed Ballot and Non-Voting Notice are appropriately tailored to the Plan and comply with Bankruptcy Rules 3017 and 3018. Accordingly, by this Motion, the Debtors request that the Court approve the proposed Ballot, attached hereto as **Exhibit E**, and the proposed Non-Voting Notice, attached hereto as **Exhibit F**.

### B.      <u>Voting Deadline for the Receipt of Ballots</u>

46.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan . . . ." The Debtors anticipate commencing the Plan solicitation period by mailing the Ballots, and other approved solicitation materials to the Voting Class no later than three (3) business days after the entry of the Disclosure Statement Order. Based on this schedule, the Debtors propose that all Ballots being cast must be properly executed, completed and delivered, by either mail, overnight courier, or personal delivery, to the Balloting Agent, so that the Ballots are actually <u>received</u> no later than 4:00 p.m., on June 9, 2014 (the "<u>Voting Deadline</u>"). This date will give creditors in the Voting Class sufficient time to review the solicitation materials and vote, and provides the Debtors with enough time to tabulate the Ballots and prepare for whatever issues the voted Ballots may raise in connection with the Confirmation Hearing. Ballots received by facsimile or electronic mail will not be accepted or counted.

### C.      <u>Procedures for Tabulating Votes</u>

47.     Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds in dollar

amount and more than one-half in number of the allowed claims in that class that have actually cast ballots for acceptance or rejection of the plan. *See* 11 U.S.C. § 1126(c). At this stage of these chapter 11 cases, the General Bar Date and the Governmental Bar Date have passed. For the purposes of voting on the Plan, the Debtors propose that each Claim in a Voting Class (i)(a) for which a proof of claim was timely Filed with the Bankruptcy Court by the Bar Date; or (b) that is listed in the Schedules and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no objection to the allowance thereof has been Filed by the Record Date or (ii) which has otherwise been allowed by a Final Order, be allowed temporarily for voting purposes.[6] The foregoing is subject to further order of the Court to the extent that a party moves for temporary allowance of its Claims in an amount which is different from the amount that otherwise would apply to such Claim under the foregoing.

48.    The Debtors propose that the following procedures be utilized in tabulating the Ballots with respect to Ballots submitted by the Record Holder of a Claim (the "Tabulation Rules"):

a)    Except to the extent the Debtors otherwise determine, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the Debtors' request for confirmation of the Plan.

b)    Any Ballot which is otherwise properly completed, executed and timely returned that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and rejection of the Plan shall be deemed to be a vote to accept the Plan.

c)    Any Ballot which is returned indicating acceptance or rejection of the Plan but which is unsigned or does not identify the Creditor (whether or not signed) shall not be counted.

---

[6]    Unless otherwise specified in the Plan, such Claim shall not include: (i) untimely Filed Claims or requests for Administrative Expenses, (ii) interest on the principal amount of the Allowed Claim from and after the Petition Date, (iii) any punitive damages, or (iv) Claims which are Assumed Liabilities.

d)      Whenever a creditor casts more than one Ballot voting the same Claim prior to the Voting Deadline, only the latest-dated Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

e)      If a creditor casts simultaneous duplicative Ballots which are voted inconsistently, such Ballots shall count as one vote accepting the Plan.

f)      Each creditor shall be deemed to have voted the full amount of its Claim as set forth on the Ballot.

g)      Creditors shall not split their vote within a Class, thus each creditor shall vote all of its Claims within the Voting Class either to accept or reject the Plan.

h)      Ballots partially rejecting and partially accepting the Plan shall not be counted.

i)      The method of delivery of Ballots to the Balloting Agent is at the risk of each creditor, and such delivery will be deemed made only when the original Ballot is actually received by the Balloting Agent.

j)      No Ballot should be sent directly to the Debtors.

k)      The Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code).  If the Debtors make material changes in the terms of the Plan, the Debtors will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

l)      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a creditor, such person shall be required to indicate such capacity when signing and, at the Balloting Agent's discretion, must submit proper evidence satisfactory to the Balloting Agent to so act on behalf of the creditor.

m)      The Debtors, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors may, in their sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

n)      In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

o)      Any creditor who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a).

p)      Subject to any contrary order of the Court, the Debtors reserve the absolute right to reject any and all Ballots not proper in form, the acceptance of which would, in the opinion of the Debtors or their counsel, not be in accordance with the provisions of the Bankruptcy Code or the Disclosure Statement Order.

q)      Subject to any contrary order of the Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

r)      Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

s)      Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

t)      Any Ballot received by telecopier, facsimile or other electronic communication shall not be counted.

u)      For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

v)      Ballots received that do not evidence the amount or Class, or evidence an incorrect amount or Class, of such Creditor's Claim shall be completed or corrected, as the case may be, based upon a Final Order of the Court or, if no such Final Order exits, then (i) based upon timely filed proofs of Claim, or (ii) the Schedules filed by the Debtors if no proof of claim has been filed by such Creditor, and counted as a vote to accept or reject the Plan.

49.     Upon completion of balloting, the Balloting Agent will certify the amount and number of allowed Claims of the Voting Class accepting or rejecting the Plan.  The Debtors will file such certifications with the Court prior to the Confirmation Hearing.

50.     The Debtors respectfully submit that the Tabulation Rules will establish a fair and equitable voting process, particularly given the right of parties to seek temporary allowance of

their Claims on some other basis, as described in greater detail below.  Therefore, the Debtors seek this Court's approval of such proposed rules.

### D.  Procedures for Temporary Allowance of Claims

51.    The Debtors do not expect that there will be any need to address possible temporary allowance for voting purposes.  If for reasons presently unforeseen that becomes necessary, the Debtors propose that any holder of a Claim that seeks to challenge the temporary allowance of its Claim for voting purposes based on the Tabulation Rules be required to file a motion, pursuant to Bankruptcy Rule 3018(a),[7] for an order temporarily allowing its Claim in a different amount or classification for purposes of voting to accept or reject the Plan  (a "Rule 3018 Motion") and serve the Rule 3018 Motion on the Debtors so that it is received no later than 4:00 p.m. (ET), on June 6, 2014.  The Debtors will then have: (a) until June 9, 2014 at 11:00 a.m. (ET) to file and serve any responses to Rule 3018 Motions; and (b) coordinate with the Court to adjudicate and resolve all pending Rule 3018 Motions and responses thereto at the hearing scheduled for June 11, 2014 at 9:30 a.m. (ET) or such other time as the Court may fix upon request by the Debtors.  In accordance with Bankruptcy Rule 3018, the Debtors further propose that any Ballot submitted by a creditor that files a Rule 3018 Motion will be counted solely in accordance with the Tabulation Rules and other applicable provisions contained herein unless and until the underlying Claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.

---

[7]    Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purposes of accepting or rejecting a plan."

**II.     Confirmation Hearing, Record Date and Solicitation Packages**

    **A.     <u>Confirmation Hearing, Objection Deadline and Notice Thereof</u>**

52.     Bankruptcy Rule 3017(c) provides that, on or before the approval of the Disclosure Statement, the Court "may fix the date for the hearing on confirmation."   In accordance with this provision, the Debtors request that the Confirmation Hearing be set for a date on or about June 16, 2014.  The Debtors further request that objections to confirmation of the Plan, if any, must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (iii) state with particularity the basis and nature of any objections to confirmation of the Plan; and (iv) be filed with the Court and served on the Service Parties so that they are received no later than 4:00 p.m. (ET), on the date that is seven days prior to the Confirmation Hearing (the "<u>Plan Objection Deadline</u>").  The Debtors reserve the right to file a consolidated reply to any such objection no later than two business days before the Confirmation Hearing.

53.     Bankruptcy Rule 2002(b) requires that the Debtors provide notice to all creditors and parties in interest at least twenty-eight (28) days prior to the deadline for filing objections to confirmation of the Plan and the Confirmation Hearing.  By this Motion and for the reasons set forth above, the Debtors are seeking an expedited Confirmation Hearing and Plan Objection Deadline, as authorized by Bankruptcy Rule 9006.

54.     Bankruptcy Rule 2002(d) further requires that equity security holders be given notice of these matters in the manner and form directed by the Court.  As the Non-Voting Classes will receive the Non-Voting Notice, and the Voting Class will receive the Solicitation Package (defined below) the Debtors propose to serve: (i) all parties filing a Notice of Appearance and Request for Service pursuant to Bankruptcy Rule 2002 in these chapter 11 cases, (ii) state and local taxing authorities in which the Debtors do or did business, (iii) the

Securities and Exchange Commission, (iv) Internal Revenue Service, (v) the United States Trustee, and (vi) Record Holders of Unclassified Claims, if any, a copy of the notice substantially in the form attached hereto as **Exhibit G** (the "Confirmation Hearing Notice").

55.     The Debtors shall serve a copy of such notice upon such parties no later than three (3) business days after the entry of the Disclosure Statement Order.  The Confirmation Hearing Notice sets forth: (i) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (ii) the deadline for filing Rule 3018 Motions; (iii) the Plan Objection Deadline; and (iv) the time, date and place of the Confirmation Hearing.

### B.     The Record Date

56.     Bankruptcy Rule 3018(a) authorizes the Court to set a date other than the date on which the Disclosure Statement is approved.  Debtors request that the Court fix May 15, 2014 as the "Record Date" for determining which members of voting classes are permitted to vote. Counsel for the Prepetition Secured Lenders has advised Debtors' counsel that he consents to such date.

57.     With respect to any transferred Claim, the Debtors propose that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of payment and interest of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Record Date (including without limitation, the passage of any applicable objection period); or (b) the transferee files, no later than the Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

C.    **The Solicitation Packages**

58.    Bankruptcy Rule 3017(d) identifies the materials that must be provided to the creditors for purposes of soliciting votes and providing adequate notice of the hearing on confirmation of a plan.

59.    In accordance with Bankruptcy Rule 3017(d), the Debtors propose that, after entry of the Disclosure Statement Order, the following materials be mailed by the Balloting Agent to all Creditors entitled to vote (the "Solicitation Package"): (i) the Disclosure Statement (together with exhibits thereto, including the Plan, that have been filed with the Court before the date of mailing); (ii) an appropriate form of Ballot; and (iii) the Confirmation Hearing Notice.

60.    Consistent with sections 1126(f) and 1126(g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), the Debtors request that no Solicitation Packages be mailed to holders of Claims and Interests in Classes that are conclusively deemed to accept or reject the Plan; namely, the Non-Voting Classes. However, as previously noted, in accordance with Bankruptcy Rule 3017(d), the Debtors propose that the Non-Voting Classes shall receive the Non-Voting Notice, substantially in the form of **Exhibit F** attached hereto.

61.    The Balloting Agent will mail the Solicitation Packages no later than three (3) business days after the entry of the Disclosure Statement Order to: (i) the holders of Claims in the Voting Class; (ii) all parties that have filed requests for notice in the chapter 11 cases on or before the Record Date (without the Ballot); (iii) counsel for the Committee (without the Ballot); and (iv) the United States Trustee for this District (without the Ballot).

62.    The Debtors submit that the foregoing procedures for providing notice of the Confirmation Hearing, the Plan Objection Deadline and related matters are both fair to holders of Claims and Interests and other parties in interest and are calculated to result in votes and

objections that will be known in sufficient time to permit an organized and efficient Confirmation Hearing.  Accordingly, the Debtors respectfully request that the Court approve such notice procedures as appropriate under the circumstances and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

63.     Notwithstanding the foregoing notice requirements, the Debtors seek a waiver from the service requirements with respect to the Solicitation Package for parties on whom the Disclosure Statement Hearing Notice was served but returned as undeliverable and the Debtors could not find a better address after reasonable diligence.

## NO PRIOR REQUEST

64.     No prior request for the relief sought herein has been made by the Debtors to this or any other Court.

## NOTICE

65.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Secured Lenders; (c) the Internal Revenue Service; (d) all parties that have requested, prior to the date hereof, or that are required to receive notice pursuant to Bankruptcy Rule 2002; and (e) counsel to the Committee.  The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as **Exhibit B** scheduling the Disclosure Statement Hearing; (ii) after the Disclosure Statement Hearing, enter an order, substantially in the form attached hereto as **Exhibit C**, (a) approving the Debtors' Disclosure Statement, (b) approving the form of Ballots, Solicitation Materials, and related notices, the Voting Deadline, and the Solicitation Procedures, including procedures for temporary allowance of Claims for voting purposes and the proposed Record Date for purposes of voting on the Plan, (c) scheduling the Confirmation Hearing, and (d) approving related notice procedures; and (iii) granting such other and further relief that the Court deems just and proper.

Dated: May 21, 2014  
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Erin R. Fay*  
Robert J. Dehney (No. 3578)  
Derek C. Abbott (No. 3376)  
Andrew R. Remming (No. 5120)  
Erin R. Fay (No. 5268)  
1201 N. Market St., 16th Flr.  
PO Box 1347  
Wilmington, DE  19899-1347  
Telephone:  302-658-9200  
Facsimile:  302-658-3989

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP  
Leo T. Crowley  
Jonathan J. Russo  
Margot Erlich  
1540 Broadway  
New York, New York 10036  
Telephone: (212) 858-1000  
Facsimile: (212) 858-1500

*Counsel to Debtors and Debtors in Possession*

7971360.6