**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Laboratory Partners, Inc., *et al.*,[1] | : | Case No. 13-12769 (PJW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **RE: D.I. 482** |

----------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF
THE DEBTORS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES,
RIGHTS, INTERESTS AND ENCUMBRANCES TO AMERATHON, LLC PURSUANT
TO 11 U.S.C. § 363; (B) THE DEBTORS' ENTRY INTO AND PERFORMANCE OF
THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT AND
ANCILLARY AGREEMENTS; (C) THE DEBTORS' ASSUMPTION AND
ASSIGNMENT OF CERTAIN SPECIFIED EXECUTORY CONTRACTS AND LEASES
PURSUANT TO 11 U.S.C. § 365; AND (D) RELATED RELIEF**

Upon the motion (the "Motion") of the debtors and debtors-in-possession in the

above-captioned cases (the "Debtors"), pursuant to Sections 105(a), 363, 365, 503 and 507 of

title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order, *inter*

*alia*, authorizing and approving (a) the sale of certain assets relating to the Debtors' businesses

(the "Purchased Assets") described in and pursuant to the terms and conditions of the Asset

Purchase Agreement, dated as of May 20, 2014, a true and accurate copy of which is annexed

hereto as **Exhibit A** (collectively with all exhibits thereto, the "Purchase Agreement"), free and

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as Medlab. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

clear of all claims, liens, liabilities, rights, interests and encumbrances by and between certain of the Debtors, as sellers (the "Sellers"), and Amerathon, LLC ("Purchaser"), (b) the Sellers' entry into and performance of their obligations under the Purchase Agreement and each of the ancillary agreements entered into or contemplated as part of the Purchase Agreement (the "Ancillary Agreements"), (c) the Debtors' assumption of and assignment to Purchaser of certain specified executory contracts and leases as specifically set forth in the Purchase Agreement, and (d) related relief; and a hearing on the Motion having been held on June 11, 2014 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Hearing and the Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

**I.    General**

A.    The findings and conclusions set forth in this Order as well as those read into the record at the Sale Hearing (if any) constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 as made applicable to this proceeding by Fed. R. Bankr. P. 9014.  All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Purchase Agreement.

B.    The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the transaction that is the subject of the Purchase Agreement and all such matters, including the Motion, constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in the Court under 28 U.S.C. §§

---

[2]Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  Fed. R. Bank. P. 7052.

8303061.2

1408 and 1409.

        C.      The statutory predicates for the relief sought in the Motion are Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

        D.      On November 15, 2013, the Court entered the *Order: (I) Approving Bidding Procedures In Connection With Sale(s) Of Substantially All Of The Debtors' Assets; (II) Scheduling Hearing To Consider Sale; (III) Approving Form And Manner Of Notice Thereof; (IV) Authorizing Entry Into Stalking Horse Agreements Subject To Further Hearing; And (V) Granting Related Relief* (D.I. 100) (the "Bidding Procedures Order"), pursuant to which the Court, *inter alia,* approved the bidding procedures annexed to the Bidding Procedures Order for sales of the Debtors' assets and established procedures for the assumption, assignment and/or transfer of the executory contracts and unexpired leases to any purchaser of the Debtors' assets and to resolve any objections thereto, including procedures to set the cure amounts to be paid under Section 365 of the Bankruptcy Code.

        E.      On May 20, 2014, the Debtors filed and served the Motion (D.I. 482) seeking approval of the sale of the Purchased Assets to the Purchaser.

        F.      As evidenced by the certificate of service filed with the Court (D.I. 515), and based on the representations of counsel, and evidence proffered or adduced, at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the transactions contemplated therein, the Sale Hearing, and the assumption and assignment of certain specified executory contracts and leases to the Purchaser as provided in the Purchase Agreement has been provided in accordance with Sections 102, 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 2002-1; (ii) such notice was good

3

and sufficient and appropriate under the particular circumstances; and (iii) no other or further

notice of the Motion, the transactions contemplated therein, the Sale Hearing and the entry of

this Order is required.

               G.     A reasonable opportunity to object or be heard with respect to the

Motion and the relief requested therein has been afforded to all interested persons and entities,

including, but not limited to: (i) the U.S. Trustee; (ii) counsel for and members of the official

committee of unsecured creditors appointed in these cases (the "Committee"); (iii) counsel to the

Prepetition Lenders; (iv) all entities (or counsel therefor) known or reasonably believed to have

asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon any portion of

the Purchased Assets, including the Assigned Contracts; (v) all non-Debtor parties to the

executory contracts and unexpired leases; (vi) all Persons known or reasonably believed to have

expressed a bona fide interest in acquiring some or all of any of the Purchased Assets within the

last six months; (vii)  federal, state and local regulatory or taxing authorities or recording offices

or any other governmental authorities that, as a result of the sale of the Purchased Assets, may

have claims, contingent or otherwise, in connection with the Debtors' ownership of the

Purchased Assets or have any reasonably known interest in the relief requested by the Motion;

(viii) the Internal Revenue Service; (ix) the Attorneys General in the states where the Purchased

Assets are located; and (x) all parties that have requested, prior to the date of service of the

notice, or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## II.    The Bankruptcy Case

               H.     On October 25, 2013, each of the Debtors filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to

operate their business as debtors in possession under Sections 1107(a) and 1108 of the

4

Bankruptcy Code.

        I.     The Debtors have asserted and provided notice to the Court and the U.S. Trustee that their business is not a health care business as defined under Bankruptcy Code Section 101(27A), and therefore, a patient care ombudsman is not required as provided in Section 333 of the Bankruptcy Code.

        J.     The Debtors assert that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to Section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in Section 363(b)(1)(B).

## III.    The Sale Process for the Purchased Assets

        K.     As demonstrated by testimony and other evidence proffered or adduced at the Sale Hearing, the Debtors have marketed the Purchased Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and best offer or offers therefor by, among other things, delivering offering materials to potential purchasers and inviting potential purchasers to meet with management and the Debtors' professionals and providing potential purchasers with the opportunity to conduct extensive due diligence. In addition, the Debtors delivered the Bidding Procedures Order, the bidding procedures, related notices, and the Motion to each of the entities that had previously expressed an interest in the Purchased Assets.

        L.     As of the initial bid deadline for the Purchased Assets set forth in the Bidding Procedures Order, no qualified bids were received by the Debtors for the Purchased Assets. As a result, the Debtors extended the bid deadline indefinitely to allow additional discussions regarding the Purchased Assets. As of the filing of the Motion, the Purchase Agreement is the only bid the Debtors have received for the Purchased Assets.

**IV.    The Sale of the Purchased Assets to the Purchaser**

M.    The transactions effectuating, and the terms and conditions governing, the sale of the Purchased Assets to Purchaser are embodied in the Purchase Agreement and Ancillary Agreements. A description of the Purchased Assets is contained in the Purchase Agreement and includes certain executory contracts and unexpired leases that will be assumed and assigned to Purchaser pursuant to the terms of the Purchase Agreement (the "Assigned Contracts"). Pursuant to the terms of the Purchase Agreement, the Closings of the Purchased Assets will occur in three stages. The Assigned Contracts shall be assumed and assigned as follows: (i) assumed on the earlier of (a) the relevant Closing Date, or (b) the Effective Date of any chapter 11 plan of the Debtors (the "Plan") and then assigned at the time of the Stage 1 Closing Date, the Stage 2 Closing Date or the Stage 3 Closing Date, as applicable, (ii) assumed and assigned as provided for in any Assignment Order, or (iii) if the Debtors, Purchaser and applicable counterparty agree, assumed and assigned upon the relevant Closing Date; provided however, that the Debtors or Reorganized Debtors and the counterparty to any Assigned Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Plan Effective Date, subject to such conditions as shall be mutually agreeable. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment.

N.    The Assigned Contracts to be assumed by the Debtors and assigned to Purchaser are identified in the Purchase Agreement as Schedules 1.1(a), 1.1(b), and

6

1.1(l). At any time prior to the Designation Deadline,[3] Purchaser may determine to include additional executory contracts and unexpired leases as Assigned Contracts and may also determine to not include any executory contract or unexpired lease (an "Excluded Contract") as an Assigned Contract. At any time after the Designation Deadline, Purchaser, the Debtors and the non-Debtor contract counterparty may jointly agree to include Contracts in, or exclude Contracts from, the Purchased Assets and the Excluded Assets without further order of this Court. Non-Assumed Contracts are (a) any Contracts to which any Seller is a party and which are set forth on Schedule 10.1(uu) to the Purchase Agreement; (b) any pre-petition Contracts excluded from the definition of Purchased Assets by Purchaser pursuant to Section 1.6(a) of the Purchase Agreement; and (c) any Contracts the execution of which required the prior written consent of Purchaser pursuant to Section 8.1 of the Purchase Agreement, but for which such prior written consent was not given by Purchaser, unless any such Contract is specifically designated as a Purchased Asset by Purchaser pursuant to Section 1.6(a) of the Purchase Agreement.

O. The Purchase Agreement contemplates that the sale of the Purchased Assets, including the Assigned Contracts, shall be free and clear of all claims, liens, liabilities, rights, interests and encumbrances to the fullest extent permitted by and under Sections 363(f) and 105 of the Bankruptcy Code (collectively, "liens"), except as expressly permitted by the Purchase Agreement.

---

[3] Section 10.1(v) of the Purchase Agreement defines Designation Deadline as "in the case of any Contract to be assigned on the applicable Closing Date, the earlier of (i) five (5) Business Days prior to the applicable Closing Date or (ii) five (5) Business Days prior to the confirmation hearing on the Debtors' Plan; in each case unless otherwise agreed by Purchaser and Sellers; provided, however that notwithstanding the foregoing, (A) in respect to Existing Leases, unless otherwise agreed in a signed writing by Seller and the applicable counterparty to the Assumed Real Property Lease, such designation deadline shall be May 27, 2014 or in the event the Existing Lease is an Assumed Real Property Lease identified on Schedule 1.1(b) to be conveyed on the Stage 1 Closing Date, the Stage 1 Closing Date or May 27, 2014, whichever is earlier, and (B) in respect to Assumed Customer Contracts and Other Contracts, such designation deadline may be extended pursuant to a signed agreement between such applicable Seller, Purchaser and the counterparty to such Contract."

7

P.    Purchaser's obligation to consummate the transactions contemplated in the Purchase Agreement is subject to the specific conditions outlined in the Purchase Agreement, including Court approval.

Q.    Upon entry of this Order, the Debtors and Sellers have full corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement and the Ancillary Agreements and have taken all corporate action necessary to authorize and approve the Purchase Agreement and the Ancillary Agreements and the consummation of the transactions contemplated thereby.

R.    The Debtors and Sellers require no further consents or approvals, other than those expressly provided for in the Purchase Agreement and this Order, to consummate the transactions contemplated in the Purchase Agreement and the Ancillary Agreements.

S.    Approval of the Purchase Agreement and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

T.    The Debtors and Sellers have demonstrated (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the Sale, the value of the Debtors' assets will be harmed.

U.    The Purchase Agreement was negotiated, proposed, and entered into by and between Purchaser and the Debtors without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors nor Purchaser has engaged in any conduct that

8

would cause or permit the application of Section 363(n) of the Bankruptcy Code to the Sale, including having the Purchase Agreement avoided.

V.     Purchaser proceeded in good faith in connection with all aspects of and each stage of the Sale. Accordingly, Purchaser is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law. Absent a stay of the effectiveness of this Order, if any, Purchaser will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transaction under the Purchase Agreement, including the assumption and assignment of the Assigned Contracts, at any time after the expiration of any stay of this Order, whether pursuant to Bankruptcy Rule 6004(g) or otherwise.

W.     Purchaser is not an "insider" of any of the Debtors as that term is defined under Section 101 of the Bankruptcy Code.

X.     The Debtors determined in a valid and sound exercise of their business judgment that Purchaser delivered the highest and best bid for the Purchased Assets.

Y.     The terms and conditions of the Purchase Agreement and the consideration to be provided by Purchaser in accordance with the Purchase Agreement: (i) are fair and reasonable, (ii) valid, binding and enforceable, (iii) constitute the highest and best offer for the Purchased Assets, (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (v) constitute reasonably equivalent value and fair consideration for the Purchased Assets under the Bankruptcy Code and the Uniform Fraudulent Transfer Act.

Z.     The Debtors have (except to the extent otherwise provided in the Purchase Agreement) title to the Purchased Assets. The transactions contemplated by the

8303061.2

Purchase Agreement will, upon consummation thereof (the "Closings"), (i) be legal, valid, and effective transfers of the Purchased Assets to Purchaser with no further action required on the part of the Debtors or their respective affiliates, except as provided herein, and (ii) vest Purchaser with good title to the Purchased Assets free and clear of all liens within the meaning of and to the fullest extent available under Section 363(f) of the Bankruptcy Code, except as expressly permitted by the Purchase Agreement.

AA.    Purchaser would not have entered into the Purchase Agreement and will not consummate the transactions described in the Purchase Agreement (thus adversely affecting the bankruptcy estates and its creditors) if the sale of the Purchased Assets and the proposed assignment of the Assigned Contracts, which are an integral part of the Purchase Agreement, were not free and clear of all liens, claims, interests, rights and encumbrances except as expressly permitted by the Purchase Agreement.

BB.    Neither Purchaser nor any of its affiliates is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and neither Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Purchase Agreement.

CC.    The relief sought in the Motion, including approval of the Purchase Agreement and consummation of the transactions contemplated therein, is in the best interests of the Debtors, their bankruptcy estates, creditors, and all parties in interest. The Sale must be approved and consummated promptly in order to maximize the value of the Debtors' estates.

DD.    The Debtors have demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of their business judgment, to

10

(i) sell the Purchased Assets on the terms and conditions set forth in the Purchase Agreement; (ii) assume and assign the Assigned Contracts to Purchaser in accordance with the procedures set forth herein and in the Motion; and (iii) consummate all transactions contemplated by the Purchase Agreement, and the sale, assumption and assignment of the Purchased Assets, including the Assigned Contracts, is in the best interests of the Debtors, their estates and their creditors.

EE.    The provisions of Sections 363 and 365 of the Bankruptcy Code (subject to the additional notice, opportunity to object and hearing, if necessary, with respect to any Assigned Contracts) have been complied with and are applicable to the sale of the Purchased Assets.

FF.    The Debtors may consummate the transactions and transfer the Purchased Assets as set forth in the Purchase Agreement free and clear of all liens of any kind or nature whatsoever, except as expressly permitted by the Purchase Agreement, because one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented pursuant to Sections 363(f)(2) and 365 of the Bankruptcy Code. All parties with liens of any kind or nature whatsoever in the Purchased Assets, except as expressly permitted by the Purchase Agreement, who did object to the Motion and the relief requested therein fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their liens attach to the net proceeds of the transactions with the same validity, enforceability, priority, force and effect that they now have as against the

11

Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens.

GG.    Except as otherwise provided in the Purchase Agreement, consummation of the transactions will not subject Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability.

HH.    As provided in the Purchase Agreement and herein, except as provided in any individual agreement with a contract counterparty, the Debtors hereafter will (i) cure, or provide adequate assurance that they will promptly cure (including as to Assigned Contracts with Undetermined Cure Costs, by reserving the full cure amount asserted by the non-Debtor contract party, subject to a final determination by the Court or agreement by the parties as to the Cure Amount), all defaults under the Assigned Contracts, if any, existing before the date of the assumption of any Assigned Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code and (ii) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the date of the assumption of any Assigned Contracts under the Assigned Contracts, if any, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code, and Purchaser will provide adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code by promising to perform the obligations under the Assigned Contracts and providing such other assurance as may be necessary. Except as provided

12

in the Purchase Agreement or any individual agreement with a contract counterparty, the respective amounts set forth on the Disclosure Schedules to the Purchase Agreement and Notice of Assumption and Assignment are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts (each, as modified by any individual agreement with a counterparty, a "Cure Amount").

II.    Except as provided in the Purchase Agreement, those of the Debtors' employees that may be hired by Purchaser are to be hired under new employment contracts or other arrangements to be entered into or to become effective at or after the respective Closing Dates.

## V.    Credit Bid

JJ.    Purchaser is an acquisition vehicle which was formed on behalf of the Debtors' prepetition lenders, Marathon CLO I, LTD., Marathon CLO II, LTD. and Marathon Financing I, B.V., (collectively in their capacities as lenders under the Debtors' prepetition credit facility, the "Prepetition Lenders") and American Health Holdings, LLC ("AHA").  The Prepetition Lenders and AHA have proceeded in good faith in connection with all aspects of and each stage of the Sale.

KK.    The Debtors have demonstrated through the testimony and/or other evidence admitted at the Sale Hearing that (i) the Prepetition Lenders hold valid claims against the Debtors, the estates and property of the estates and have the right under the Bankruptcy Code, and were authorized by this Court pursuant to the Bidding Procedures Order, to credit bid any or all of such claims and (ii) the Prepetition Lenders have contributed or have granted to Purchaser the right to demand the contribution of a portion of such claims to it, such that on or

13

before the relevant closing date the Purchaser shall be the proper holder of the Credit Bid Debt

required to be paid on such date, which is secured by a portion of such claims to Purchaser, such

that Purchaser is the proper holder of the Credit Bid Debt, which is secured by valid, binding,

enforceable and perfected security interests in, on and against the Debtors and their property,

arising in connection with the Credit Agreement. By the Credit Bid Debt, Purchaser holds or

will hold an allowed secured claim in the aggregate amount of not less than $5,500,000, which

claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant

to the Bankruptcy Code or applicable non-bankruptcy law.

LL.     Pursuant to Purchaser's agreement under the Purchase Agreement

and Bankruptcy Code Sections 363(b) and 363(k), Purchaser will credit bid the Credit Bid Debt

(the "Credit Bid"), which credit bid is a valid and proper offer. Subject to the occurrence of each

of the Closing Dates, the applicable portion of the Credit Bid pursuant to the terms of the

Purchase Agreement shall be binding on Purchaser.

## VI.     Best Interest of Debtors' Estates

MM.   The Debtors have demonstrated through the testimony and/or other

evidence admitted at the Sale Hearing and the representations of counsel made on the record of

the Sale Hearing good and sufficient reasons for approval of the Purchase Agreement and the

Sale. The relief requested in the Motion is in the best interests of the Debtors, its estates, its

creditors, and other parties-in-interest. The Debtors have demonstrated (i) good, sufficient, and

sound business purposes and justifications for approving the Purchase Agreement and (ii)

compelling circumstances for the Sale outside of the ordinary course of business, pursuant to

Section 363(b) of the Bankruptcy Code that, among other things, the consummation of the Sale

to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and

8303061.2

the Sale will provide the means for the Debtors to maximize distributions to their creditors.

NN.   To maximize the value of the Purchased Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreement.  Time is of the essence in consummating the Sale.

OO.   Given all of the circumstances of these Chapter 11 cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

PP.   The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such Sections have been complied with in respect of the Sale.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

I.    **General Provisions**

1.   The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2.   The Motion is granted and the Credit Bid is hereby approved.

8303061.2

3.      All parties in interest have had the opportunity to object to the relief requested in the Motion and to the extent that objections to the Motion or the relief requested therein have not been withdrawn, waived or settled, such objections and all reservations of right included therein, are overruled on the merits. The parties who did not object, or who withdrew their objections, to the Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. This Order and the Purchase Agreement shall be binding in all respects upon all creditors, whether known or unknown, of any Debtors, all non-Debtor parties to the Assigned Contracts, all successors and assigns of Purchaser, the Debtors, their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' Chapter 11 cases or in any converted case under Chapter 7. No other order or any Chapter 11 plan of reorganization may conflict or derogate from the provisions of this Order or the Purchase Agreement.

4.      The Court finds and concludes that the Debtors' business is not a health care business as defined under Section 101(27A), and therefore, a patient care ombudsman is not required as provided in Section 333 of the Bankruptcy Code.

5.      The Court finds that the proposed sale of assets does not require the appointment of a consumer privacy ombudsman pursuant to Section 332 of the Bankruptcy Code as the Debtors have no privacy policies in place of the type described in Section 363(b)(1)(B).

## II.     Approval of the Purchase Agreement

6.      The Purchase Agreement and all of the terms and conditions contained therein are approved in their entirety and are binding upon the parties thereto.

16

7. The Sale of the Purchased Assets and the terms and conditions contemplated by the Purchase Agreement, including, without limitation, the Closings of the transactions contemplated by the Purchase Agreement, are hereby approved pursuant to Sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code.

8. The Debtors are authorized and directed, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Purchase Agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the Purchase Agreement.

9. Pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (ii) close the Sale as contemplated in the Purchase Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement, and fully close the Purchase Agreement, including the transfer of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Purchaser in accordance with the Purchase Agreement, together with all additional ancillary instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.

10. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or

17

8303061.2

who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

11.     This Order, any Assignment Order and the Purchase Agreement shall be binding in all respects upon (a) the Debtors and their successors; (b) the Debtors' estates; (c) all creditors of, and holders of equity interests in, the Debtors; (d) all holders of liens, claims, encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the Purchased Assets; (e) all contract counterparties; (f) Purchaser and all successors and assigns of the Purchaser; (g) the Purchased Assets; and (h) any trustee or examiner subsequently appointed in the Debtors' Chapter 11 cases, or a Chapter 7 trustee appointed upon a conversion of these cases to a case under Chapter 7 under the Bankruptcy Code.  This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser, and the respective successors and assigns of each of the foregoing.

**III.     Transfer of the Purchased Assets to Purchaser**

12.     Upon each of the Closings, the sale of the Purchased Assets as of such applicable Closing Date, pursuant to this Order, any Assignment Order (as defined below), and the Purchase Agreement, will vest Purchaser with good title to the Purchased Assets and will be a legal, valid and effective transfer of the Purchased Assets free and clear of all liens including, except as expressly permitted by the Purchase Agreement.

13.     Except as expressly provided in the Purchase Agreement, pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, upon the applicable Closing, or, if applicable, upon the entry of an Assignment Order, the Purchased Assets as of such applicable

8303061.2

Closing Date shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all

liens with all such liens to attach to the proceeds of sale of the Purchased Assets in the order of

their priority, and with the same validity, priority, force and effect which they now have as

against such Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of

the Debtors and all parties in interest with respect to such liens. No sections or provisions of any

Assigned Contract that purport to trigger any additional payments, penalties, charges, or other

financial accommodations in favor of any contract counterparty to the Assigned Contracts by

reason of the assignment shall have any force and effect with respect to the Sale and assignments

authorized by this Order, and such provisions constitute unenforceable anti-assignment

provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under

Section 365(e) of the Bankruptcy Code. No assignment of any Assigned Contract pursuant to

the terms of the Purchase Agreement shall in any respect constitute a default under any Assigned

Contract. The contract counterparty to each Assigned Contract shall be deemed to have

consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Purchaser

shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract as of the

applicable date of assignment without the necessity of obtaining such contract counterparty's

written consent to the assumption or assignment thereof.

    14. All non-Debtor entities that are presently, or on the applicable

Closing Date, in possession of some or all of the Purchased Assets are hereby directed to

surrender possession to Purchaser at the applicable Closing.

    15. To the greatest extent available under applicable law, Purchaser

shall be authorized, as of the applicable Closing Date, to operate under any license, permit,

registration and any governmental authorization or approval with respect to the Purchased Assets

19

and Assigned Contracts as of such applicable Closing Date pursuant to the terms of the Purchase Agreement. To the extent provided by Section 525, no governmental unit may revoke or suspend any grant, permit or license related to the operation of the Purchased Assets on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

16.    All persons or entities holding liens in, to or against the Purchased Assets shall be, and they hereby are, forever barred, estopped and permanently enjoined from asserting such liens against Purchaser, its successors and assigns or such Purchased Assets after the applicable Closing.

17.    Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates (other than the Assumed Liabilities) with respect to the Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability, and Purchaser shall not have any liability, responsibility or obligation for any claims, liabilities or other obligations of the Debtors or their estates. Except to the extent the Purchaser assumes Assumed Liabilities and Purchaser is ultimately permitted to assume the Assigned Contracts pursuant to the Purchase Agreement, neither the purchase of the Purchased Assets by Purchaser nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtors will cause Purchaser to be deemed a successor in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations),

20

or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. For the purposes of paragraph, all references to the Purchaser shall include the Purchaser's affiliates, subsidiaries and shareholders.

## IV.    Assumption and Assignment of Assigned Contracts

18.    Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the applicable Closing, the Debtors' assumption and assignment to Purchaser, and Purchaser's assumption on the terms set forth in the Purchase Agreement, of the Assigned Contracts applicable to such Closing is hereby approved, and the requirements of Section 365(b)(l) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

19.    The Debtors are hereby authorized in accordance with Sections 105(a) and 365 of the Bankruptcy Code to: (i) assume the Assigned Contracts on the earlier of (a) the relevant Closing Date or (b) the Effective Date of any Plan, and assign the Assigned Contracts at the time of the Stage 1 Closing Date, the Stage 2 Closing Date or the Stage 3 Closing Date, as applicable, (ii) assume and assign the Assigned Contracts as provided for in any Assignment Order, or (iii) if the Debtors, Purchaser and applicable counterparty agree, assume and assign any Assigned Contract upon the relevant Closing Date; provided however, that the Debtors or Reorganized Debtors and the counterparty to any Assigned Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Plan Effective Date, subject to such conditions as shall be mutually agreeable.

20.    The Debtors are further authorized to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to Purchaser. All assignments of Assigned Contracts shall be free and clear of all interests of any kind or nature whatsoever, which

21

Assigned Contracts by operation of this Order, shall be deemed assumed by the Debtors and assigned to Purchaser in accordance with the Purchase Agreement.

21.    The Assigned Contracts to be assumed and assigned by this Order to Purchaser are attached to the Purchase Agreement as Schedules 1.1(a), 1.1(b), and 1.1(l).

22.    Subject to the provisions hereof, the Assigned Contracts shall be transferred and assigned to, and following the applicable Closing remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability, except with respect to the Cure Amounts, with respect to the Assigned Contracts after such transfer and assignment to Purchaser.  Subject to the provisions hereof, the Debtors may assume the Assigned Contracts which are executory contracts and unexpired leases of the Debtors in accordance with Section 365 of the Bankruptcy Code.

23.    Subject to the provisions hereof, the Debtors may assign each Assigned Contract on the applicable Closing Date in accordance with Sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, shall constitute unenforceable anti-assignment provisions which are void and of no force and effect. Subject to the provisions hereof, all other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by the Debtors to Purchaser of each Assigned Contract

22

8303061.2

have been satisfied. Subject to the provisions hereof, in accordance with Sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract upon the earlier of the applicable Closing or upon entry of an Assignment Order. Any portion of any Assigned Contract which purports to permit a landlord thereunder to cancel the remaining term of such Assigned Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against Purchaser, its assignees and sublessees; and the landlords under any such Assigned Contract shall not have the right to cancel or otherwise modify the Assigned Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assigned Contract to Purchaser, or the interruption of business activities at any of the leased premises.

24.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the applicable Closing Date or as of the entry of an Assignment Order, as applicable (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code), are deemed satisfied by the payment of Cure Amounts with respect to such Assigned Contracts in those amounts set forth in the notice of assumption and assignment (as may have been amended, the "Notice of Assumption and Assignment"), which was served as set forth in the Motion, and which were satisfied, or shall be satisfied as soon as practicable, by the Debtors or Purchaser (if Purchaser agrees to pay the Cure Amount), pursuant to the Purchase Agreement. Service of the Notice of Assumption and Assignment was proper under the circumstances and is approved.

25.    With the exception of the Cure Amounts set forth in the Notice of Assumption and Assignment, or as otherwise reflected in this Order or an Assignment Order,

each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or Purchaser, or the property of any of them, any default existing as of the date of effective date of assumption; or, against Purchaser any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors. Except as provided in the Purchase Agreement or this Order, after earlier of the applicable Closing or entry of an Assignment Order, as applicable, the Debtors and their estates shall have no further liabilities or obligations with respect to any assumed liabilities under the Assigned Contracts and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

26.    All non-Debtor parties to the Assigned Contracts have received sufficient notice of the assumption, assignment and/or transfer and the proposed corresponding Cure Amounts as set forth in the Motion. For each contract selected as an Assigned Contract, the Debtors shall satisfy the Cure Amounts as set forth in the Notice of Assumption and Assignment or as otherwise agreed by the non-Debtor contract party and the Debtors or as ordered by the Court, provided, however, that in the event any Cure Amount becomes a Purchaser Cure Cost pursuant to Section 1.6(c) of the Purchase Agreement, Purchaser shall satisfy the Cure Amount. All other defaults or obligations thereunder shall be deemed satisfied by the payment of the Cure Amount.

27.    Excluded Contracts. As provided in the Purchase Agreement, Purchaser shall have the right prior to the Designation Deadline to designate any Contract as an Excluded Asset, and such Contracts will not be deemed Assigned Contracts and will not be assumed and assigned hereunder. For each Contract so designated on or prior to the Designation Deadline, the Debtors shall promptly provide notice of such exclusion to the non-Debtor contract

24

8303061.2

party (which notice may be included in a rejection notice) and may promptly reject such Contract immediately upon receipt of such notice from Purchaser of its intent to exclude such Contract.

28.    Assignment of Additional Contracts.  If at any time during the Designation Period, Purchaser provides the Debtors with a written request for assumption and assignment of any Contract not originally included as a Purchased Asset, the Debtors shall promptly serve a "Supplemental Notice of Assumption and Assignment" by facsimile, electronic transmission, hand delivery or overnight mail on the counterparty to each such Contract (and its attorney, if known) at the last known address available to the Debtors, counsel to the Committee, the United States Trustee, and counsel to the Debtors' Prepetition Lenders.  Each Supplemental Notice of Assumption and Assignment shall include the following:  (i) the name and address of the counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and Purchaser to withdraw such request), (iii) identification of the Contract, (iv) the Cure Amounts, if any, (v) a description of Purchaser, and a statement as to the ability of Purchaser to perform the Debtors' obligations under the Contract, and (vi) a proposed form of order approving the assumption and assignment.

29.    Unless the non-Debtor contract counterparty properly files an objection to the Supplemental Notice of Assumption and Assignment within ten (10) calendar days of service of the Supplemental Notice of Assumption and Assignment, the Debtors may immediately submit a form of order authorizing the assumption and assignment of the Contract under certification of counsel for entry by the Court (an "Assignment Order").  If an objection is filed and served within ten (10) calendar days of service of the Supplemental Notice of Assumption and Assignment, and the objection cannot be resolved consensually, then the

25

Debtors will schedule a hearing to consider the objection at the next scheduled omnibus hearing, or as otherwise requested by the Debtors.

30.     At any time after the Designation Deadline, Purchaser, the Debtors and the non-Debtor contract counterparty may jointly agree to include Contracts in, or exclude Contracts from, the Purchased Assets and the Excluded Assets without further order of this Court. In such case, the Debtors shall file a notice regarding the same with the Court and serve such notice on Purchaser and non-Debtor contract counterparty and such Contract will thereafter be deemed an Assigned Contract.

31.     Notwithstanding anything in this Order or the Purchase Agreement to the contrary, on the date any Contract is assumed and assigned to Purchaser pursuant to this Order and the Purchase Agreement, such Contract shall be deemed an Assigned Contract for all purposes under this Order and the Purchase Agreement.

## V.     Sale Proceeds

32.     Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors other than set forth under the terms of the Purchase Agreement, Ancillary Agreements, and Assigned Contracts.

33.     The allocation of the value by Purchaser to the Purchased Assets for tax purposes shall not be binding on the Court or any party for purposes of these Chapter 11 cases or distributions.

## VI.     Miscellaneous Provisions

34.     The Sale of the Purchased Assets is consistent with the Debtors' policy concerning the transfer of personally identifiable information and no consumer privacy ombudsman is necessary as set forth in Section 332 or 363(b)(1) of the Bankruptcy Code. The

26

Purchaser has committed that it will be, or will establish, a "covered entity" within the meaning of the Health Insurance Portability and Accountability Act ("HIPAA") as of the Stage 1 Closing Date.

35.     The consideration to be paid by Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable, and the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

36.     The Credit Bid is approved; as set forth in Section 2.1 of the Purchase Agreement, upon each of the Closings, the applicable portion of the Credit Bid Debt shall be exchanged for the Purchased Assets transferred at such Closing.

37.     The portion of the claims of the Prepetition Lenders in excess of the amounts expressly stated as part of the Credit Bid shall remain outstanding against the Debtors and any of their assets not purchased by Purchaser, and the Prepetition Lenders shall continue to be protected by and entitled to the benefit of the terms and provisions of the Order Amending Final Order (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, And (5) Modifying Automatic Stay (D.I. 426), the DIP Credit Agreement and other orders entered by the Court in respect thereof.

38.     This Order (a) is and shall be effective as a determination that, upon the applicable Closing except as expressly provided in the Purchase Agreement, all liens existing as to the Purchased Assets prior to the applicable Closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets as of such respective Closing and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of

8303061.2

deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee of the Purchased Assets free and clear of all liens.

39.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens or claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the applicable Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all interests or claims that the person or entity has with respect to the Purchased Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens or claims in the Purchased Assets as of such respective Closing of any kind or nature.

40.     Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

41.     Except with respect to enforcing the terms of the Purchase Agreement, this Order, and/or any Assignment Order, absent a stay pending appeal, no person

28

shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

42.    The Purchase Agreement, Ancillary Agreements, and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement does not change materially the economic outcome of the transactions contemplated hereby for the Debtors' estates.

43.    In the absence of a stay of the effectiveness of this Order, in the event that Purchaser and the Debtors consummate the transactions contemplated by the Purchase Agreement at any time after entry of this Order, then with respect to the transactions approved and authorized herein, Purchaser, as a purchaser in good faith within the meaning of Section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of Section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

44.    Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement without charge or tax to the Debtors or Purchaser.

45.    Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (b) to compel transfer of the

29

8303061.2

Purchased Assets to Purchaser; (c) to compel the parties to perform their respective obligations under the Purchase Agreement; (d) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, including without limitation the adjudication of any cure required under Assigned Contracts; (e) to interpret, implement and enforce the provisions of this Order; and (f) to protect Purchaser against any claims and interests in or against the Debtors or the Purchased Assets of any kind or nature whatsoever.

46.     The failure to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Purchase Agreement be authorized in its entirety.

47.     Any conflict between the terms and provisions of this Order and the Purchase Agreement shall be resolved in favor of this Order.

48.     The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase Agreement without further order of the Court.

49.     The Debtors and Purchaser are hereby authorized to perform each of their covenants and undertakings as provided in the Administrative Services Agreement without further order of the Court.

50.     The consideration provided by the Purchaser to the Debtors pursuant to the Purchase Agreement for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

30

51.     The transactions contemplated by the Purchase Agreement,

including without limitation, the purchase of the Purchased Assets and the assumption and

assignment of the Assigned Contracts free and clear of claims and interests, are undertaken by

Purchaser without collusion and in good faith, as that term is defined in Section 363(m) of the

Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not affect the validity of the Sale free and clear of

claims and interests unless such authorization and such Sale are duly stayed pending such

appeal. Purchaser is a good faith purchaser within the meaning of Section 363(m) of the

Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law, as such, is

entitled to the full protections under Section 363(m) of the Bankruptcy Code and under other

applicable Bankruptcy and non-Bankruptcy Law.

52.     Nothing contained in any plan of reorganization or liquidation, or

order of any type or kind entered in (a) this Chapter 11 case; (b) any subsequent Chapter 7 case

into which these Chapter 11 cases may be converted; or (c) any related proceeding subsequent to

entry of this Sale Order, shall conflict with or derogate from the provisions of the Purchase

Agreement or the terms of this Order.

53.     No bulk sales law or any similar law of any state or other

jurisdiction applies in any way to the Sale.

54.     The provisions of this Order and any actions taken pursuant hereto

shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization

in this case; (b) converting these cases to a case under Chapter 7 of the Bankruptcy Code; (c)

dismissing this case; or (d) pursuant to which this Court abstains from hearing this case.

31

55.    Notwithstanding anything else contained in the Motion, this Order and any implementing sale documents, including but not limited to the Purchase Agreement (the "Documents"): (i) the Debtors shall include in any plan that they propose that all of their Medicare Enrollment Agreements (collectively, "CMS Agreements") shall be assumed and the CMS Agreements will be governed exclusively by the terms and conditions of the CMS Agreements and the incorporated statutes, regulations, policies, and procedures unless otherwise agreed to between the Debtors and CMS; (ii) the Debtors are not, and shall not, assign or otherwise transfer the CMS Agreements and, accordingly, Debtors' provider transaction access numbers to Purchaser; (iii) Purchaser agrees that it shall not attempt to operate the Purchased Assets using any of the CMS Agreements or the Debtors' provider transaction access numbers; (iv) the Bankruptcy Court may retain jurisdiction, but not exclusive jurisdiction, over CMS claims and issues arising therefrom to the extent allowed by non-bankruptcy law; and (v) nothing shall affect the rights of the United States to assert recoupment and/or setoff against the Debtors to the extent permitted by applicable law, including but not limited to the Medicare statute and regulations, Bankruptcy Code, or agreement of the parties. Moreover, nothing in the Documents shall affect the Debtors' or Purchaser's obligations under applicable laws. Purchaser has agreed in the Purchase Agreement that it "will be, or will establish, a covered entity" as defined by HIPAA as of the Stage 1 Closing Date, and the Purchaser and the Debtors have agreed that in connection with the Purchase Agreement they will comply with all applicable laws, including HIPAA.

56.    As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen (14) days are hereby waived, and this

32

Order shall be effective, and the parties may consummate the transactions contemplated by the Purchase Agreement immediately upon entry of this Order.  Time is of the essence in closing the transaction and parties to the Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of this Purchase Agreement.  The requirements of Bankruptcy Rule 6006(e)-(f) are hereby waived.

57.     This Order shall be served upon the parties listed in Section I (G) of this Order.

Dated: _____, 2014          _____
                                    THE HONORABLE PETER J. WALSH
                                    UNITED STATES BANKRUPTCY JUDGE

33