## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re                              :    Chapter 11
                                   :
Laboratory Partners, Inc., *et al.*,[1]  :    Case No. 13-12769 (PJW)
                                   :
    Debtors.   :    (Jointly Administered)
                                   :
-------------------------------------------------------x    **Re: D.I. 484, 485, 596**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER PURSUANT TO 11 U.S.C. § 1129 AND FED. R. BANKR. P. 3020 CONFIRMING THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN

Upon consideration of:

- the Debtors' First Amended Joint Chapter 11 Plan (D.I. 596) filed by the above captioned debtors (the "Debtors") on July 7, 2014 (as further modified, supplemented, and/or revised, the "Plan")[2] and the Disclosure Statement for Debtors' Joint Plan (D.I. 485) (together with all exhibits thereto, the "Disclosure Statement") filed by the Debtors on May 21, 2014;

- the Debtors' Motion For The Entry Of: (I) An Order (A) Scheduling Hearing On Disclosure Statement And (B) Limiting And Shortening The Notice Thereof, And (II) An Order (A) Approving Disclosure Statement, (B) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Chapter 11 Plan, (C) Approving Form Of Ballot And Solicitation Materials, (D) Establishing Voting Record Date, (E) Scheduling A Confirmation Hearing And Setting A Deadline For Filing Objections Thereto, And (F) Approving Related Notice Procedures (D.I. 486) filed on May 21, 2014 (the "Solicitation Procedures Motion");

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Laboratory Partners, Inc. (3376), Kilbourne Medical Laboratories, Inc. (9849), MedLab Ohio, Inc. (9072), Suburban Medical Laboratory, Inc. (0859), Biological Technology Laboratory, Inc. (4370), Terre Haute Medical Laboratory, Inc. (1809), and Pathology Associates of Terre Haute, Inc. (6485). Certain of the Debtors do business as Medlab. The Debtors' mailing address for notice in these cases is: 671 Ohio Pike, Suite K, Cincinnati, OH 45245.

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement Approval Order (as defined herein). The rules of interpretation set forth in the Plan shall apply to this Confirmation Order.

- the Order (A) Approving Disclosure Statement, (B) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Chapter 11 Plan, (C) Approving The Form Of Ballot And Solicitation Materials, (D) Establishing Voting Record Date, (E) Scheduling A Confirmation Hearing And Setting The Deadline For Filing Objections Thereto, And (F) Approving Related Notice Procedures (D.I. 521) entered on May 30, 2014 (the "Disclosure Statement Approval Order");

- the affidavits of service (D.I. 507, 515, 516, 540, 565, 579) (collectively, the "Mailing Affidavits") filed on May 28-29, 2014 and June 6, 19, and 30, 2014, which noticed the service of the notices and ballots approved under the Disclosure Statement Approval Order (the "Solicitation Package");

- the Plan Supplement (D.I. 573) filed on June 25, 2014, as amended on June 26, 2014 (D.I. 575) (as further modified, supplemented and/or revised, the "Plan Supplement");

- the Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Joint Chapter 11 Plan (D.I. 586) filed on July 7, 2014 (the "Plan Brief");

- the Declaration of Notice, Balloting and Claims Agent Regarding Solicitation and Tabulation of Votes in Connection with the Debtors' Joint Chapter 11 Plan (D.I. 588) filed on July 7, 2012 (the "Voting Report");

- the Declaration of William A. Brandt, Jr. in Support of Confirmation of the Debtors' First Amended Joint Chapter 11 Plan (D.I. 598) filed on July 8, 2014 (the "Brandt Declaration");

- all oral representations, arguments, fact and expert testimony, documents, filings and evidence presented at or in connection with the hearing held before the Court on July 9, 2014 (the "Confirmation Hearing") to consider confirmation of the Plan; and

- the entire record of the Debtors' Chapter 11 Cases, as to which the Court takes judicial notice.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party-in-interest to object to confirmation of the Plan have been adequate and appropriate as to all entities (as defined in Section 101(15) of the Bankruptcy Code) affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and

presented at the Confirmation Hearing, including but not limited to the Brandt Declaration, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    Eligibility for Relief.  The Debtors were and are entities (as defined in Section 101(15) of the Bankruptcy Code) eligible for relief under Section 109 of the Bankruptcy Code.

C.    Commencement of the Cases.  The Debtors' Chapter 11 Cases commenced on October 25, 2013 when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Court (D.I. 25), the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

D.    Judicial Notice.  The Court takes judicial notice of (and deems admitted into evidence for confirmation of the Plan) the docket of the Chapter 11 Cases (collectively, the

"Bankruptcy Cases"), including all filings in each of the Debtors' Bankruptcy Cases and in any related adversary proceedings, the Voting Report, the disclosures made in accordance with Section 1129(a)(5) of the Bankruptcy Code, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of the Bankruptcy Cases. All unresolved objections, statements and reservations of rights are overruled on the merits for the reasons stated on the record by the Court at the Confirmation Hearing. The record of the Confirmation Hearing is incorporated herein by reference.

E.    Order Approving the Solicitation Procedures and Disclosure Statement. The Court entered the Disclosure Statement Approval Order that, among other things: (1) approved the Disclosure Statement; (2) fixed July 9, 2014 as the date for the commencement of the Confirmation Hearing; (3) approved the form and method of solicitation of the Plan (collectively, the "Solicitation Procedures"); (4) approved the form and method of notice of the Confirmation Hearing; (5) fixed June 30, 2014 at 4:00 p.m. (ET), as the last date and time for filing and serving objections to confirmation of the Plan (the "Plan Objection Deadline"); and (6) fixed June 30, 2014 at 4:00 p.m. (CT) as the deadline for delivering ballots to accept or reject the Plan to the Balloting Agent.

F.    Transmittal of Solicitation Packages. In accordance with Bankruptcy Rule 3017(d) and the Disclosure Statement Approval Order, all as set forth in the Mailing Affidavits: (1) as to Class 1 (the "Voting Class"), the Disclosure Statement, including a copy of the Plan, the Disclosure Statement Approval Order, the Confirmation Hearing Notice, and an appropriate Ballot and return envelope were transmitted; and (2) as to Holders of Claims in Class 2 (Capital Lease Claims), Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), Class 5 (Priority Claims), Class 6 (Noteholder Claims), Class 7 (General Unsecured Claims), Class 8

(Intercompany Claims), and Class 9 (Interests), and to each Holder of an unclassified Claim, a Non-Voting Notice and Confirmation Hearing Notice were transmitted.

G.    <u>Voting Report</u>. Prior to the Confirmation Hearing, the Debtors filed the Voting Report, certifying the method and results of Ballot tabulation for each of the Voting Classes. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Approval Order, the Solicitation Procedures, the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations.

H.    <u>Transmittal and Mailing of Materials; Notice</u>. Adequate and sufficient notice of the Plan, the Disclosure Statement, the Confirmation Hearing, the Plan Objection Deadline, the entry of this Confirmation Order, and the other bar dates, deadlines and hearings described in the Disclosure Statement Approval Order and Disclosure Statement was given in compliance with the Bankruptcy Rules and the Disclosure Statement Approval Order, and no other or further notice is or shall be required.

I.    <u>Solicitation</u>. Solicitation of votes on the Plan by the Debtors was conducted in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Approval Order, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations.

J.    <u>Notices</u>. All procedures used to distribute the Solicitation Packages, Non-Voting Notices and Confirmation Hearing Notices to the applicable Holders of Claims and Interests and to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

K.    <u>Impaired Class Voting to Accept the Plan.</u>

1.    <u>Class 1 (Prepetition Lender Secured Claims)</u>.  As evidenced by the Voting Report, as to Class 1, one-hundred percent (100%) of creditors holding Claims and voting in such Class have accepted the Plan and one-hundred percent (100%) in amount of the Claims voting in such Class have voted to accept the Plan.

L.    <u>Impaired Classes Deemed to Reject the Plan.</u>

1.    <u>Class 6 (Noteholder Claims)</u>.  Holders of Noteholder Claims in Class 6 are Impaired and shall receive no distribution under the Plan on account of their Noteholder Claims.  Therefore, Holders of Noteholder Claims in Class 6 are deemed not to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

2.    <u>Class 7 (General Unsecured Claims)</u>.  Holders of General Unsecured Claims in Class 7 are Impaired and shall receive no distribution under the Plan on account of their General Unsecured Claims.  Therefore, Holders of General Unsecured Claims in Class 7 are deemed not to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.    <u>Class 8 (Intercompany Claims)</u>.  Holders of Intercompany Claims in Class 8 are Impaired and shall receive no distribution under the Plan on account of their Intercompany Claims.  Therefore, Holders of Intercompany Claims in Class 8 are deemed not to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

4.    <u>Class 9 (Interests)</u>.  Holders of Interests in Class 9 are Impaired and shall receive no distribution under the Plan on account of their Interests.  Therefore, Holders of Interests in Class 9 are deemed not to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

M.    Unimpaired Classes Deemed to Accept the Plan.

    1.    Class 2 (Capital Lease Claims). Holders of Capital Lease Claims in Class 2 are Unimpaired. Therefore, Holders of Capital Lease Claims in Class 2 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

    2.    Class 3 (Secured Tax Claims). Holders of Secured Tax Claims in Class 3 are Unimpaired. Therefore, Holders of Secured Tax Claims in Class 3 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

    3.    Class 4 (Other Secured Claims). Holders of Other Secured Claims in Class 4 are Unimpaired. Therefore, Holders of Other Secured Claims in Class 4 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

    4.    Class 5 (Priority Claims). Holders of Priority Claims in Class 5 are Unimpaired. Therefore, Holders of Priority Claims in Class 5 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

N.    Burden of Proof. The Debtors, as proponents of the Plan, have met their burden of proving the elements of Section 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard. The Court also finds that the elements of Section 1129(a) of the Bankruptcy Code have been satisfied under the clear and convincing standard of proof.

O.    Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

    (1)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). The Plan at Article II designates Classes of Claims against and Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the

various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims or Interests. Thus, the Plan satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)     Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan at Article II specifies that Class 2 (Capital Lease Claims), Class 3 (Secured Tax Claims, Class 4 (Other Secured Claims) and Class 5 (Priority Claims) are unimpaired. Thus, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

(3)     Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan at Article II specifies that Class 1 (Prepetition Lender Secured Claims), Class 6 (Noteholder Claims), Class 7 (General Unsecured Claims), Class 8 (Intercompany Claims) and Class 9 (Interests) are impaired under the Plan and also specifies the treatment that the impaired Classes will receive. Thus, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

(4)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest. Thus, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

(5)     Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan at Article IV provides adequate and proper means for implementation of the Plan. Thus, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

(6)     Prohibition Against Issuance of Non-Voting Equity Securities And Provisions for Voting Power of Classes of Securities (11 U.S.C. § 1123(a)(6)). The formation documents in the Plan Supplement provide for the prohibition of the issuance of nonvoting equity securities and provide for an appropriate distribution of voting power among those Classes receiving equity securities. Thus, the Plan satisfies Section 1123(a)(6) of the Bankruptcy Code.

(7)     Selection of Designated Officers (11 U.S.C. § 1123(a)(7)). The selection of the officers and directors as disclosed in the Plan Supplement is consistent with the interests of the Holders of Claims and Interests and with public policy. Thus, Section 1123(a)(7) of the Bankruptcy Code is satisfied.

(8)     Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (a) distributions to Holders of Allowed Claims; (b) the transactions contemplated by the Plan including the treatment of the Prepetition Lender

Secured Claims; (c) the rejection or assumption of executory contracts and unexpired leases; (d) the retention of, and right to enforce, sue on, settle or compromise certain claims or causes of action against third parties; (e) resolution of Disputed Claims; (f) allowance of certain Claims; (g) exculpation and release of various entities as set forth in the Plan; (h) the vesting of all of the Debtors' assets into the Reorganized Debtors; (i) the creation of the LPI Plan Trust and the vesting of the Reorganized Debtors' assets therein upon the LPI Plan Trust Effective Date; and (j) the various injunctions set forth in the Plan.

(9)    <u>Fed. R. Bankr. P. 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

(10)   <u>Fed. R. Bankr. P. 3016(c)</u>. The Plan clearly identifies the injunction proposed under the Plan, thereby satisfying Bankruptcy Rule 3016(c).

P.    <u>Debtors' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. Except as otherwise provided or permitted by orders of the Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order, and other orders of this Court thereby satisfying Section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtors are proper debtors under Section 109 of the Bankruptcy Code and proper proponents of the Plan under Section 1121 of the Bankruptcy Code.

Q.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law and this Confirmation Order was not procured by fraud, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined, *inter alia,* the totality of the circumstances surrounding the Bankruptcy Cases, including but not limited to the formulation of the Plan and all modifications thereto, the Brandt Declaration, and the record of the Confirmation Hearing. The Plan was proposed and solicited with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and the recoveries to Holders of Claims and Interests and not for any improper purpose.

R.    Payments For Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).   Any payments made or to be made by the Debtors or the Estates for services or for costs and expenses in connection with the Bankruptcy Cases prior to the Confirmation Date, including administrative expense and substantial contribution claims under Sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Bankruptcy Cases, either have been approved by or are subject to the approval of the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

S.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).   The Debtors have complied with Section 1129(a)(5)(A) of the Bankruptcy Code and have disclosed the identity and affiliations of the officers and directors to serve after Confirmation of the Plan in the Plan Supplement and/or on the record at the Confirmation Hearing.  The appointment of the officers and directors are consistent with the interests of Holders of Claims and Interests and with public policy.  The Debtors have complied with Section 1129(a)(5)(B) of the Bankruptcy Code because they have disclosed the nature of any compensation to be provided to any insider that will be retained by the Reorganized Debtors.

T.    No Rate Changes (11 U.S.C. § 1129(a)(6)).   Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

U.    Best Interests Test (11 U.S.C. § 1129(a)(7)).   The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.  The information contained in the Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing, including, without limitation, the testimony of William A. Brandt, Jr. contained in the Brandt Declaration, (1) are persuasive and credible, (2) have not been controverted by other evidence or successfully challenged in any objections to the Plan, (3) are based upon reasonable and sound assumptions,

10

and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

V.    Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)). Class 2 (Capital Lease Claims), Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), and Class 5 (Priority Claims) are unimpaired under the Plan, and, pursuant to Section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. As evidenced by the Voting Report, Class 1 (Prepetition Lender Secured Claims) has voted to accept the Plan (the "Accepting Impaired Class"). Holders of Claims and Interests in Class 6 (Noteholder Claims), Class 7 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 9 (Interests) are deemed to have rejected the Plan (the "Rejecting Classes"). Although Section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan nevertheless is confirmable because it satisfies Section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes.

W.    Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Professional Fee Claims satisfies the requirements of Section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

X.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). As set forth in the Voting Report, Class 1 (Prepetition Secured Lender Claims) is the impaired Class of Claims that have voted overwhelmingly to accept the Plan. Thus, the Plan satisfies Section 1129(a)(10) of the Bankruptcy Code.

Y.   Feasibility (11 U.S.C. § 1129(a)(11)).   The information contained in the Disclosure Statement, the Brandt Declaration, the Plan Supplement, and the evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence or successfully challenged in any of the objections to confirmation of the Plan, and (3) establish that the Plan is feasible.   Moreover, confirmation of the Plan is not likely to be followed by a chapter 7 liquidation of the Debtors, or by the need for their further financial reorganization.   There will be sufficient funds to satisfy the Debtors' cash and other obligations under the Plan and to fund the costs and expenses of the Reorganized Debtors and LPI Plan Trustee in accordance therewith.   Therefore, the Plan satisfies Section 1129(a)(11) of the Bankruptcy Code.

Z.   Payment of Fees (11 U.S.C. § 1129(a)(12)).   The Debtors have paid or will pay, no later than on the Effective Date, all fees due and payable under 28 U.S.C. § 1930, thereby satisfying Section 1129(a)(12) of the Bankruptcy Code.

AA.   Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)); Domestic Support Obligations (11 U.S.C. § 1129(a)(14)); Individual Debtor Requirements (11 U.S.C. § 1129(a)(15)); Transfer Compliance With Nonbankruptcy Law (11 U.S.C. § 1129(a)(16)).   Each of the Debtors has no retiree benefits, domestic support obligations, is not an individual, and is not a not-for-profit corporation.   Thus, the requirements of Sections 1129(a)(13), (14), (15) and (16) of the Bankruptcy Code are not applicable.

BB.   Section 1129(b): Confirmation of the Plan over Nonacceptance of Impaired Classes.

1.   Notwithstanding the fact that the Rejecting Classes have not accepted the Plan, the Debtors have satisfied their burden under, and the Plan may be confirmed pursuant to, Section 1129(b)(1) of the Bankruptcy Code, because: (a) the Accepting

Impaired Class has voted to accept the Plan; (b) all of the requirements of Section 1129(a), other than 1129(a)(8), of the Bankruptcy Code have been met; and (c) the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes.

2.      With respect to Classes 6-9, the Plan does not discriminate unfairly because, as to such Classes, no similar Classes exist. Furthermore, the Plan does not unfairly discriminate because such Holders of Interests and Claims in Classes 6-9 receive treatment that fairly and appropriately reflects the differences in legal rights and the differences in the relative value attributable to the Claims and Interests assigned to the different Classes under the Plan. Additionally, with respect to Classes 6-9, the Plan is fair and equitable because no Holders of Claims or Interests in a particular Debtor junior to the Holders in Classes 6-9 will receive or retain any property under the Plan on account of such Interests. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Classes 6-9.

CC.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

DD.    Modifications to the Plan. Any and all modifications to the Plan set forth herein, reflected by the filing of a revised Plan on the docket prior to the Confirmation Hearing, or announced at the Confirmation Hearing (collectively, the "Plan Modifications") constitute technical or non-material changes and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or resolicitation of votes under Section 1126 of the Bankruptcy Code, nor do they require that

Holders of Claims in the Voting Class be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

EE.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Debtors and their respective agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Approval Order and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation and limitation of liability provisions set forth in the Plan.

FF.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1.    Unless a Medicare Enrollment Agreement is specifically listed on the Rejection Schedule, all Medicare Enrollment Agreements will be assumed on the Effective Date.  Such assumed Medicare Enrollment Agreements shall be governed exclusively by the terms and conditions of such agreements and the incorporated Medicare statutes, regulations, policies and procedures unless otherwise agreed to between the Reorganized Debtors and CMS.

2.    Any Executory Contract listed on the Deferred Rejection Schedule will be deemed rejected at the time the conditions specified on such Deferred Rejection Schedule for such Executory Contract have occurred.  In the case of any Executory Contract listed on the Deferred Rejection Schedule, the Debtors or Reorganized Debtors shall maintain all rights and shall satisfy all post-petition and post Effective Date obligations arising under such Executory Contract pending the effective date of rejection.

3.    The Debtors, after having considered many factors, have exercised reasonable business judgment in determining to reject all remaining Executory Contracts including those that (i) have not previously been assumed and assigned or rejected with the approval of the Bankruptcy Court, (ii) are not as of the Confirmation Date, the subject

14

of a motion to assume or reject, (iii) have not expired by their own terms on or prior to the Confirmation Date, (iv) are not listed on either the LTC Contract Schedule or the Deferred Contract Schedule, or (v) are listed on the Rejection Schedule.

4.    Notwithstanding the above, the Debtors or Reorganized Debtors and the counterparty to any Executory Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Effective Date, subject to such conditions as shall be mutually agreeable.

5.    Each pre- or post-Confirmation assumption or rejection of an executory contract or unexpired lease pursuant to the Plan and assignment, if any, shall be legal, valid and binding upon the Debtors, the Reorganized Debtors and their assignees or successors and all non-Debtor parties to such executory contracts or unexpired leases, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate Final Order of the Court entered before the Confirmation Date under Section 365 of the Bankruptcy Code.

GG.    <u>Settlements, Compromises and Releases</u>.    All settlements and compromises embodied in the Plan are fair, equitable, reasonable and in the best interests of the Debtors and their Estates and Holders of Claims and Interests, and such settlements and compromises shall be, and hereby are, effective and binding upon all Persons who may have had standing to assert such claims or causes of action.  Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a):  (1) the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order shall be, and hereby are, approved as equitable, reasonable and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests; (2) the classification and manner of satisfying all Claims and Interests and the respective Distributions and treatments under the Plan take into account

and/or conform to the relative priority rights of the Claims and Interests in each Class; and (3) the settlement, compromise and release of any and all such rights pursuant to the Plan are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and are hereby approved as fair, equitable and reasonable.

HH. <u>Conditions to Effective Date; Waiver of Conditions</u>.    The conditions to the Effective Date set forth in the Plan are reasonably likely to be satisfied if not waived.

II. <u>Retention of Jurisdiction</u>. The Court properly may retain jurisdiction over the matters set forth in the Plan after the Effective Date; <u>provided</u>, <u>however</u>, that nothing in the Plan or this Confirmation Order shall expand the jurisdiction of the Court following the occurrence of the Effective Date beyond that provided for in Section 1142 of the Bankruptcy Code, 28 U.S.C. § 157 and/or 28 U.S.C. § 1334.

JJ. <u>Plan Supplement</u>.  The documents contained in the Plan Supplement, including, without limitation, (1) List of Officers and Directors of the Reorganized Debtors, (2) Amended Bylaws of Laboratory Partners, Inc., (3) Seventh Amended & Restated Certificate of Incorporation of Laboratory Partners, Inc., (4) LPI Plan Trust Agreement, (5) LTC Contract Schedule, (6) Rejection Schedule, (7) Deferred Rejection Schedule, and (8) Insurance Schedule are consistent with the Plan and are hereby approved.  The Debtors, their directors and officers and the other necessary Persons hereby are authorized to execute such documents substantially in the form annexed to the Plan Supplement with such necessary revisions to such documents consistent with the Plan and this Order, and such executions shall be sufficient to effectuate the transactions contemplated in the Plan without further corporate action.

KK. <u>Authorization to Execute and Implement Additional Documents</u>. In addition to the documents included in the Plan Supplement, the Debtors, the Reorganized Debtors, the LPI Plan Trustee, their respective officers and directors, and all other necessary Persons, are

authorized to execute all other documents necessary to effectuate the transactions contemplated in connection with the Plan.

LL.    <u>Substantive Consolidation</u>. The Plan is a joint consolidated plan that provides for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall be deemed to be substantively consolidated for purposes hereof.  For all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors.  Moreover, (a) no distribution shall be made under the Plan on account of any Claim held by any one of the Debtors against any of the other Debtors and such Intercompany Claims will be extinguished; (b) no distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein; (c) all guaranties of any one of the Debtors of the obligations of any of the other Debtors shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates; and (d) every Claim that is timely filed or to be filed in the Chapter 11 Cases of any of the Debtors shall be deemed filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.  For the avoidance of doubt, the Debtors' or Reorganized Debtors' individual obligations under 28 U.S.C. § 1930 to pay all fees due and payable until each Debtor's or Reorganized Debtor's bankruptcy case is closed by order of the Court is not altered by this Confirmation Order.

## II.    ORDERS

BASED ON THE FOREGOING, IT IS HEREBY ORDERED:

1.    <u>Confirmation</u>.  The Plan, a true and correct copy of which is attached hereto as **Exhibit 1**, is **<u>APPROVED</u>** and **<u>CONFIRMED</u>** as being consistent with the requirements of Section 1129 of the Bankruptcy Code.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.  All approvals and authorizations of the Court contained in such findings of fact and conclusions of law are made part of this Order and are hereby specifically **<u>APPROVED</u>**.

2.    <u>Objections</u>.  All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled as set forth herein, and all reservations of rights included therein, are overruled on the merits for the reasons stated on the record by this Court at the Confirmation Hearing.

3.    <u>Findings of Fact and Conclusions of Law</u>.  The findings of fact and the conclusions of law stated in this Confirmation Order constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

4.    <u>Plan Classification Controlling</u>.  The terms of the Plan shall govern the classification of Claims and Interests for purposes of Distributions to be made thereunder.  The classifications set forth in the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to

modify or otherwise affect, the actual classification of such Claims under the Plan for the purposes of Distributions; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors, LPI Plan Trustee, or Reorganized Debtors except for voting purposes.

5.    <u>Exhibits; Modifications; References</u>.  The Plan, including the Plan Supplement and all other exhibits to the Plan (whether or not attached thereto or included as part of the Plan Supplement) and the Plan Modifications, is hereby approved and confirmed under Section 1129 of the Bankruptcy Code and the relevant Persons are hereby authorized to execute and implement such documents with such necessary revisions to such documents as required to consummate the transactions therein consistent with the Plan.  The terms of the Plan, including the Plan Supplement and all other exhibits to the Plan (whether or not attached thereto or included as part of the Plan Supplement) and the Plan Modifications, are incorporated by reference into and are an integral part of this Confirmation Order.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision.

6.    <u>Vesting of Assets; Corporate Existence</u>.  On and after the Effective Date, (a) the Seventh Amended and Restated Certificate of Incorporation and the Amended By-Laws of Debtor Laboratory Partners, Inc. shall be amended substantially in the form filed with the Plan Supplement and prior to the LPI Plan Trust Effective Date, the Seventh Amended and Restated Certificate of Incorporation and the Amended By-Laws cannot be amended or otherwise modified by the Holders of Third Party Interests without Bankruptcy Court approval, (b) all of the current board of directors of each Reorganized Debtor shall be replaced with a new board of directors consisting of the individuals identified in the Plan Supplement, who will hold office until the LPI Plan Trust Effective Date, (c) there will be no change in ownership of the Debtors

19

or the Reorganized Debtors until the LPI Plan Trust Effective Date, and (d) any and all property, Assets, Claims and Causes of Action of the Debtors' Estates and all rights, privileges and immunities of the Debtors, including, without limitation, the attorney-client privileges, work product privilege and any other evidentiary privileges of the Debtors shall vest in the Reorganized Debtors.

7.    Estate Representative Status.  The Reorganized Debtors and LPI Plan Trustee shall be "representative[s] of the estate" under Section 1123(b)(3) of the Bankruptcy Code and successors of the Debtors under Section 1145 of the Bankruptcy Code with respect any Claims or Causes of Action that have vested in the Reorganized Debtors and LPI Plan Trust as set forth in the Plan.

8.    Approval of LPI Plan Trustee and LPI Plan Trust Agreement.  The LPI Plan Trust Agreement in substantially the form filed in the Plan Supplement is approved, and the Debtors, the Reorganized Debtors, the LPI Plan Trustee, and other parties are authorized to take all actions contemplated under the LPI Plan Trust Agreement, including making appropriate modifications that do not materially affect substantive rights. The LPI Plan Trustee shall have all powers and responsibilities identified in the LPI Plan Trust Agreement and that are vested in the LPI Plan Trustee pursuant to the Plan, this Order and other Bankruptcy Court orders.  The appointment of the initial LPI Plan Trustee under the Plan and LPI Plan Trust Agreement is approved on the terms set forth in the LPI Plan Trust Agreement.

9.    Vesting of Reorganized Debtors' Remaining Assets.  Pursuant to Section 1123(a)(5) of the Bankruptcy Code, after the LPI Plan Trust Effective Date, all of the Reorganized Debtors' remaining Assets, including all Causes of Action, shall be transferred into the LPI Plan Trust and the LPI Plan Trust shall make all further distributions to the beneficiaries provided for under the Plan. The transfer, after the LPI Plan Trust Effective Date, of all of the

Reorganized Debtors' remaining Assets, shall also include any of the Reorganized Debtors' rights to receive any remaining Medicare payments in accordance with the exception to the general prohibition of assignment of claims described in 42 C.F.R. § 424.80 (b)(4) (Payment under a reassignment established by court order) and 42 C.F.R. § 424.90 (Court ordered assignments). Such assignment shall apply to all Medicare benefits payable to the Reorganized Debtors and the Confirmation Order shall constitute approval of such assignment. The LPI Plan Trustee shall file a certified copy of the Confirmation Order with the necessary parties responsible for processing the Reorganized Debtors' Medicare payments. The LPI Plan Trust and the Reorganized Debtors shall remain jointly and severally liable for any Medicare overpayments.

10. <u>Preservation of All Causes of Action</u>. From and after the Effective Date, the Reorganized Debtors, and after the LPI Plan Trust Effective Date, the LPI Plan Trust and the LPI Plan Trustee, subject to approval of the Trust Oversight Committee as set forth in Article IV of the Plan, may litigate or settle any Causes of Action, recovery or subordination actions under Bankruptcy Code Sections 502, 510, 522(f), 522(h), 542, 543, 545, 549, 550, 551, 553 or 724 or rights to payments or claims that belong to the Debtors that may be pending on the Effective Date or instituted after the Effective Date. For the avoidance of doubt, neither the Reorganized Debtors nor the LPI Plan Trust shall commence, litigate, prosecute and/or settle any Avoidance Actions. Pursuant to Bankruptcy Code Section 1123(b)(3)(B), no other Person may pursue any such recovery or subordination actions or other Causes of Action that belong to the Debtors unless otherwise provided by order of the Court.

11. <u>Effects of Confirmation; Immediate Effectiveness; Successors and Assigns</u>. The Court authorizes the Debtors, the Reorganized Debtors, the LPI Plan Trustee, and all other necessary Persons to consummate the Plan, including all transactions contemplated under the

Plan and the Plan Supplement (as such documents may be modified by the relevant parties, consistent with the Plan and this Order) after entry of this Confirmation Order. Subject to the occurrence of the Effective Date, immediately upon the entry of this Confirmation Order, the terms of the Plan (including all Plan Modifications, the Plan Supplement, any other exhibits and attachments thereto and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on: (a) the Debtors; (b) all Holders of Claims against and Interests in the Debtors; (c) any other party-in-interest; (d) any Person making an appearance in these Bankruptcy Cases; (e) any Person receiving notice of the Plan; and (f) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, managers, agents, representatives, attorneys, beneficiaries, or guardians. The Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors and the LPI Plan Trustee. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.    <u>Assumption and Rejection of Executory Contracts</u>.    Unless a Medicare Enrollment Agreement is specifically listed on the Rejection Schedule, all Medicare Enrollment Agreements will be assumed on the Effective Date. Such assumed Medicare Enrollment Agreements shall be governed exclusively by the terms and conditions of such agreements and the incorporated Medicare statutes, regulations, policies and procedures unless otherwise agreed to between the Reorganized Debtors and CMS.

13.    Any Executory Contract listed on the Deferred Rejection Schedule will be deemed rejected at the time the conditions specified on such Deferred Rejection Schedule for such Executory Contract have occurred. In the case of any Executory Contract listed on the

Deferred Rejection Schedule, the Debtors or Reorganized Debtors shall maintain all rights and shall satisfy all post-petition and post Effective Date obligations arising under such Executory Contract pending the effective date of rejection.

14.     On the Effective Date, the Debtors shall reject all remaining Executory Contracts including those that (i) have not previously been assumed and assigned or rejected with the approval of the Bankruptcy Court, (ii) are not as of the Confirmation Date, the subject of a motion to assume or reject, (iii) have not expired by their own terms on or prior to the Confirmation Date, (iv) are not listed on either the LTC Contract Schedule or the Deferred Contract Schedule, or (v) are listed on the Rejection Schedule.

15.     Notwithstanding the above, the Debtors or Reorganized Debtors and the counterparty to any Executory Contract shall have the right to agree to defer the date for assumption or rejection, as the case may be, until after the Effective Date, subject to such conditions as shall be mutually agreeable.

16.     Insurance Policies.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtors, Reorganized Debtors or any other Person.  To the extent any or all of the insurance policies set forth on the Insurance Schedule are considered to be Executory Contracts, then notwithstanding anything contained in the Plan to the contrary, and subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code section 365(a) and a finding that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in this Chapter 11 Cases.  Unless otherwise determined by this Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth

on the Insurance Schedule. To the extent this Court determines otherwise with respect to any insurance policy, the Debtors rights to seek rejection of such insurance policy or other available relief are reserved. For the avoidance of doubt, the insurance policies (including any insurance policies that are not Executory Contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on the Insurance Schedule and all rights thereunder and rights under any other insurance policies under which the Debtors may be a beneficiary (including the rights to make, amend, prosecute and benefit from claims) are retained and will be transferred to the LPI Plan Trust pursuant to this Plan. The LPI Plan Trustee shall have the right to cancel, terminate or not assume any insurance policy in his, her or its sole discretion, except for any directors' and officers' liability insurance policy or products liability insurance policy. For the avoidance of doubt, neither the LPI Plan Trust nor the LPI Plan Trustee shall be obligated to pay any amounts in connection with any insurance policy, including any directors' and officers' liability insurance policy or products liability insurance policy.

17.    Injunction.    The injunction provision set forth in Article VII.A of the Plan is hereby approved in its entirety. **Except as otherwise expressly provided in the Plan or in this Confirmation Order, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or any property of the Debtors' Estates, the LPI Plan Trust or the LPI Plan Trustee with**

respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee, or any property of the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest; (iii) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or any property of the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest; (iv) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to the Debtors' Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or any property of the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in Article VII.A of the Plan shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Reorganized Debtors, the LPI Plan Trustee or the LPI Plan Trust under the Plan. This Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against the Debtors' Estates or the Reorganized Debtors or any property of the Debtors' Estates or Reorganized Debtors based on, arising from or related to any failure to pay, or

make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article VI.K of the Plan have been made or are not yet due under Article VI.K of the Plan. Notwithstanding the above, nothing shall affect the rights of the United States to assert recoupment and/or setoff to the extent permitted by applicable law, including but not limited to the Medicare statute and regulations, or the agreement of the parties.

18.    Exculpation. The exculpation provision set forth in Article VII.C of the Plan is hereby approved in its entirety.  **None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claims, liens, encumbrances, obligations, damages, demands, debts, suits, Avoidance Actions, Causes of Action, judgments, liabilities or rights whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place after the Petition Date but on or prior to the Effective Date to any other Protected Party, to any Holder of a Claim or an Interest in their capacity as such, in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan and/or the property to be distributed under the Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan.**

Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of Bankruptcy Code Section 1125(e).

19.   <u>Releases by the Debtors</u>.  The releases by the Debtors set forth in Article VII.D of the Plan are hereby approved in their entirety.  **On the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtors and any entity seeking to exercise the rights of the Debtors or their Estates, including, without limitation, any successor to the Debtors including the Reorganized Debtors, the LPI Plan Trust and LPI Plan Trustee, shall completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive and discharge each Released Party from any and all Claims, liens, encumbrances, obligations, damages, demands, debts, suits, Avoidance Actions, Causes of Action, judgments, liabilities or rights whatsoever (other than the rights of the Debtors or their successors to enforce the Plan and contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence from the beginning of the world to the Effective Date, <u>provided</u>, <u>however</u>, that the foregoing shall not operate as a waiver or release of Claims or Causes of Action, if any, against any current or former director, officer or other employee of the Debtors arising out of fraud, misappropriation or criminal conduct, in each case subject to determination of such by final order of a court of competent jurisdiction. This release, waiver and discharge will be in addition to the discharge of Claims and termination of Interests provided herein and under the Bankruptcy Code.  Notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall release or waive any right of the**

Estate or the LPI Plan Trustee to object to any filed or scheduled Claims of any Released Party and nothing in the Plan shall be construed as or constitute a waiver of any defense to any Claim or right to payment asserted by any party.

20.    <u>Releases by Holders of Claims</u>.  The releases by Holders of Claims that voted to accept the Plan set forth in Article VII.E of the Plan are hereby approved in their entirety.  **On the Effective Date, except as otherwise expressly provided herein or in the Plan, for good and valuable consideration, to the fullest extent permissible under applicable law, each Holder of Claims against each of the Debtors and/or each of the Released Parties that votes to accept the Plan shall be deemed to completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge each of the Debtors' Estates and/or each of the Released Parties from any and all Claims, liens, encumbrances, obligations, damages, demands, debts, suits, Avoidance Actions, Causes of Action, judgments, liabilities or rights whatsoever (other than the right to enforce the Debtors' obligations under the Plan and the contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors or their Estates (whether pre- or post-petition), the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Plan, or any other contract, instrument, release agreement, settlement or document created, modified, amended, terminated or entered into in connection with the Plan, the restructuring of any Claims against the Debtors' Estates, the property to be distributed under the Plan, or any other act**

or omission in connection with the Debtors' bankruptcy, without further notice to or action by the Bankruptcy Court, or act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any entity; provided, however, that the foregoing shall not limit the liability of the Debtors' professionals to their client or the Debtors' Estates contrary to the law or operate as a waiver or release of any Claims or Causes of Action, if any, arising primarily from gross negligence or willful misconduct as determined by a final order of a court of competent jurisdiction.

21.    Discharge and Binding Effect of Plan.  The Debtors are discharged to the fullest extent permitted by Sections 524 and 1141 of the Bankruptcy Code.  Except as otherwise provided in the Plan, on and after the Effective Date, the provisions of the Plan and this Confirmation Order shall bind any Holder of a Claim against, or Interest in, the Debtors, the Reorganized Debtors, the Estates, the LPI Plan Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under the Plan and whether or not such Holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the LPI Plan Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

22.    Setoffs and Recoupment.  The Plan's setoff and recoupment provision at Article VI.G are approved. Nothing shall affect the rights of the United States to assert recoupment and/or setoff to the extent permitted by applicable law, including but not limited to the Medicare statute and regulations, or the agreement of the parties.

23.    Cancellation of Claims and Agreements.  Upon the occurrence of the Effective Date, except as otherwise provided herein or in the Plan, all promissory notes, shares,

certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Reorganized Debtors, the LPI Plan Trustee, the Estates, the Trust Oversight Committee, or the LPI Plan Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in the Plan. As set forth in Section II.C.1 the Plan, pending the LPI Plan Trust Effective Date, all liens, claims and rights associated with the Prepetition Lender Secured Claims shall remain in full force and effect, including as against the Debtors, the Estates and the Reorganized Debtors; provided, however, all such liens, claims and rights held by the Prepetition Lenders as against all property of the Debtors sold pursuant to the LTC APA shall terminate as of the applicable Stage 1, 2, or 3 Closing Dates. All Notes shall be deemed automatically canceled and discharged on the Effective Date.

24.     _Interest Cancellation_. Upon the occurrence of the LPI Plan Trust Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Reorganized Debtors, the LPI Plan Trustee, the Estates, the Trust Oversight Committee, or the LPI Plan Trust; and such promissory notes, share

certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan.

25.     On and as of the LPI Plan Trust Effective Date, the LPI Plan Trustee will hold a single, nominal share of common stock in each of the Post-Confirmation Debtors for the sole and limited purpose of maintaining the corporate existence of the Post-Confirmation Debtors following the LPI Plan Trust Effective Date and pending dissolution of the Post-Confirmation Debtors.

26.     Terms of Injunctions or Stays.  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105 or 362, the Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the LPI Plan Trust.

27.     Dissolution of the Committee.  Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to Bankruptcy Code § 503(b) for making a substantial contribution in the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of the Plan or this Confirmation Order.  The Committee members and the Professionals retained by the Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services

rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date and for services rendered in connection with (iv) above.

28.    Bar Date for Final Fee Applications.  Except as provided in the Plan, all final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be filed and served so that they are received no later than **thirty (30) days after the Effective Date**. Objections, if any, to Final Fee Applications of such professionals must be filed and served on the same parties and the requesting professional, no later than fourteen (14) days from the date on which each such Final Fee Application is Filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Final Orders of the Court, the allowed amounts of such Claims shall be determined by the Court.

29.    Bar Date for Administrative Claims.  Each Holder of an Administrative Claim (excluding Professional Fee Claims) must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than **thirty (30) days after the Effective Date** and served upon counsel for the Reorganized Debtors, counsel for the LPI Plan Trust and the LPI Plan Trustee, counsel for the Prepetition Lenders, and counsel for the Committee at the addresses listed in Article IX.N of the Plan as well as on the Office of the United States Trustee; provided, however, that any such Administrative Expense Request need not be filed with a hearing date.  Objections, if any, to Administrative Expense Requests must be filed and served on the Reorganized Debtors and their counsel, the LPI Plan Trust and the LPI Plan Trustee, the Committee and its counsel, the requesting party, and the Office of the United States Trustee no later than fourteen (14) days from the date on which each such Administrative Expense Request is Filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Final Orders of the Court, the

allowed amounts of such Claims shall be determined by the Court. Nothing herein or in the Plan extends any Bar Date established in the Bar Date Order.

30.    <u>Bar Date for Rejection Claims</u>. Each Person that is a party to an executory contract or unexpired lease that is rejected pursuant to this Confirmation Order and the Plan will be entitled to file, **not later than thirty (30) days following the Effective Date**, a proof of Claim for damages alleged to have been suffered due to such rejection (a "<u>Rejection Damages Claim</u>"); <u>provided</u>, <u>however</u>, that the opportunity afforded to a Person whose executory contract or unexpired lease is rejected pursuant to this Confirmation Order and the Plan to file a proof of Claim shall not extend the time for any Person to assert or attempt to assert a Claim on account of an executory contract or unexpired lease that was previously rejected by the Debtors for which a previous filing deadline was established. Any Person that has a Claim for damages as a result of the rejection of an executory contract or unexpired lease that does not file a proof of Claim in accordance with the terms and provisions of this Order with the Court (and serve such proof of Claim upon the Reorganized Debtors) will be forever barred from asserting such Claim against, and such Claim shall be unenforceable against, the Debtors, the Estates, the Reorganized Debtors, the LPI Plan Trust, the LPI Plan Trustee or their respective property or interests in property, and such Claim shall be discharged and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or acts to collect, offset or recover such Claim.

31.    <u>Records</u>. Pursuant to Section 554 of the Bankruptcy Code, the Reorganized Debtors and/or the LPI Plan Trustee are authorized to abandon all originals and/or copies of Records consistent with the Debtors' prepetition privacy policies.

32.    <u>Objections to Claims or Interests</u>. The Reorganized Debtors (in consultation with the Holders of the Prepetition Lender Secured Claims) or the LPI Plan Trustee (at the direction

of and in consultation with the Trust Oversight Committee as set forth in the LPI Plan Trust Agreement), as applicable, shall be responsible for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims and Interests.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Reorganized Debtors or the LPI Plan Trustee will be filed and served not later than 180 days after the Effective Date, provided that the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with this Court, based upon a reasonable exercise of his, her or its business judgment.  A motion seeking to extend the deadline to object to any Claim or Interest shall not be deemed an amendment to the Plan.

33.    <u>Governmental Approvals Not Required</u>.  With the exception of any authorizations or consents that may be required by any applicable antitrust or merger control law, rule or regulation, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments thereto.

34.    <u>Exemption from Transfer and Recording Taxes</u>.  Pursuant to Bankruptcy Code section 1146, any transfers from the Debtors, the Reorganized Debtors, the LPI Plan Trust or the LPI Plan Trustee to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the LPI Plan Trust's real or personal property, or the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as

contemplated by the Plan, including, without limitation, any transfers to or by the LPI Plan Trustee of the Debtors' or the LPI Plan Trust's property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfers of property by the LPI Plan Trustee) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

35. <u>Exemption from Securities Laws</u>. The issuance of any securities under the Plan complies with Bankruptcy Code Section 1145(a) and shall be exempt from registration under the Securities Act of 1933.

36. <u>Payment of Fees</u>. From and after the Effective Date, the Reorganized Debtors shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the Debtors' Estates under 28 U.S.C. § 1930 until entry of a final decree closing the Chapter 11 Cases. In addition, the Reorganized Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Cases.

37. <u>Cash Collateral Order Amendment</u>. The Cash Collateral Order shall remain in effect, subject to the following: (i) the Budget referenced in the Cash Collateral Order shall be replaced with the revised budget that will be agreed to between the Reorganized Debtors and the

Prepetition Lenders, which budget shall include amounts necessary to fund the Administrative Fund (the "Budget"), (ii) paragraph 29 of the Final Order (as defined in the Cash Collateral Order) shall be deleted and all references to the "Carve Out" shall be eliminated from the Cash Collateral Order, and (iii) the Events of Default under the Cash Collateral Order and paragraph 24 of the Final Order (as defined in the Cash Collateral Order) shall be replaced with: (a) failure to comply with the Budget, and (b) the termination of the LTC APA. "Cash collateral" shall include cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the Reorganized Debtors have an interest and includes the proceeds, products, offspring, rents, profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of the Bankruptcy Code, whether existing before the Effective Date or after.

38.    Resolution of CMS Issues.  Notwithstanding anything else contained in the Plan, this Order and any implementing Plan documents, including but not limited to the LTC APA (the "Documents"):

  A.    On the Effective Date, Debtors shall assume all of their extant Medicare Enrollment Agreements (collectively, "Medicare Enrollment Agreements") and, following assumption, the Medicare Enrollment Agreements will be governed exclusively by the terms and conditions of the Medicare Enrollment Agreements and the incorporated Medicare statutes, regulations, policies and procedures except as otherwise provided in this paragraph 38.

  B.    The LPI Plan Trustee shall have no authority to submit any Medicare claims to the Centers for Medicare & Medicaid Services ("CMS") or its contractors.

  C.    The LPI Plan Trustee shall have no authority to submit or pursue any Medicare appeals to CMS, its contractors, or any tribunal.

D.     Debtors are not, and shall not, assign or otherwise transfer the Medicare Enrollment Agreements, and accordingly, Debtors' Medicare Provider Transaction Access Number(s), to the LTC Purchaser.

E.     Within thirty (30) days of the transfer of each of the Debtors' Medicare suppliers to the LTC Purchaser, each Debtor (or Reorganized Debtor) will notify the applicable Medicare Administrative Contractor  that it is voluntarily terminating each specific enrollment agreement/billing number.  Reorganized Debtors shall provide evidence that they have done so to counsel for the government (jan.lundelius@hhs.gov and ellen.slights@usdoj.gov) on the same date.  Should Reorganized Debtors fail to timely terminate any enrollment agreement/billing number and notify counsel timely, Reorganized Debtors authorize CMS to direct its contractors to terminate the Reorganized Debtors' enrollment agreements/billing numbers without further notice.

F.     The LTC Purchaser shall not attempt to operate the Purchased Assets (as defined in the LTC APA) using any of the Medicare Enrollment Agreements or the Debtors' Provider Transaction Access Number(s).

G.     Nothing shall affect the rights of the United States to assert recoupment and/or setoff to the extent permitted by applicable law, including but not limited to the Medicare statute and regulations, or the agreement of the parties.

H.     The Debtors will put $45,000 in an escrow account for the benefit of CMS and this amount will be available at any time to CMS to setoff or recoup against any overpayments the Debtors owe to CMS:

> (i) The Reorganized Debtors will file all claims for each individual supplier no later than sixty (60) days after the applicable LTC Closing Date.  CMS and/or its contractors are authorized to reject any claim, or recover any payment made on such a claim, filed after that date;

> (ii) The Debtors (or Reorganized Debtors, as applicable) agree that CMS contractors will recoup overpayments as soon as they are determined;

> (iii) The Reorganized Debtors will withdraw any outstanding appeals concerning Medicare claims no later than thirty (30) days after the applicable LTC Closing Date, and they will not thereafter file any such appeals in respect of the business transferred as of that LTC Closing Date. If the Reorganized Debtors do not comply with this requirement, the Reorganized Debtors authorize CMS to direct its contractors or ask the applicable tribunal to dismiss such appeals with prejudice without further notice to the Reorganized Debtors; and

> (iv) As soon as reasonably practicable and in no event later than one hundred and thirty-five days after the date on which the Reorganized Debtors notify counsel for the government of Reorganized Debtor's last

applicable LTC Closing Date, CMS will provide Reorganized Debtors' counsel with a list of unrecouped overpayments and Reorganized Debtors will promptly send payment to CMS for these unrecouped overpayments. Once such unrecouped overpayments have been satisfied the $45,000 escrow (or the remainder thereof) shall be remitted to the Reorganized Debtors or (if the LPI Plan Trust Effective Date has occurred, and CMS assignment requirements described in paragraph (I), below, have been met, to the LPI Plan Trustee).

I.    After the LPI Plan Trust Effective Date, all of the Reorganized Debtors' remaining Assets shall be transferred to the LPI Plan Trust. After that date, payment for all of Reorganized Debtors' Medicare claims shall be paid to the LPI Plan Trust in accordance with the exception to the general prohibition of assignment of Medicare claims described in 42 C.F.R. § 424.80(b)(4) (Payment under a reassignment established by court order) and 42 C.F.R. § 424.90 (Court ordered assignments). Such assignment shall apply to all Medicare benefits payable to the Reorganized Debtors and this Confirmation Order shall constitute the required court-ordered approval of the assignment. The LPI Plan Trustee shall file a certified copy of the Confirmation Order with the necessary parties referred to in the cited regulations responsible for processing the Reorganized Debtors' Medicare payments. The LPI Plan Trust and the Reorganized Debtors shall remain jointly and severally liable for any Medicare overpayments.

J.    Nothing in the Documents shall affect the Debtors', LPI Plan Trustee's or LTC Purchaser's obligations under applicable non-bankruptcy laws and the Debtors, LPI Plan Trustee and the LTC Purchaser agree that CMS, for purposes of Medicare law, will not be bound by any characterizations of any transactions described in the Plan.

39.    <u>Retention of Jurisdiction</u>.    Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, and except as to the assumed Medicare Enrollment Agreements, the Court shall retain jurisdiction as provided in the Plan over all matters arising out of, arising in, and related to the Bankruptcy Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in the Plan.

40.    <u>Filing and Recording</u>.    This Confirmation Order: (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been released, satisfied and terminated to the extent provided for in the Plan; and (b) is and

shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record, or release any document or instruments.  Each and every federal, state, and local government agency is hereby authorized and directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by federal, state or local law.

41.    Notices. The Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date in accordance with Bankruptcy Rules 2002 and 3020(c); provided, however, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a notice of the Confirmation Hearing, the Non-Voting Notice or other notices in the Chapter 11 Cases, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of a new address.  The notice described herein is adequate under the particular circumstances of these Chapter 11 Cases, and no other or further notice is necessary. Service of notice in accordance with this decretal paragraph shall constitute good and sufficient notice of, *inter alia,* the applicable bar dates for Rejection Damages Claims, Professional Fee Claims and Administrative Claims and no other or further notice of such bar dates shall be required.

42.    <u>Confirmation Order Controlling</u>.    The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided, however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence unless otherwise ordered by the Court.

43.    <u>Prior Orders</u>.  The Plan and the Confirmation Order are consistent with, and do not affect the finality of, any prior orders of this Court entered in the Bankruptcy Cases and such orders continue in full force and effect except to the extent that any such prior order is expressly modified in this Confirmation Order.

44.    <u>Modifications to the Plan</u>.  Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, after the Confirmation Date and prior to "substantial consummation" (as such term is defined in Bankruptcy Code Section 1101(2)) of the Plan, the Reorganized Debtors in consultation with the Holders of the Prepetition Lender Secured Claims or the LPI Plan Trustee in consultation with the Trust Oversight Committee may institute proceedings in this Court pursuant to Bankruptcy Code Section 1127(b) to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

45.    <u>Severability</u>.  Each term and provision of the Plan, as may have been altered or interpreted by the Court in accordance with the Plan, is valid and enforceable pursuant to its terms.

46.    <u>Waiver of the Stay of Confirmation Order</u>.  The stay of this Confirmation Order pursuant to Bankruptcy Rule 3020(e) is hereby waived, and the Confirmation Order hereby is effective immediately.

47.    <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: July  10, 2014
        Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

8377894.1